**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PENNANT MANAGEMENT, INC.,      )
          Plaintiff,      )
      v.      )    Case No. 14 CV 7581
      )
FIRST FARMERS FINANCIAL, LLC,      )    Hon. Amy J. St. Eve
NIKESH AJAY PATEL, TRISHA N. PATEL,      )    United States District Court Judge
ALENA HOSPITALITY, LLC, ALENA      )
LABORATORIES, LLC, ALENA AVIATION,      )
LLC, ABLE CONNECTION, LLC, NPSSS,      )
LLC, KUBER CAPITAL FUNDING, LLC,      )
KUBER CONSULTING, SURI HOSPITALITY,      )
LLC, SURI HOSPITALITY  INTERNATIONAL,  )
LLC, TRANSLUCENT ENTERTAINMENT,      )
LLC, ALENA PRODUCTION, LLC, and ASL      )
PICTURES, LLC,      )
          Defendants.      )
-----------------------------------------------------------)
ILLINOIS METROPOLITAN INVESTMENT      )
FUND, HARVARD SAVINGS BANK, an      )
Illinois Savings Bank, and UNIVERSITY OF      )
WISCONSON CREDIT UNION,      )
          Plaintiff-Intervenors,      )
      v.      )
FIRST FARMERS FINANCIAL, LLC,      )
NIKESH AJAY PATEL, TIMOTHY GLENN      )
FISHER, TRISHA N. PATEL, ALENA      )
HOSPITALITY, LLC, ALENA      )
LABORATORIES, LLC, ALENA AVIATION,      )
LLC, ABLE CONNECTION, LLC, NPSSS,      )
LLC, KUBER CAPITAL FUNDING, LLC,      )
KUBER CONSULTING, SURI      )
HOSPITALITY, LLC, SURI HOSPITALITY      )
INTERNATIONAL, LLC, TRANSLUCENT      )
ENTERTAINMENT, LLC, ALENA      )
PRODUCTION, LLC, and ASL PICTURES,      )
LLC,      )
          Defendants.      )
_____)

**APPLICATION OF OVERALL RECEIVER AND NANOSKY RECEIVER FOR
<u>AUTHORITY TO EMPLOY GREENBERG TRAURIG, LLP AS SPECIAL COUNSEL</u>**

Patrick Cavanaugh, not individually, but solely in his capacity as Overall Receiver, and Michael Nanosky, not individually, but solely in his capacity as Receiver (and together with Mr. Cavanaugh, the "Receivers"), pursuant to Local Rule 66.1(a) of the Local Rules of the United States District Court for the Northern District of Illinois ("Local Rule 66.1(a)") and the *Agreed Order Clarifying, Modifying and Expanding the Duties of Receiver Michael Nanosky and to Appoint an Overall Receiver and Regarding Payments to Attorneys and Other Professionals and Related Items* dated April 23, 2015 ("Amended Receiver Order")[1] [Dkt. No. 122], move this Court for the entry of an order authorizing them to employ Greenberg Traurig LLP (collectively, "Greenberg Traurig") as special counsel for the Receivers for the limited purpose of assisting in the transition of information and responsibilities to the Receivers pursuant to the Amended Receiver Order and representing the Receivers in connection with the sale of the Hotel Sales and Lien Disputes, as defined below ("Application"). In support of this Application, the Receivers state as follows:

## INTRODUCTION

1.      On September 29, 2014, Pennant Management, Inc. filed its Complaint against Defendants First Farmers Financial, LLC, Nikesh Ajay Patel, Trisha N. Patel, Alena Hospitality, LLC, Alena Laboratories, LLC, Alena Aviation, LLC, Able Connection, LLC, NPSSS, LLC, Kuber Capital Funding, LLC, Kuber Consulting, Suri Hospitality, LLC, and Suri Hospitality International, LLC.

2.      On November 10, 2014, the Court entered the *Agreed Order Appointing Receiver* ("Original Receiver Order") [Dkt. No. 29] appointing Michael M. Nanosky as

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Amended Receiver Order.

receiver (the "Nanosky Receiver") to exercise control over the assets owned by the Defendants and to control the Defendant entities.

3. On April 23, 2015, the Court entered the Amended Receiver Order which split the management of the Defendants' assets into two separate receivership estates for the benefit of the Distribution Participants. (Amended Receiver Order, ¶ 2.) Under the Amended Receiver Order, the Nanosky Receiver continues to exercise control over certain hospitality properties and other real property located in Florida and Illinois that he managed under the Original Receiver Order ("Nanosky Receivership Estate"). (*Id.*, ¶¶ 4-5.) The Amended Receiver Order also appointed the Overall Receiver to take possession and control [of all assets of the Defendants other than those assets entrusted to the Nanosky Receivership Estate] ("Overall Receivership Estate," and together with the Nanosky Receivership Estate, the "Estates"). (*Id.*, ¶¶ 22-24.)

4. In carrying out his duties, the Nanosky Receiver is required to confer with the Overall Receiver on how best to serve the interests of both Estates. (*Id.*, ¶ 10.) The Overall Receiver determines how the Nanosky Receiver will proceed in the event of a disagreement over the appropriate course of action unless otherwise directed by the Court. (*Id.*)

## PROPOSED EMPLOYMENT OF COUNSEL

5. Pursuant to Paragraph 26(h) of the Amended Receiver Order, and subject to Court approval, the Receivers have selected Greenberg Traurig to represent them as special counsel for the limited purpose of representing the Receivers to assist with transitioning responsibilities to the Overall Receiver and to perform services relating to the Nanosky Receiver's duties under the Amended Receiver Order. Attached hereto and made part

hereof as <u>Exhibit A</u> is the proposed Greenberg Traurig engagement letter signed by the Receivers subject, of course, to this Court's approval.

6.     Effective retroactive to May 1, 2015, Greenberg Traurig will provide such assistance as may be requested by the Receivers in transitioning responsibility to the Overall Receiver following entry of the Amended Receiver Order, and will act as counsel for the Receivers in connection with the sale of the hotel properties in Peoria, Illinois, Saddle Brook, New Jersey, UCF Orlando, Florida, Lake Buena Vista Orlando, Florida, and Downtown Orlando, Florida (collectively referred to herein as the "<u>Hotel Sales</u>"), as well as the mortgage and lien foreclosure litigation pending and/or filed in connection with those properties, including the affirmative claims of the Receivers against one or more of the lien claimants, including claims for fraudulent transfers (the "<u>Lien Disputes</u>").   The Receivers selected Greenberg Traurig because of its experience with, and knowledge of, the hotel properties and the lien litigation, which Greenberg Traurig has been handling since the beginning of these proceedings.   The Receivers believe that Greenberg Traurig is well qualified to represent them in this case as special counsel for the limited purposes set forth herein and in the engagement letter.

7.     The services Greenberg Traurig proposes to render to the Receivers include assisting them in providing such information and materials as may be requested by the Overall Receiver or those acting on his behalf in connection with the transitioning of responsibilities following the entry of the Amended Receiver Order, negotiating and finalizing the transaction documents associated with the Hotel Sales, completing any due diligence process associated with the Hotel Sales, addressing title and other issues necessary to closing, and performing such other services and tasks as may be necessary to conclude the Hotel Sales process.   The

services Greenberg Traurig proposes to render for the Lien Disputes will include representing the Receivers in connection with any claims or defenses asserted by or against him or against the properties in the Lien Disputes, including but not limited to, those cases currently styled as *True Line Construction and Remodeling Services, Inc. v. Sheraton Peoria Hotel, LLC*, Case No. 1:15-CV-01013 (C.D. Ill.), *United States v. True Line Contracting and Remodeling, Inc. et al.*, Case No. 15-CV-1097 (C.D. Ill.), *True Line Contracting and Remodeling Services, Inc. v. Alena Hospitality Saddle Brook, LLC et al.*, Case No. L-20884-14 (Superior Court of Bergen County, New Jersey), *True Line Contracting and Remodeling, Inc. v. Alena Hospitality UCF, LLC et al.*, Case No. 2015-CA-000300-O (Circuit Court for the Ninth Circuit, Orange County, Florida), whether those matters remain pending in their current venues or are thereafter stayed and the underlying disputes addressed by the federal court in the Litigation, including the prosecution, defense, or settlement of such claims, and otherwise assisting the Receivers in the exercise of their duties as addressed in the Amended Receiver Order in connection with either the Hotel Sales or the Lien Disputes. Greenberg Traurig has not been asked to represent the Nanosky Receiver or the Overall Receiver in other legal matters at this time.

8.     Greenberg Traurig agrees that the Receivers' retention of Greenberg Traurig as special counsel is not relevant to, and will not be cited as support for, Greenberg Traurig's pending Application for Approval of Payment for Attorneys' Fees and Costs or any similar applications for fees and costs filed by Greenberg Traurig relating to fees and costs incurred before May 1, 2015. The Receivers' retention of Greenberg Traurig as special counsel is without prejudice to any objection that the Receivers may raise to applications for fees for the period preceding May 1, 2015; the Receivers and Greenberg Traurig acknowledge and agree that the pending fee application for fees and expenses prior to May 1, 2015 will be reviewed

and decided in accordance with the procedures set forth in the Amended Receiver Order, unless otherwise ordered by the Court.

9.      Greenberg Traurig has determined that its appointment as counsel to the Receivers as set forth herein creates no conflict of interest based on its ongoing representation of Pennant Management, Inc., the Plaintiff in this action ("Pennant").  In the event a conflict may arise in the future, the Receivers have agreed to permit Greenberg Traurig to withdraw as counsel for the Receivers, but continue as counsel to the Pennant.  In the event of any future dispute between the Overall Receiver or Nanosky Receiver and Pennant that is substantially related to Greenberg Traurig's representation of the Receivers contemplated herein, Greenberg Traurig would not represent any party to such a dispute.  Pennant, the Overall Receiver, and Nanosky Receiver are agreeable to these conditions.

## COMPENSATION ARRANGEMENTS

### A.      Greenberg Traurig Rates and Expense Reimbursement

10.      At the Overall Receiver's request, Greenberg Traurig has agreed to a compensation arrangement that is substantially discounted from the firm's customary compensation rates with most of its clients.  Greenberg Traurig's standard hourly rates for legal services range from $435.00 to $1,110.00 for shareholders, $400.00 to $1,055.00 for "of counsel," $200.00 to $550.00 for associates, and $200 to $320.00 for paralegals.  Greenberg Traurig will discount the rates of all timekeepers on this matter by 20% effective May 1, 2015. Paul Fox will take principal responsibility for the engagement, and his discounted hourly rate will be $680.  The Hotel Sales will be principally handled by Shareholder Michael Sullivan and Associate Brandon Hueber in Greenberg Traurig's Orlando office, and their discounted hourly rates will be $600 and $320, respectively.  The Lien Disputes will be handled by Paul Fox and

other Greenberg Traurig lawyers, principally Shareholder Paul Ferak, whose discounted hourly rate will be $488.

11.     Greenberg Traurig reviews its rates annually and expects those rates to be adjusted on or after January 1, 2016.  Hourly rates shall be adjusted in the same fashion as for all other clients of the firm, and will be subject to the same 20% discount.

12.     Greenberg Traurig also charges for expenses incurred in connection with the provision of its legal services, including online legal research, transportation, copying, postage, couriers, and messengers.  Greenberg Traurig will seek reimbursement of these expenses consistent with the Billing Policies attached to the proposed engagement letter.  (Exhibit A.)

13.     Greenberg Traurig acknowledges that the sole source of its compensation in connection with its representation of the Receivers in this case shall be the funds of the Overall Receiver Estate.  No party in interest, including the Overall Receiver or Nanosky Receiver, has agreed to compensate Greenberg Traurig for either legal services rendered or expenses incurred by Greenberg Traurig in connection with the representation of the Receivers addressed in this motion.

**B.     Interim Compensation Procedures**

14.     Greenberg Traurig understands that any and all compensation for legal services rendered on behalf of the Receivers as special counsel shall be subject to further Court approval, after notice and hearing on separate petitions made therefor.  Accordingly, the Overall Receiver requests that the Court apply the procedures adopted on June 30, 2015 in connection with the retention of Shaw Fishman for the payment of Greenberg Traurig's interim compensation and reimbursement of expenses on a monthly basis.  Such an order will create consistency among all fee applications submitted by counsel representing the Overall

Receiver or Nanosky Receiver, streamline the compensation process, and enable the Court and other parties to monitor the legal fees incurred by the Overall Receiver more effectively.

15.     In general, the procedures requested herein will permit Greenberg Traurig to present to the Overall Receiver, IMET, Harvard Bank and the University of Wisconsin Credit Union (collectively, the "Notice Parties"), a detailed statement of services rendered and expenses incurred for the prior month.  If there is no timely objection, the Overall Receiver will pay fifty percent (50%) of the amount of fees incurred for the month, with a fifty percent (50%) holdback, and one-hundred percent (100%) of the actual expenses incurred for the month without further Court order, provided, however, Greenberg Traurig shall prepare and file interim fee petitions with the Court approximately every 4 months for the allowance and payment of accrued fees and expenses.

16.     Specifically, the Overall Receiver proposes that on or before the last day of the month following the month for which compensation is sought (the "Monthly Statement Date"), Greenberg Traurig will submit a monthly statement to the Notice Parties.  Each entity receiving such a statement will have 21 days after the Monthly Statement Date to review the statement.

17.     At the expiration of the 21 day period, the Overall Receiver will promptly pay fifty percent (50%) of the fees and one-hundred percent (100%) of the expenses requested in such statement, except 50% of such fees and such expenses as to which an objection has been served as provided for below.

18.     In the event that any of the Notice Parties have an objection to the compensation or reimbursement sought in a particular monthly statement, such party will, within 21 days of the Monthly Statement Date, serve upon the Overall Receiver and

Greenberg Traurig, a written "Notice of Objection to Fee Statement" setting forth the precise nature of the objection and the amount objected to. Thereafter, the objecting party and Greenberg Traurig shall attempt to reach an agreement regarding the correct payment to be made. If the parties are unable to reach an agreement on the objection within 5 days after receipt of such objection, the objecting party may file its objection with the Court and serve its objection on Greenberg Traurig and the Notice Parties, and the Court will consider and dispose of the objection at the next interim fee petition hearing. To the extent funds are available in the Overall Receivership Estate, the Overall Receiver will promptly pay those fees and expenses that are not the subject of a Notice of Objection to Fee Statement.

19.     Approximately every 4 months, Greenberg Traurig will file with the Court and serve on the Notice Parties, a petition for interim Court approval and allowance of the compensation and reimbursement of expenses requested for the prior 4 month period.

20.     The pendency of a petition for compensation or reimbursement of expenses, and the pendency of any Notice of Objection to Fee Statement or other objection, shall not disqualify Greenberg Traurig from the future payment of compensation or reimbursement of expenses as set forth above. Neither the payment of, nor the failure to pay, in whole or in part, monthly interim compensation and expenses as provided herein shall bind any party in interest or this Court with respect to the final allowance of petitions for compensation and expenses of Professionals.

21.     Further, the failure to object to any monthly invoice shall not preclude the Notice Parties from later objecting to any interim or final compensation application filed by Greenberg Traurig. In addition, payment of all monthly invoices, and amounts allowed pursuant to interim compensation and expense reimbursement petitions, shall be deemed

conditional and subject to final review by the Court at such time as Greenberg Traurig's final compensation and expense reimbursement petition is heard and determined by the Court.

## APPLICABLE AUTHORITY

### A.    Interim Compensation Procedures

22.    Although Local Rule 66.1(a) generally requires a receiver to administer a receivership estate in a manner similar to that of a bankruptcy case, the Court has broad discretion to (1) fix the allowance of compensation of the receiver and his counsel and (2) direct the manner in which the estate shall be administered.  Local Rule 66.1(a).

23.    Similar procedures for compensating and reimbursing court-approved professionals have been established in chapter 7 and 11 bankruptcy cases in this district.  *See, e.g., Ungaretti & Harris, LLP v. Steinberg (In re Resource Technology Corp.)*, 356 B.R. 435, 440 n.1 (Bankr. N.D. Ill. 2006); *In re Keywell L.L.C.*, Case No. 13-37603 (Bankr. N.D. Ill., October 16, 2013, Dkt. No. 101); *In re Peregrine Financial Group, Inc.*, Case No. 12-27488 (Bankr. N.D. Ill., August 9, 2012, Dkt. No. 85); *In re Bachrach Clothing, Inc.*, Case No. 06-06525 (Bankr. N.D. Ill., July 6, 2006, Dkt. No. 137).  These interim compensation procedures are approved in order to avoid having the estate professionals funding the administration of the bankruptcy case.

24.    While this case is a receivership, rather than one under the Bankruptcy Code, given its size, the number of professionals involved, the anticipated time required on the part of counsel for the Overall Receiver, and the complexity of the issues presented, the Overall Receiver submits that the procedures sought herein are warranted and appropriate under the circumstances of this receivership.

### B.    Format of Compensation Petitions

25.    This Court has the responsibility to determine the reasonableness of compensation requested by Greenberg Traurig and other professionals seeking payment from assets of the receivership estate.  In order to enable this Court, the Overall Receiver and parties in interest to fairly evaluate petitions for compensation filed by Greenberg Traurig and other professionals employed by the Overall Receiver, petitions for compensation should comply with the guidelines established by Local Bankruptcy Rule 5082-1 as contemplated by this Court in its June 30, 2015 Order.

## **CONCLUSION**

26.    By virtue of the foregoing, the Overall Receiver and Nanosky Receiver submit that the proposed employment of Greenberg Traurig to perform the professional services set forth above is in the best interests of the Overall Receivership Estate and the Nanosky Receivership Estate and is both necessary and appropriate under the circumstances.

WHEREFORE, the Overall Receiver that the Court enter an order: (a) authorizing the Overall  Receiver to employ Greenberg Traurig, effective as of May 1, 2015, as special counsel to the Receivers to perform the professional services set forth herein and in the proposed engagement letter; (b) authorizing the proposed procedures for the payment of interim compensation and reimbursement of expenses of Greenberg Traurig on a monthly basis; (c) requiring application of Local Bankruptcy Rule 5082-1 for all petitions for compensation filed by Greenberg Traurig and other professionals seeking payment from the receivership estate; and (d) granting such other relief as this Court deems just and equitable.

Dated: July 17, 2015

Respectfully submitted,

Patrick Cavanaugh, not individually but solely in his capacity as Overall Receiver of the Overall Receivership Estate,

By: Steven B. Towbin            
     One of His Attorneys

Steven B. Towbin
Allen J. Guon
Shaw Fishman Glantz & Towbin, LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
Phone: (312) 541-0151

Counsel for the Overall Receiver

# EXHIBIT A



Paul T. Fox
(312) 456-8420
foxp@gtlaw.com

July 17, 2015

Mr. Patrick Cavanaugh
Overall Receiver in Case No. 14 CV 7581
High Ridge Partners
140 South Dearborn
Suite 420
Chicago, IL 60603

Mr. Michael Nanosky
Receiver in Case No. 14 CV 7581
Janus Hotel Management Services, LLC
2300 NW Corporate Blvd., Suite 232
Boca Raton, FL 33431

     **Re:**    **Representation of Receivers as Special Counsel in *Pennant Management, Inc. v First Farmers Financial, LLC* et al., Case No. 14 CV 7581 (N.D. Ill.) (the "Litigation")**

Dear Pat and Mike:

     Thank you for agreeing to engage us, retroactive to May 1, 2015, as special counsel for Patrick Cavanaugh, not individually, but solely in his capacity as Overall Receiver (the "Overall Receiver"), and Michael Nanosky, not individually, but solely in his capacity as Receiver (the "Nanosky Receiver") (collectively, the "Receivers"), in Case No. 14 CV 7581, for the limited purpose of representing the Receivers in connection with the sale of the interests of certain of the Litigation defendants in the hotel properties in Peoria, Illinois, Saddle Brook, New Jersey, UCF Orlando, Florida, Lake Buena Vista Orlando, Florida, and Downtown Orlando, Florida (collectively, all of which are referred to herein as the "Hotel Sales"), as well as the mortgage and lien foreclosure litigations pending and/or filed in connection with those properties, including the affirmative claims of the Receivers against one or more of the lien claimants, including claims for fraudulent transfers. (the "Lien Disputes"), as described more fully below. We appreciate the opportunity to provide legal services to the Receivers in connection with these matters.

     This letter constitutes the retainer agreement (the "Agreement") between the Receivers and Greenberg Traurig, LLP ("Greenberg" "we" or "us"). This Agreement describes the terms of our relationship and sets forth the general terms of our assistance to you in the above-referenced matters. Incorporated by reference herein is the attached statement of the Greenberg's Billing Policies. To the extent terms or provisions of this

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY*
MIAMI
MILAN*
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SAN FRANCISCO
SEOUL*
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

*OPERATES AS
GREENBERG TRAURIG ASAHER LLP*

*OPERATES AS
GREENBERG TRAURIG, S.C.

^STRATEGIC ALLIANCE

*OPERATES AS
GREENBERG TRAURIG LLP
FOREIGN LEGAL CONSULTANT OFFICE

~A BRANCH OF
GREENBERG TRAURIG, P.A.,
FLORIDA, USA

*OPERATES AS
GREENBERG TRAURIG GRZESIAK SPK

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 2

Agreement vary from those Billing Policies, this Agreement controls and, in any event, both are subject to the specific provisions of the Agreed Order Clarifying, Modifying, and Expanding the Duties of Receiver of Michasel Nanosky and to Appoint an Overall Receiver and Regarding Payments to Attorneys and Other Professional and Related Items dated April 23, 2015 (Docket No. 122) (the "April 23rd Order"), which controls over this Agreement and the Billing Policies. If the Agreement is acceptable to you, please sign and return a copy to me at your earliest convenience. The original is for your files. When you sign this letter, it becomes a contract between us. Please feel free to discuss this letter with independent counsel or to call me if you have any comments or questions concerning this Agreement.

     1.   <u>Scope of Engagement</u>: Our representation of the Receivers relates to our assisting with the transition of responsibility to the Receivers following the entry of the April 23rd Order, and in connection with the Hotel Sales and Lien Disputes. Our engagement for these matters will be retroactive to May 1, 2015 and will include assisting the Receivers in the transition process, negotiating and finalizing the transaction documents associated with the Hotel Sales, completing any due diligence process associated with the Hotel Sales, addressing title and other issues necessary to closing, and performing such other services and tasks as may be necessary to conclude the Hotel Sales process. Our engagement for the Lien Disputes will include representing the Receivers in connection with any claims or defenses asserted by or against him or against the properties in the Lien Disputes, including but not limited to, those cases currently styled as *True Line Construction and Remodeling Services, Inc. v. Sheraton Peoria Hotel, LLC*, Case No. 1:15-CV-01013 (C.D. Ill.), *United States v. True Line Contracting and Remodeling, Inc. et al.*, Case No. 15-CV-1097 (C.D. Ill.), *True Line Contracting and Remodeling Services, Inc. v. Alena Hospitality Saddle Brook, LLC et al.*, Case No. L-20884-14 (Superior Court of Bergen County, New Jersey), *True Line Contracting and Remodeling, Inc. v. Alena Hospitality UCF, LLC et al.*, Case No. 2015-CA-000300-O (Circuit Court for the Ninth Circuit, Orange County, Florida), whether those matters remain pending in their current venues or are thereafter stayed and the underlying disputes addressed by the federal court in the Litigation, including the prosecution, defense, or settlement of such claims, and otherwise assisting the Receivers in the exercise of his duties as addressed in the April 23rd Order in connection with either the Hotel Sales or the Lien Disputes. We have not been asked to represent the Receivers in other legal matters at this time. We agree that the Receivers' retention of Greenberg as special counsel as set forth in this letter is not relevant to, and will not be cited as support for, Greenberg's pending Application for Approval of Payment for Attorneys' Fees and Costs or any similar applications for fees and costs filed by Greenberg relating to fees and costs incurred before May 1, 2015. The Receivers' retention of Greenberg as special counsel is without prejudice to any objection that the Receivers may raise to applications for fees for the period preceding May 1, 2015; the Receivers and Greenberg acknowledge and agree that the pending fee application for fees and expenses prior to May 1, 2015 will be reviewed and decided in accordance with the procedures set forth in the April 23rd Order, unless otherwise ordered by the Court.

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 3

Because of the proliferation of corporations owning or partially owning subsidiaries, and the problems this creates for lawyers in identifying potential conflicts of interest, we like to advise our corporate clients that as a general rule this firm will not regard an affiliate of a corporate client (*i.e.*, parent, subsidiary or other entity under common control) as a client of the firm for any purpose unless a client-lawyer relationship has been established by an express written understanding with the firm. Similarly, the firm will not regard a representation that is adverse to an affiliate of a corporate client as adverse to the client. Accordingly, if there is a corporate family member of either of the Receivers that you wish to regard as a client for conflict purposes, please let me know. Finally, unless reflected in a separate agreement, Greenberg's representation of the Receivers as set forth herein does not include the representation of others, including individual officers, directors, partners, members, shareholders or employees of High Ridge Partners or Janus Hotel Management Services, Inc.

2.   Joint Representation and Potential Conflicts: In addition to Greenberg's representation of Receivers as set forth herein, Greenberg will continue its representation of Pennant in the Litigation and more generally. Based upon the Scope of our Engagement and the facts currently known to us, we see no actual or potential conflict between Pennant and the Receivers with respect to the matters within the scope of our representation of the Receivers as set forth herein. We have determined that we can adequately represent the interests of Pennant and the Receivers if each of Pennant and the Receivers knowingly consents to the joint representation. Indeed, the representation of the Receivers in connection with the matters within the scope of our engagement addressed in this letter will necessarily inure to the benefit of Pennant and the Receivers jointly. We therefore see no divergence of interest between Pennant and the Receivers in that regard. Nevertheless, joint representation as contemplated here has certain consequences that you need to consider and evaluate before we proceed in that fashion.

First, there is no attorney-client privilege between joint clients. We cannot, therefore, keep confidential from either Pennant or the Receivers any of the information communicated to us by Pennant or the Receivers in connection with matters within the scope of this engagement so long as the joint representation continues. Communications between Greenberg and Pennant that are not substantially related to the scope of our engagement herein will remain confidential and subject to the attorney client privilege. Accordingly, consistent with our obligation to represent Pennant and the Receivers as set forth herein, Greenberg may be required to disclose to Pennant and the Receivers information relating to the Hotel Sales or Lien Disputes that Pennant or the Receivers may consider to be confidential. In addition, in the event a dispute were to arise between Pennant and the Receivers, any information conveyed to Greenberg regarding the joint representation would not be privileged or confidential in any proceeding filed to resolve a dispute between Pennant and the Receivers.

Second, although we see no current conflict in the respective positions of

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 4

Pennant and the Receivers in connection with this joint representation, the possibility always exists that the interests of Pennant and the Receivers may diverge in the course of the joint representation or that facts will come to light suggesting an actual or potential conflict between Pennant and the Receivers with respect to the matters within the scope of our engagement herein. In the event of such occurrence, we will immediately bring the actual or potential conflict to your attention, and we ask that you do the same in the event that you become aware of facts or circumstances that are not known to us, or that are not fully appreciated by us, that you believe give rise to such an actual or potential conflict. In the event of an actual or potential conflict, we will confer with each of Pennant and the Receivers with respect to the possibility of obtaining an appropriate waiver of the conflict to allow us to continue this joint representation. In the event that the circumstances do not permit such a waiver, or in the event that one or the other of you is unwilling to grant such a waiver, we will be forced to terminate the joint representation. In that event, we would be free to continue to represent Pennant notwithstanding the actual or potential conflict, the Receivers would obtain separate counsel, and neither the Nanosky Receiver nor the Overall Receiver would seek to disqualify Greenberg from continuing to represent Pennant by reason of our prior joint representation of Pennant and the Receivers.

If you are aware, or during Greenberg's representation become aware, of any reason why you believe Greenberg's joint representation of the Receivers and Pennant should be discontinued, please contact me immediately. If at any time you consider that the Receivers' interests would be better served by retaining separate counsel, you are entitled to do so.

Finally, I invite and encourage both of you to consult with independent counsel with respect to these matters so that you may make a fully informed decision as to whether you desire the joint representation contemplated. If you do, and if you are in accord with the treatment discussed above of any conflict arising in the future, please so indicate by countersigning the copy of this letter enclosed.

3.  Conflicts: Our firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of our firm to choose us as their counsel, thereby precluding us from representing you or them in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that Greenberg may represent other present or future clients on matters other than those for which we had been or then are engaged on your behalf (referred to herein as "Subject Matter"), whether or not on a basis adverse to you or any of your affiliates, including in litigation, legal or other proceedings or matters, so long as the matter is not substantially related to our work for you on the Subject Matter (referred to herein as "Permitted Adverse Representation").

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 5

In furtherance of this mutual agreement, you agree that you will not for yourself or any other party assert Greenberg's engagement as set forth herein as a basis for disqualifying us from representing any party in a Permitted Adverse Representation or assert any Permitted Adverse Representation as a basis for any claim of breach of duty. For purposes of clarification, Permitted Adverse Representation shall not include matters or disputes arising against you with respect to the Subject Matter. Moreover, without your further prior written consent, we cannot and will not represent another client adverse to you if we have obtained confidential information of a nonpublic nature from you as a result of our representation that, if known to the other client, could be used in the other matter by the other client to your material disadvantage. The waivers and agreements in this letter will continue in effect upon the termination of this engagement.

4.. <u>Compensation and Expense Reimbursement</u>: We had previously agreed to discount the rates of all timekeepers in connection with our representation of Pennant by 10%. Consistent with our recent discussions and your request, we will discount the rates of all timekeepers on this matter by 20% effective July 1, 2015. I will take principal responsibility for this matter, and my discounted hourly rate is $680. As appropriate, I will enlist the assistance of other associates and paralegals, whose time is charged at much lower rates. The Hotel Sales will be principally handled by Mike Sullivan and Brandon Hueber in our Orlando office, and their discounted hourly rates will be $600 and $320 respectively. The Lien Disputes will be handled by myself and other Greenberg lawyers, principally Paul Ferak, whose discounted hourly rate will be $488. We will also use other lawyers and paralegals at Greenberg, and all of their time will be billed at similarly discounted rates. All fees shall be charged in accordance with the attached Billing Policies, provided however that to the extent there is any inconsistency between this Engagement Letter and those Billing Policies, the Engagement Letter will control.

In addition to fees for legal services, there are certain costs and expenses that you may be obligated to pay in accordance with the attached Billing Policies.

Beginning with the invoice for time and expenses beginning on July 1, 2015, Greenberg shall be entitled to submit monthly invoices for services rendered and expenses incurred and recorded during the previous month. Each invoice shall set forth the specific services rendered, the attorney or paralegal providing the services and their billing rate. All services will be billed in tenth of an hour increments. You may provide copies of Greenberg's monthly invoices to such persons that request copies. However, monthly invoices need not be filed with the Court. Unless there is an objection by you, or by any Intervenor, Distribution Participant or Interested Person as defined in the April 23rd Order that is conveyed to Greenberg within 21 days after a monthly invoice is submitted to you, and subject to the availability of adequate funds in the receivership estate, Greenberg shall be entitled to payment of 50% of the services invoiced and 100% of the expenses invoiced without further order of the Court; provided, however, Greenberg shall prepare and file with the Court every 90-120 days petitions for the allowance and payment of accrued fees and expenses. Those Petitions shall generally

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 6

comply with the guidelines set forth in this Court's June 30, 2015 Order governing the fees and fee petitions of Shaw Fishman as counsel for the Overall Receiver.

The failure to object to any monthly invoice shall not preclude you or any Party in Interest from later objecting to any interim or the final compensation application filed by Greenberg. In addition, payment of all monthly invoices, and amounts allowed pursuant to interim compensation and expense reimbursement petitions, shall be deemed conditional and subject to final review by the Court at such time as Greenberg's final compensation and expense reimbursement petition is heard and determined by the Court.

The provisions of Paragraph 41 of the April 23rd Order are incorporated herein by this reference and are applicable to all monthly invoices, interim and final applications for compensation made by Greenberg. In the event an objection is made by you or an Intervenor, Distribution Participant or Interested Person as defined in the April 23rd Order to any monthly invoice, only the undisputed portion of the invoice shall be paid and the disputed portion of the invoice shall be submitted to the Court for resolution in the next filed interim compensation and expense reimbursement petition, unless otherwise resolved by agreement prior thereto. All objections to any monthly invoice shall be in writing, shall specify the particular services or expenses that are subject to the objection and the factual or legal basis for the objection. Objections to monthly invoices need not be filed with the Court and may be in the form of a letter or email directed to my attention.

      6.    <u>Responsibilities of Attorney and Client.</u>

We will provide strictly legal services to the Receivers in connection with this engagement. You are not relying on us for, and we are not providing, any business, investment, insurance or accounting decisions or any investigation of the character or credit of persons with whom you may be dealing. We are also not providing you advice relating to any tax implications which may result from the subject matter of our representation.

In order for us to assist the Receivers effectively and efficiently, we expect that you will provide us with the factual information you have which relates to the subject matter of our engagement, and that you will make any appropriate business or technical decisions. In addition, we encourage you to share with us at all times your expectations and any concerns regarding our services at any time during the course of our representation. We believe that you should be actively involved in the strategy and management of your legal affairs and our goal is to encourage candid and frequent communication between us. We will keep you informed of developments regarding your matters and will consult with you as necessary to ensure the timely, effective and efficient completion of our work.

      7.    <u>Permission to Use Information in Marketing of the Law Firm:</u> By signing this Agreement, you agree that your name, logo, and a general description of this matter

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 7

may be used by Greenberg in its business development efforts and materials.

8.    Cooperation: In order to enable us to effectively render the services contemplated, you agree to disclose fully and accurately all facts and to keep us apprised of all developments relating to the matter. You agree to cooperate fully with us and to make yourselves or your firm representatives available when necessary.

9.    Termination of Representation: It is understood that, subject to any limitations imposed by the court or the applicable rules of professional responsibility, Greenberg or you may terminate our representation in accordance with the attached Billing Policies.

Otherwise, our attorney client relationship will be considered terminated upon the completion of the specific services that you have engaged us to perform for the Receivers or when more than four months have elapsed from the last time that you requested and we furnished any billable services to the Receivers. If you later retain us to perform further or additional services, the attorney/client relationship will be revived on the terms of this engagement letter, subject to any new or supplemental terms of engagement that we may agree upon at that time. The fact that we may inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a revival of an attorney/client relationship.

10.    Warranty: You acknowledge that we have made no guarantees as to the outcome or the amounts recoverable in connection with this matter.

11.    Client Documents: We will maintain any documents you furnish us in our client file (or files) for this engagement. At the conclusion of this engagement (or earlier, if appropriate), it is your obligation to advise us as to which, if any, of the documents in our files you wish us to return to you. We will retain any remaining documents in our files for a reasonable period of time and ultimately destroy them in accordance with our record retention program schedule then in effect. We may also elect to retain copies of the documents we return to you, which will ultimately be destroyed in accordance with our record retention program schedule.

If you request a copy of some or all of the file for this matter, whether before or after the termination of our representation of you, you agree that we may, to the extent permitted by law, charge you a reasonable fee for copying the file as well as for any associated delivery and assemblage costs.

In the event that our representation is terminated and you have not paid for all services rendered and/or other charges accrued on your behalf to the date of our withdrawal, we may, to the extent permitted by law, assert a retaining lien against any documents or files remaining in our possession until such charges are paid.

12.    Choice Of Law: All of the rights and obligations of Greenberg and you

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 8

arising under or related to this agreement shall be governed by the laws of the State of Illinois.

13. <u>Confirmation Of Agreement</u>: We encourage you to consult with other counsel or advisors of the choice regarding these matters, and to consider fully the possible implications of our representation on the basis described. If the foregoing is agreeable, please acknowledge your understanding and agreement by signing and returning a copy of this letter, which shall control all obligations set forth herein except as may subsequently be agreed upon in writing. Our engagement will commence upon our receipt of the signed copy of this letter. For your convenience, we have enclosed a self-addressed, stamped envelope.

We appreciate your confidence in our firm and assure you that we will make every effort to perform our services in a prompt and efficient manner.

Very truly yours,

GREENBERG TRAURIG, L.L.P.


By: _____

Mr. Patrick Cavanaugh
Mr. Michael Nanosky
July 17, 2015
Page 9

**ACCEPTED AND AGREED WITH**

**CONSENTS AND WAIVERS GRANTED**

Patrick Cavanaugh, not individually but solely as Overall Receiver

By:_____        Dated: _____
       Receiver

Michael Nanosky, not individually but solely as Receiver

By:_____        Dated: _____
       Receiver

Enclosure

## BILLING POLICIES

### Introduction

We look forward to doing business with you. This document outlines our standard billing practices.

### Fees

Our fees are based on the time required to handle the matter at our normal individual lawyer/paralegal hourly rates. The effective discounted rates for lawyers we contemplate using on aspects o0f this matter range from $225 per hour for the most junior associates to $765 per hour for our most senior attorneys. The effective discounted rate for the paralegal assigned to this matter is $256.50 per hour. The rates of our lawyers and paralegals are subject to change. Any new rates would be implemented immediately after they are adopted and would apply to services rendered after the effective date thereof.

Whenever appropriate and consistent with the proper representation of our clients, we may use paralegals, junior attorneys, contract attorneys and staff members in order to minimize the impact of the hourly rates of the more senior attorneys. We believe the utilization of junior attorneys, paralegals or staff members, in consultation with and under supervision of more experienced attorneys in the Firm as appropriate, may enable us to maintain economically and efficiently the high quality of our legal representation, while permitting us to both avoid sacrificing the quality of our work for lower fees and to avoid assigning senior attorneys tasks which can be performed efficiently by junior attorneys, paralegals or other staff members.

We will charge for all time spent representing your interests, including, by way of example, telephone and office conferences with you or your representatives, co-counsel, opposing counsel, fact witnesses, consultants (if any), and others; conferences among our legal and paralegal personnel; participation in discovery; factual investigation; legal research; responding to your requests for us to provide you or your representatives with additional information; responding to clients' requests to provide information to auditors in connection with reviews or audits of financial statements; preparation of letters, pleadings, and other documents; and attendance at depositions, hearings, mediations, closings, trials, or other proceedings; and travel (both local and out of town). Hourly charges are applied to total time devoted to client representation including travel time, when necessary.

### Costs and Expenses

We have established prevailing rates for all charges that will be incurred during the course of this representation. We believe that rates charged are competitive with charges established by comparable law firms. You will be responsible for all such charges that we incur in the course of this representation and will be responsible for reimbursing us for any actual costs advanced on your behalf. Greenberg is committed to remaining at the cutting edge of modern computer and communications technology so as to provide our clients with optimum competitive advantage and technological efficiencies. Our charges include, but are not limited to travel, copying, facsimile charges, messenger services, long distance phone calls, computer research

July __, 2015
Page 2

services, secretarial overtime and filing fees. These charges may also include any sales or service tax that may be applicable.

**Expenses of Outside Contractors**

Generally, expenses of outside contractors, such as court reporters, surveyors, title companies, will be directly billed or directed to the client pursuant to retainers in which payment and indemnification terms remain strictly between the client and the vendor. Greenberg Traurig will not be responsible for payment of such services. It is important to note that the prompt payment of these charges to outside contractors is essential to be able to provide timely and efficient service to you in the future, with the assistance of such contractors. If desired, with sufficient expense deposits in advance, we will directly pay the outside contractors.

**Type of Invoice**

Fee applications submitted pursuant to Section F of the Receiver Order will reflect the amount of our fees and expenses attributable to the matter. Those applications will have a detailed backup sheet showing the attorney that worked on the matter; the work performed; the time spent on the task; and, the total fee amount due.

**Payment of Invoices**

Payment of our Fee Applications will be pursuant to the process contemplated by Section F of the Receiver Order. We will expect payment of any fees ultimately approved by the Court to be made with reasonable promptness following entry of such approval order.

**Retainers**

For certain types of matters, our policy is to require that our clients provide us with an initial fee retainer and expense deposit. The exact amount of this retainer and deposit will be agreed to by the client and the billing attorney. Unless other arrangements are made, the retainer for legal fees and expenses will be held throughout the engagement and will be applied against payment of the last invoice on the matter or refunded if the account is up to date. The cost and expense deposit will be retained in our trust account, with interest on that account to be paid in accordance with the rules of the Illinois Supreme Court.

**Different Billing Arrangements**

Individual billing arrangements that differ from these general policies will be discussed and agreed to between the client and the billing attorney and will be set forth in a retention letter.

**Attorney's Lien**

To secure payment to Greenberg of all sums due under this Agreement for legal services rendered and/or costs advanced, you hereby authorize us to withdraw sums from our client trust account to pay your statements for services as such sums are billed, and grant us a lien for attorneys' fees and costs on all retainers, escrow accounts, trust accounts, real, personal or

July ___, 2015
Page 3

intangible property claims and causes of action subject to our representation of you and the proceeds of any recovery obtained.

## Mutual Right to Terminate Relationship

Of course, every client has the right to terminate our representation at any time for any reason. We have the same right upon giving the client reasonable notice so that suitable arrangements can be made by the client to obtain alternative representation, in accordance with the Rules of Professional Responsibility governing the Illinois Bar. Among the reasons for which we may terminate representation are: (1) nonpayment of our fees, charges or costs; (2) the client's failure or refusal to be forthright, cooperative or supportive of our efforts; (3) the client's misrepresentation of, or failure or refusal to disclose material facts; (4) the client's failure or refusal to accept our advice; (5) discovery of a conflict with another client of Greenberg, or (6) any other reason permitted or required under the Rules of Professional Responsibility governing the Illinois Bar.

Subject to any limitations imposed by a court, Greenberg or you may terminate Greenberg's representation subject to entry of an Order by the Court presiding over the Litigation approving that termination. Following termination, we will continue to provide representation in the matter for a reasonable time, at your request, until arrangements can be made for alternate representation. However, our services will consist of only those necessary to protect your interests and prevent prejudice. Moreover, if substitute counsel have not been located within ten (10) days of the termination of the representation, you nonetheless agree that appropriate papers allowing Greenberg to withdraw may be filed. We will be entitled to be paid for all services rendered and other charges accrued on your behalf to the date of our withdrawal.

## Official Inquiries

It is possible that because we have been appointed in a matter, or because we have received documents or information in the course of, or in connection with, a matter, we may be required in the future to participate in an inquiry, commission or proceedings arising out of, or in connection with, the matter. This may, for example, involve us producing documents, seeking to claim or defend your privilege to resist inspection or disclosure of certain documents or information or giving evidence at an inquiry. We will seek your instructions if these circumstances arise, but you agree to reimburse us for out-of-pocket expenses and for the time we spend at hourly rates then current.

## Questions Regarding Billings

Any questions regarding billing should be immediately directed to the billing attorney or to our Accounting Department.