**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PENNANT MANAGEMENT, INC.,

                               Plaintiff,

    vs.

FIRST FARMERS FINANCIAL, LLC, *et al.*,

                              Defendants.

ILLINOIS METROPOLITAN
INVESTMENT FUND and HARVARD
SAVINGS BANK, an Illinois Savings Bank,

                     Plaintiff-Intervenors,

    vs.

FIRST FARMERS FINANCIAL, LLC, *et al.*,

                              Defendants.

Case No. 14-cv-7581

Hon. Amy J. St. Eve

## MEMORANDUM OPINION AND ORDER

Patrick Cavanaugh, as receiver of the Overall Receivership Estate ("Overall Receiver")

and Michael Nanosky, as receiver of the Nanosky Receivership Estate ("Nanosky Receiver")

(collectively, "the Receivers") move for the entry of an order approving the sale of five hotel

properties (the "Hospitality Properties"), and related relief [160]. For the following reasons, the

Court grants in part and denies in part the Receivers' motion.

## BACKGROUND

Pennant Management, Inc. ("Pennant") is a Registered Investment Advisor in the

business of acquiring loans on behalf of its clients guaranteed by the U.S. Department of

Agriculture ("USDA") or the U.S. Small Business Administration ("SBA") from third-party

1

USDA and SBA approved lenders, such as First Farmers Financial, LLC ("First Farmers"). (R. 182, Second Am. Compl. ¶¶ 1, 27.) From June 2013 to August 2014, Pennant purchased the federally guaranteed portions of 26 separate loans originated by First Farmers. (*Id.* ¶ 30.) In September 2014, Pennant allegedly discovered that none of the 26 borrowers of the First Farmers' loans actually existed, and that the loans were part of a massive fraud. (*Id.* ¶¶ 37, 46.) Thus, on September 29, 2014, Pennant filed its original complaint against First Farmers and associated individuals and entities. (R. 1, Compl.)

At the request of the parties, on November 10, 2014, the Court entered an agreed order designating Michael M. Nanosky as the Receiver (the "Nanosky Receiver") to exercise control over certain assets of Defendants, including maintaining and preserving certain hospitality and real properties that they owned or controlled. (R. 29, Initial Receiver Order ¶¶ 2, 4-5, 8.) These assets included the five Hospitality Properties: (i) Crowne Plaza Orlando—Lake Buena Vista, 12490 Apopka-Vineyard Rd., Orlando, FL 32836; (ii) Crowne Plaza Saddlebrook, 50 Kenny Pl., Saddlebrook, NJ 07663; (iii) Four Points by Sheraton, 500 Hamilton Blvd., Peoria, IL 61602; (iv) Doubletree by Hilton Hotel—Orlando East, UCF Arena, 12125 High Tech Ave., Orlando, FL 32817; and (v) Renaissance by Marriott—Orlando Downtown, 400 W. Livingston St., Orlando, FL 32801. (*Id.* ¶ 5.) On April 23, 2015, the Court entered the Amended Receiver Order, which gave Mr. Nanosky continued control over those assets. (R. 122, ¶¶ 4, 5.) The Amended Receiver Order also appointed Patrick Cavanaugh as the Receiver of the Overall Receivership Estate, which includes "all assets other than those assets entrusted to the Nanosky Receivership Estate." (*Id.* ¶ 24(b).) In the event the two Receivers are unable to agree, absent further direction from the Court, the Overall Receiver has the authority to determine how the Nanosky Receiver should proceed. (*Id.* ¶ 10.)

The Receivers now move for the entry of an order authorizing the sale of the Hospitality Properties, and related relief (the "Motion"). Specifically, they request approval to sell the Hospitality Properties to potential purchasers that submitted bids in an online auction conducted by Auction.com. The online auction closed on July 22, 2015, and counsel for the Overall Receiver represents that the winning bids total over $86 million for the five Hospitality Properties. (R. 240.)

In the Motion, the Receivers represent that they provided notice of the Motion to all parties on the Court's electronic service list, and to all known entities that asserted an interest in the Hospitality Properties. The Court entered the Motion on June 26, 2015 and set a deadline of July 8, 2015 for responses. To date, the Court has received responses from non-party CVC Hospitality, Inc. ("CVC Hospitality") (R. 195), non-party True Line Contracting and Remodeling, Inc. ("True Line") (R. 179), and the United States (R. 203).

## ANALYSIS

The Receivers have moved for the entry of an order authorizing the sale of the Hospitality Properties, and related relief. Specifically, the Receivers request that the Court: i) authorize the Receivers to sell the Hospitality Properties free and clear of liens, claims and encumbrances (collectively, the "Interests"), with such Interests, if any, attaching to the proceeds of the sale (the "Sale Proceeds") with the same force and in the same priority as currently exists; ii) stay all proceedings in other jurisdictions seeking to adjudicate any Interests in the Hospitality Properties or the Sale Proceeds; iii) set a date by which all parties asserting an Interest in the Hospitality Properties or the Sale Proceeds must file claims with the Court; and iv) approve the proposed sale procedures and grant related relief. In response, several entities have objected on different bases. For the sake of clarity, the Court first addresses the issues with respect to the

Receiver's authority to sell the Hospitality Properties and the Court's authority to stay related actions in other jurisdictions, then addresses the sale process itself.

## I.     Authority of Receiver and Court

The Receiver argues that the Court should permit it to sell the Hospitality Properties free and clear of all Interests, and to stay all actions relating to the Hospitality Properties currently pending in other courts.  In response, the Court has received several objections.  First, the United States objects on the basis that 28 U.S.C. § 2410 prevents the Receivers from selling Four Points by Sheraton, 500 Hamilton Blvd., Peoria, IL 61602 (the "Peoria Property") because the SBA holds a mortgage lien on that property.  Second, non-party CVC Hospitality argues that the Receiver does not have the authority to sell the Hospitality Properties, and also that the Receiver has not complied with the requirements of 28 U.S.C. § 754.  (R. 195).  Next, non-party True Line Contracting makes several arguments.  It argues that the Receiver does not have the authority to sell the Hospitality Properties, both for similar reasons to CVC Hospitality and also for additional reasons specific to True Line.  It also contends that the Receiver has not complied with the requirements of 28 U.S.C. § 754.  Finally, with respect to the Receivers' proposed stay, True Line argues that the federal Anti-Injunction Act, 28 U.S.C. § 2283, bars the Court from entering a stay of another action pending in state court.  The Court addresses each issue in turn.

### A.     The Peoria Property

As an initial matter, the United States argues that 28 U.S.C. § 2410(c) prevents the Receivers from selling the Peoria Property because the SBA holds a mortgage on the property.  28 U.S.C. § 2410(c) states in relevant part that: "[a] sale to satisfy a lien inferior to one of the United States shall be made subject to and without disturbing the lien of the United States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled."  28 U.S.C. § 2410(c).  The Receivers reply that they are not

selling the Peoria Property to "satisfy a lien." Instead, they are selling the property free and clear of any liens to maximize the proceeds of the sale, and then seek to "quiet title" to the property under 28 U.S.C. § 2410(a). *See* 28 U.S.C. § 2410(a) ("…the United States may be named a party in any civil action or suit in any district court … (1) to quiet title to … real or personal property on which the United States has or claims a mortgage or other lien.")

The Court agrees with the government. 28 U.S.C. § 2410(c) sets forth a detailed framework for the judicial sale of property on which the government holds a lien. While the Receivers are correct that 28 U.S.C. § 2410(a) waives the sovereign immunity of the United States to allow parties to bring suit to quiet title to real property on which the government holds a mortgage, there is no provision in 28 U.S.C. § 2410 that indicates a party can first sell a property free and clear of a government lien, and *then* quiet title to the proceeds.

The cases that the Receivers cite are not to the contrary. In *Boresek v. USDA*, for example, the court interpreted claims to "quiet title" under § 2410(a) to include "claims to determine the priority of competing liens." *Boresek v. USDA*, No. 12-cv-02138, 2014 WL 4792587, at *10 (D. Ore. September 23, 2014). Thus, the court found that § 2410 waived the sovereign immunity of the United States to allow the plaintiff to bring a claim for equitable subrogation against the United States asserting that the plaintiff's lien should take priority over the lien of the government. *Id.* *Boresek* does not stand for the proposition, however, that because § 2410 waives the sovereign immunity of the United States with respect to certain lien claims, a party with a claim to real property on which the government holds a lien may sell the property free and clear of the government's lien in anticipation of an action for quiet title to determine the validity and priority of the parties' rights to the proceeds.

As the United States suggests, the Receivers can sell the Peoria Property subject to the

SBA mortgage, they can pay the SBA in full at the closing of the sale, which the government

represents would release the mortgage, or the Receivers can attempt to reach an alternative

agreement with the government to release the lien. The Receivers also note that they may have a

claim to reinstate a mortgage on the Peoria Property for the benefit of the defrauded investors,

which the government concedes may have priority over the SBA's mortgage. If and when that

mortgage is reinstated, that could change the analysis. As the facts stand now though, 28 U.S.C.

§ 2410 does not allow the Receivers to sell the Peoria Property free and clear of the

government's mortgage without first obtaining its consent. For these reasons, the Court denies

without prejudice the Receivers' motion for approval to sell the Peoria Property free and clear of

all Interests.[1]

### B.      Receivers' Authority to Sell the Remaining Properties

The Receivers move to sell the remaining four Hospitality Properties free and clear of all

Interests and for the Court to issue a stay on litigation involving the Hospitality Properties in

other jurisdictions. In support of their Motion, the Receivers cite *Eller Industries, Inc. v. Indian

Motorcycle Manufacturing, Inc.*, 929 F.Supp. 369, 371-73 (D. Colo. 1995). In that case, the

district court addressed whether its jurisdiction over a receivership precluded a bankruptcy

trustee in another jurisdiction from enforcing a preliminary injunction against the receiver. In

finding that it did, the court addressed its jurisdiction over the receivership and the authority of

the receiver:

---

[1] Given the $5.8 million bid that the Receivers received for the Peoria Property, the Court directs
the government and the Receivers to discuss a resolution of this issue that would allow for the
property's sale free and clear of the SBA's lien. (*See* R. 240.) If the Receivers request that the
Court move forward with a hearing on the Peoria Property's sale, they should file a separate
motion addressing that issue.

By ordering [the company] into receivership, all assets of the company were placed in the custody of the Court. This Court therefore has exclusive jurisdiction with respect to the administration, possession and control of [the company's] assets, and this control cannot be disturbed without leave of this Court.

The objective of this Receivership is to prevent fraud and material injury to assets of [the company] and to preserve them for all parties in interest…The Receiver is charged with the duty of managing the estate and property entrusted to his care. It must collect and preserve corporate property from imminent danger of loss, waste or dissipation and administer the receivership, free from outside interference with estate property.

*Id*. at 372 (internal citations and quotations omitted).

A number of circuits, including the Seventh Circuit, have emphasized the equitable power of the district court to appoint a receiver, and the discretion of the receiver to administer the assets under its control. "Federal courts have an inherent equitable power to appoint a receiver to manage a defendant's assets during the pendency of litigation…The appointment of a receiver is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit." *Matter of McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994) (citation omitted). The Sixth Circuit explained the roles of the district court and the receiver in a non-bankruptcy receivership as follows:

[W]e review the powers of a federal district court presiding over an equity receivership. Such receiverships are increasingly rare. The realm of bankruptcy encompasses the vast majority of cases involving receivership, and in that realm Congress has spoken by setting forth broad and detailed statutes to guide federal courts in the disposition of such cases. There remains a class of cases, however, in which the federal courts may exercise their equitable powers and institute receiverships over disputed assets in suits otherwise falling within the federal court's jurisdiction, but which fall outside the statutory bankruptcy proceedings or other legislated domain. In this range of cases the federal courts exercise the traditional, common law powers of equity…

A district court enjoys broad equitable powers to appoint a receiver over assets
disputed in litigation before the court. The receiver's role, and the district court's
purpose in the appointment, is to safeguard the disputed assets, administer the
property as suitable, and to assist the district court in achieving a final, equitable
distribution of the assets if necessary.

*Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). *See also S.E.C. v.*

*Byers*, 609 F.3d 87, 92-93 (2d Cir. 2010); *United States v. Acorn Tech. Fund, L.P.,* 429 F.3d 438,

443 (3d Cir. 2005).

Thus, the Court agrees with the Receivers that they generally have broad authority to

administer the property in the receiverships. The next question is whether the Court should grant

their requests to sell the Hospitality Properties free and clear of all Interests, and to issue a stay

of proceedings in other jurisdictions involving the Hospitality Properties. "[I]t has long been

recognized that under appropriate circumstances, a federal court presiding over a receivership

may authorize the assets of the receivership to be sold free and clear of liens and related claims."

*Regions Bank v. Egyptian Concrete Co.*, No. 09-cv-1260, 2009 WL 4431133, at *7 (E.D. Mo.

Dec. 1, 2009). A leading treatise on receiverships states as follows with respect to whether a

court should permit a receiver to sell real property free from liens:

In a sale free from liens, the rights of the parties who are lienholders must be
preserved and transferred from the property sold to the proceeds of the sale, with
the same rank and dignity which such rights or liens bore to the original property.

Persons who have an interest in the res, and creditors who are secured by a lien or
mortgage on the res, cannot have their interests, liens or rights in the res or its
proceeds cut off or foreclosed without being properly notified and summoned to
appear in the receivership court for that purpose…

The property should not be sold free of liens unless it is made to appear that there
is a reasonable prospect that a surplus will be left for general creditors or, in other
words, that a substantial equity is to be preserved.

2 Clark on Receivers (3d ed. 1959) § 500(b). The Seventh Circuit has also held, albeit in the

bankruptcy context, that "[a]s a general rule," a court "should not order property sold 'free and

clear of' liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the … estate." *Matter of Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982).  The Receivers also argue that "[w]here the asserted liens are disputed and other good cause exists," the Court may authorize a sale of real property free and clear of liens despite asserted lien amounts that are greater than the sale price.  *See Coulter v. Blieden*, 104 F.2d 29, 32 (8th Cir. 1939) (holding in bankruptcy that a court "in its discretion may sometimes order properties free and clear of liens, even though the amount of the recorded mortgages equals or is greater than the value of the property, especially where there is a possibility of the mortgages being held invalid…")

With respect to the Court's authority to issue a stay of proceedings in other jurisdictions involving the Hospitality Properties, the Receivers cite *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  In that case, the Ninth Circuit held that the district court had the authority to issue a stay order in a securities fraud action that prohibited non-parties from commencing litigation in other jurisdictions except with leave of the district court.  *Id*. at 1372.  Although the United States in its objection argues that the decision in *Wencke* was based on securities law considerations, the Ninth Circuit stated in *Wencke*:

> The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action.  The district court took control over the properties in question when it imposed the receivership…The blanket stay was found by the district court necessary to achieve the purposes of the receivership.   We conclude the district court had the power to enter the order.

*Id*. at 1369.  *See also United States v. Acorn Tech. Fund, L.P.*, 429 F.3d at 443 ("The purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear.  A receiver

must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant.")

Thus, while the Court finds that it has the authority to grant the Receivers' request to sell the Hospitality Properties free and clear of liens and to issue a stay of related litigations in other jurisdictions under the appropriate circumstances, the Court will hold a hearing to determine whether the Receivers' requests are in the best interest of the receivership estates. The Receivers have the authority to proceed forward with the sale process of the four non-Peoria Hospitality Properties and to sell them if the Court approves their sale at the hearing. A hearing will also provide entities with an Interest in the Hospitality Properties the opportunity to object to the sale, and to the Receivers' proposal to attach any Interests to the Sale Proceeds with the same force and in the same priority as currently exists. *See Liberte Capital Grp., LLC*, 462 F.3d at 552 ("To the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings.")

In its objection to the Receiver's Motion, for example, CVC Hospitality argues that the Receivers' sale of the properties would force all creditors with an interest in the Hospitality Properties to lose any priority status they had with respect to a particular Hospitality Property, and could force them into a dispute with other creditors to recover the money owed to them. In response, the Receivers represent that they have received bids for the four non-Peoria Hospitality Properties that are greater than the total lien amounts on each of those respective properties. (R. 240.) In total, the Receivers have received bids of approximately $81 million for those four properties. (*Id.*)

## C.      Receivers' Compliance with 28 U.S.C. § 754

Next, CVC Hospitality and True Line both argue that the Receivers have not complied

with the requirements of 28 U.S.C. § 754, which they claim divests the Receivers of jurisdiction

over the Hospitality Properties.  That statute states in pertinent part:

> A receiver appointed in any civil action or proceeding involving property, real, personal
> or mixed, situated in different districts shall, upon giving bond as required by the court,
> be vested with complete jurisdiction and control of all such property with the right to take
> possession thereof…
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies
> of the complaint and such order of appointment in the district court for each district in
> which property is located.  The failure to file such copies in any district shall divest the
> receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754.

In response, the Receivers note that the Court appointed the original Nanosky Receiver

on November 10, 2014, and admit that the Nanosky Receiver did not file the court documents in

each district in which the individual Hospitality Properties are located as required by § 754.  The

Receivers argue that on April 23, 2015, however, the Court entered an order re-appointing the

Nanosky Receiver and appointing Patrick Cavanaugh as the Overall Receiver (the "April 2015

Receivership Order").  The Receivers further contend that within 10 days of that order, the

Receivers filed copies of the required documents in the District of New Jersey, the Central

District of Illinois, and the Middle District of Florida—the jurisdictions in which the Hospitality

Properties are individually located.  In support of its argument, the Overall Receiver filed proofs

of filing of those documents on the docket in this case.  (*See* R. 174.)  True Line and CVC

Hospitality do not contest that the Receivers filed those documents in the appropriate outside

jurisdictions within ten days of the April 23, 2015 Receivership Order.

Courts have found that even if a receiver does not comply with the filing requirements of

28 U.S.C. § 754 originally, the court's re-appointment of a receiver resets the ten-day clock

under § 754 and gives the receiver another chance to comply with its requirements. *See S.E.C. v. Vision Comms., Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996) ("On remand, the court may reappoint the receiver and start the ten-day clock of § 754 ticking once again. Presumably, the receiver will take advantage of his second chance to comply with § 754 and promptly file the necessary papers … Once he does so, the receiver will have jurisdiction over the … property."); *S.E.C. v. Heartland Grp., Inc.,* No. 01-cv-1984, 2003 WL 21000363, at *5 (N.D. Ill. May 2, 2003) ("[T]he court can easily correct this failure to file such a claim by merely reappointing the Receiver and thereby starting the 10-day time period under § 754 ticking once more.") Although True Line argues that these cases stand for the proposition that courts excuse failure to comply with the requirements of § 754 only in exceptional circumstances, both courts discussed that principle only in the context of a receiver failing to comply with § 754 *altogether*, not under circumstances where a receiver has already complied with § 754 upon re-appointment. *See Vision Comms., Inc.*, 74 F.3d at 290-91; *Heartland Grp., Inc.*, 2003 WL 21000363, at *5.

Here, the April 2015 Receivership Order re-appointed the Nanosky Receiver and appointed the Overall Receiver for the first time. Because the Receivers complied with the requirements of 28 U.S.C. § 754 within 10 days of that order, the Court denies CVC Hospitality's and True Line's objections on the basis that the Receivers' failure to comply with § 754 divests them of jurisdiction over the Hospitality Properties.

### D. The Anti-Injunction Act

True Line also argues that the Anti-Injunction Act, 28 U.S.C. § 2283, bars the Court from issuing an injunction staying its state court proceedings with respect to the Hospitality Properties. That statute reads as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

"The Anti-Injunction Act, 28 U.S.C. § 2283, bars a district court from enjoining pending state litigation unless the injunction falls within one of the Act's three stated exceptions…Because of the Act's constitutional foundation, its three exceptions are to be applied narrowly, and '[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed…'" *Zurich Am. Ins. Co. v. Superior Court for State of California*, 326 F.3d 816, 824-25 (7th Cir. 2003) (quoting *Atlantic Coast Line R.R. Co. v. Broth. of Locomotive Eng'rs.,* 398 U.S. 281, 297, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). Further, "even if the injunction is authorized by one of the exceptions, a district court must still determine whether an injunction is an appropriate exercise of its authority." *Zurich Am. Ins. Co.*, 326 F.3d at 824.

The Supreme Court has "acknowledged the existence of an historical exception to the Anti-Injunction Act in cases where the federal court has obtained jurisdiction over the res, prior to the state-court action…[T]he 'necessary in aid of' exception to § 2283 may be fairly read as incorporating this historical in rem exception." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641-42, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). "Ordinarily, the 'aid of jurisdiction' exception to the Anti-Injunction Act applies only to parallel state *in rem* rather than *in personam* actions." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201-02 (7th Cir. 1996).

In *United States v. Alpine Land & Reservoir Co.*, for example, the Ninth Circuit noted that "it has long been held that the first court to exercise jurisdiction over real property is entitled to enjoin proceedings in another court regarding that property." *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1014 (9th Cir. 1999). Accordingly, the court held that the Anti-Injunction Act, 28 U.S.C. § 2283, did not preclude a federal court from issuing an injunction to

stay proceedings in a state court under those circumstances. *Id*. at 1014-15. Here, the Court appointed the Nanosky Receiver on November 10, 2014 to control the Hospitality Properties, and potentially to "market and sell" them. (R. 29.) The Receivers represent that True Line filed each of its state court foreclosure actions after November 10, 2014, and that no state court has appointed a receiver in any of those actions. Thus, the Court agrees that the Anti-Injunction Act does not preclude the Court from entering a stay of True Line's litigation in other jurisdictions involving the Hospitality Properties. Accordingly, the Court denies True Line's objection on that basis.

### E.  True Line Issues

In addition to the objections discussed above, True Line makes a number of individual arguments. First, it makes several objections based on its contention that the Court previously found that it lacked jurisdiction over True Line's claims in the Court's ruling on True Line's motion for intervention. Second, True Line argues that the Receivers are estopped from arguing that the Receivership can affect True Line's mechanic's liens because the Receivers previously represented that the receivership estate would not seek to affect True Line's lien rights, and that True Line should enforce its rights in state court. True Line further contends that the Receivers have actively participated in the state court proceedings and True Line has incurred substantial costs and fees to prosecute its claims in state court. Third, and finally, True Line makes a number of arguments objecting to the proposed sale because of the inadequate value that it would likely receive for the release of its liens.

The Court first addresses True Line's arguments with respect to the Court's January 27, 2015 Order denying True Line's motion to intervene (the "Intervention Order"). (*See* R. 85.)

True Line fundamentally misconstrues the Intervention Order.[2]  In its motion to intervene, True Line argued, among other things, that the Court should grant it leave to intervene to allow it to file a motion to dismiss the entire action based on its theory that the addition of True Line as a plaintiff would destroy the Court's diversity jurisdiction.  True Line sought to pursue state law claims against Defendants, many of whom True Line represented were citizens of the same state as True Line.  The Court refused to grant it permissive intervention under Federal Rule of Civil Procedure 24(b), in part because True Line itself argued that the Court lacked "independent jurisdiction" over True Line's claims.  The Court also denied True Line permissive intervention because True Line's claims for unpaid construction work did not share any common issues of law or fact with the main action that alleges an approximately $180 million financial fraud.  (R. 85.)

Contrary to True Line's arguments in its objection, the Court did not make a finding in the Intervention Order with respect to whether the Court possessed supplemental jurisdiction to hear True Line's claims given the Nanosky Receivership.  (R. 85.)  The Court also did not address its subject matter jurisdiction to adjudicate True Line's lien in the event of a future sale of the Hospitality Properties by the Receiver.  Indeed, the Court denied True Line's motion for intervention as of right under Rule 24(a) in part because the Court had ordered Pennant to notify the Court of the proposed sale of any of the Hospitality Properties, and in the absence of a

---

[2] True Line also contends that the Court denied its motion to intervene as moot.  This is incorrect. After True Line filed its original motion to intervene (R. 35), the Court entered an order instructing True Line to file the motion with its proposed pleading attached (R. 46.)  True Line then did so.  (R. 48.)  The Intervention Order denied True Line's motion to intervene with the proposed pleading attached (R. 48) on its merits.  (R. 85.)  The Court then denied True Line's original motion (R. 35) as moot because the Court had ruled on True Line's subsequently filed motion (R. 45.).  (R. 85.)

pending sale, True Line had other avenues of pursuing relief. Those other avenues included requesting payment from the Nanosky Receiver and pursuing its state law claims in state court.

The Court has subject-matter jurisdiction to adjudicate True Line's lien claims in connection with the Receivers' proposed sale of the Hospitality Properties. "The ancillary jurisdiction of federal courts over actions incident to a receivership established by a federal court has long been recognized." *Tcherepnin v. Franz*, 485 F.2d 1251, 1255 (7th Cir. 1973) (holding that the district court had ancillary jurisdiction and thus did not need independent jurisdiction over actions that "were consonant with the[] goals" of the receivership). "The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Riehle v. Margolies,* 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669 (1929)). Thus, True Line's arguments that rely on its contention that the Court previously found that it lacked jurisdiction over True Line's claims simply fail.

The Court is also not persuaded by True Line's argument that the doctrine of judicial estoppel prevents the Receivers from selling the Hospitality Properties. The Seventh Circuit has recognized three factors that "typically inform the decision" to apply judicial estoppel. *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). These factors are: 1) "a party's later position must be clearly inconsistent with its earlier position;" 2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and 3) "the party seeking to assert an inconsistent position would

derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. Here, the doctrine clearly does not apply. First, no party has misled the Court, or acted inconsistently to create the perception that the Court was misled. Second, neither Pennant Management nor the Receivers have taken an inconsistent position. When True Line moved to intervene in the case, Pennant objected in part because "True Line's interest will not be impaired by this proceeding because no sale of the hotel properties can occur without a resolution of True Line's mechanic liens claims … and True Line will, of course, have advance notice of any sale…" (R. 61, Pennant Resp., at 2.) Now the Receivers seek to sell the Hospitality Properties, and True Line is objecting to protect its interests.

Finally, the Court does not address True Line's remaining arguments objecting to the inadequacy of the value that it would likely receive through the Receivers' proposed sale in exchange for the release of its liens. True Line argues, for example, that the proceeds from a foreclosure sale would either compensate True Line in full for its liens, or True Line would receive title to that property. True Line argues that it may receive less through the Receivers' proposed sale. The Receivers, however, have represented that the July 2015 auction resulted in bids for each of the Hospitality Properties (other than the Peoria Property) that will far exceed the face amount of the asserted liens. (R. 240.) To the extent that True Line would like to continue asserting these objections, it should direct them to the Court as part of the hearing process that the Court delineates below.

## II.    Sale of Hospitality Properties

The Receivers also request that the Court enter an order approving their proposed sale process, and related relief, including setting a hearing date to confirm the sale. The Court first examines the sale process, and then addresses the hearing on the sale itself.

## A.    Sale Process

The Receivers submit proposed sale procedures that they request that the Court approve. Those procedures include an online auction of the Hospitality Properties conducted by Auction.com, which the Receivers represent closed on July 22, 2015, and resulted in bids of approximately $81 million for the four non-Peoria Hospitality Properties.  (R. 240.)  28 U.S.C. §§ 2001 and 2002 set out a framework for the judicial sale of real property.  In their Motion, the Receivers requested that the Court waive these procedures, and no party filed an objection to the sale on that basis.  Nevertheless, the Court requested additional briefing from the Receivers on this issue.  The Receivers have now filed a statement of supplemental authority in support of their position.  (*See* R. 241.)

The Court reserves ruling on the Receivers' request to waive the requirements of 28 U.S.C. §§ 2001 and 2002 and to approve the proposed sale procedures.  The Receivers represent, for example, that at the hearing on the sale the Receivers will be able to prove up the marketing and sales efforts that resulted in a successful auction.  (*See* R. 241.)  In advance of the hearing, the Receivers may also submit a sworn affidavit from one or more individuals that were involved in the auction process detailing the auction procedures and any advance marketing efforts, including the efforts to provide notice of the auction to potential bidders.  In the interim, the Receivers have the authority to proceed forward with the sale process for the four non-Peoria Hospitality Properties, pending final approval of the sale at the upcoming hearing.

The Court also reserves ruling on the Receivers' request to pay all sale related costs and expenses without further order of the Court, to approve the terms of the Exclusive Listing Agreement between the Nanosky Receiver and HREC Investment Advisors, and to approve the terms of the Master Marketing Agreements between the Nanosky Receiver and Auction.com.

## B.    Sale Hearing

The Court will hold a hearing on the sale of the four non-Peoria Hospitality Properties. As the Court finds that the Receivers have the legal authority to sell those properties free and clear of all Interests and provide related relief, the hearing will focus on: 1) whether the Receivers' proposed sale is in the best interest of the receivership estates; and 2) whether any individual or entity with an Interest in the non-Peoria Hospitality Properties has a valid objection to the Receivers' proposed sale of the non-Peoria Hospitality Properties free and clear of all Interests, or to the attachment of any Interests to their Sale Proceeds with the same force and priority as currently exists.

The Receivers should provide notice of this Opinion, the proposed sale, and the hearing to all persons or entities known to assert any Interest in the four non-Peoria Hospitality Properties by Tuesday, July 28, 2015.  All persons or entities asserting an Interest in the four non-Peoria Hospitality Properties or their Sale Proceeds or that otherwise objects to their proposed sale (the "Interested Parties") shall file an appearance and a short and plain statement of the Interest or objection ("Proof of Claim") in this court by August 25, 2015 (the "Claim Date").  Any person or entity that fails to comply with this Order and file a timely Proof of Claim in this case before the Claim Date shall be barred from asserting its Interest against the Defendants related to the Hospitality Properties or the Sale Proceeds.

Any Interested Party that objects to the sale may also include in their Proof of Claim a more detailed explanation of their objection.  Any Interested Party objecting should take note of the Court's findings above with respect to the legal issues involving the sale and focus its objections on the sale itself.  The Receivers should respond in writing to any objections by

August 31, 2015.  The Court will set a date for the hearing at the parties' August 5, 2015 status

conference.

## CONCLUSION

For the above reasons, the Court grants in part and denies in part the Receivers' motion

for the entry of an order approving the sale of the Hospitality Properties, and related relief [160].


**DATED:  July 24, 2015**                                      **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge