UNITED STATES DISTRICT COURT
NORTHERN DISTRICT, EASTERN DIVISION

PENNANT MANAGEMENT, INC., )
)
    Plaintiff )
)    Case No. 14 CV 7581
)    Hon. Amy J. St. Eve.
FIRST FARMERS FINANCIAL, LLC, et al.)    United States District Judge
)
    Defendant. )

**TRUE LINE CONTRACTING AND REMODELING, INC.'S
OBJECTION TO CONSOLIDATION OF LIEN CLAIMS IN
THE NORTHERN DISTRICT OF ILLINOIS**

NOW COMES True Line Contracting and Remodeling, Inc. ("TL") by and through its attorneys, Emalfarb, Swan & Bain, and for its Objection to the Consolidation of Lien Claims in the Northern District of Illinois, states as follows:

**I. Background**

TL recorded mechanic lien claims and filed suit to foreclose its mechanics liens against four Hospitality Properties, in New Jersey, Florida and Illinois: (A) 500 Hamilton Ave., Peoria, Illinois 61602 ("Peoria Property"); 50 Kenny Place, Saddle Brook, New Jersey ("NJ Property"); 12125 High Tech Ave., Orland, FL 32817 ("UCF Property") and 400 W. Livingston St., Orlando FL 33801 ("SSL Property") (collectively "Properties"). Pennant and the Receivers filed dispositive motions in each state court foreclosure action and discovery has been initiated in New Jersey. TL is owed in excess of $8.4 Million for its labor and materials used to improve the Properties as will be more fully discussed below.

On or about December 13, 2013, TL entered into an agreement with the owner of the Peoria Property, Sheraton Peoria Hotel, LLC n/k/a 500 Hamilton Peoria, LLC. (hereinafter "Hamilton"). TL provided labor and materials to improve the Peoria Property, but TL was not paid in full for the construction work that it performed. TL hired Peoria law firm Quinn,

1

Johnston, Henderson, Pretorius & Cerulo, who, on behalf of TL On October 31, 2014, TL recorded its original claim for mechanic's lien against the Peoria Property. On January 7, 2015, TL filed its Complaint for Foreclosure of Mechanic's Lien in Peoria, Illinois ("Peoria Claim"). The foreclosure proceeding was removed to the Central District of Illinois based on a motion filed by the Small Business Administration ("SBA). On January 29, 2015, GT, on behalf of the Receiver and Pennant, filed an appearance in the Peoria Claim which was granted and an Answer, Affirmative Defenses and Counterclaim. TL filed a motion to dismiss the Affirmative Defenses and Counterclaim and the motion is pending.

**b.** **State Law Provides that TL is Entitled to Compensation for Improving NJ Property**

TL entered into an agreement with Alena Hospitality Saddlebrook, LLC to perform construction work at the NJ Property. As a result of non-payment, TL recorded its original mechanics lien claim against the NJ Property in the amount of $3,784,851.04. TL hired New Jersey law firm of Rothbard, Rothbard, Kohn & Kellar, who, on behalf of TL, on December 26, 2014 filed a complaint to foreclose its mechanic's lien in New Jersey state court ("NJ Claim").

On or about February 27, 2015, GT filed a motion to intervene and a motion to dismiss the NJ Claim. On April 10, 2015, the court denied GT's motion to dismiss. Subsequently, TL propounded written discovery and the case was referred for mandatory non-binding mediation. As of August 14, 2015, Pennant Management and the Receiver, through their attorneys Greenberg Traurig, responded to True Line's discovery requests.

**c.** **State Law Provides that TL is Entitled to Compensation for Improving FL Properties**

1. **TL Work at UCF**

On or about January 2014, TL entered into an agreement with Alena Hospitality, UCF, LLC to rehabilitate and remodel the UCF Property. TL completed construction of the UCF

Property and, as evidenced by the Receivers' monthly reports, the UCF Property is producing a substantial monthly profit. However, TL was not paid in full for its services and on October 22, 2015, recorded a mechanics lien against the UCF Property for $1,707,056.94.

2. **TL Lien Against SSL**

On or about May 2014 TL entered into an agreement with Alena Hospitality, SSL, LLC to remodel the SSL Property. TL was not paid for the work it performed and on October 22, 2014, it recorded a mechanics lien against the SSL Property in the amount of $353,744.76.

3. **Enforcement of TL's Lien Claims in Florida**

TL hired the Law Offices of Brennan & Kretschmer to prosecute its lien claims against the UCF Property and the SSL Property ("UCF Claim" and "SSL Claim".) On January 12, 2015, TL filed complaints to enforce its lien claims in the Circuit Court of Orange County, Florida. On April 1, 2015, GT filed their motion to intervene. These matters are currently pending and there is a case management, in which the parties are required to appear before the court, on August 24 and 25, 2015 for the UCF Property and the SSL Property respectively.

II. **The Court Should not Exercise Jurisdiction over the Lien Litigation if it is Contrary to the Best Interest of the Estate**

The Receiver asserted that True Line's lien claims should be stayed pursuant to 28 U.S.C. § 754 which empowers federal receivers to administer assets anywhere in the United States and stated:

> Any action brought by a non-party in another jurisdiction that seeks to adjudicate its purported Interests in the Hospitality Properties necessarily seeks to control assets of these Estates and will negatively impact the Sale. (Doc., 158 ¶ 31)

First, while again respecting this Court's ruling that it has subject matter jurisdiction over TL's lien claims, Section 754 does not designate district courts as having complete jurisdiction and control of receivership properties. *Wiand v.*

3

*Schneiderman*, 778 F.3d 917 (11th Cir. 2015). Section 754 grants that control to a receiver who is appointed by the court. A receiver is vested with complete jurisdiction and control of all such property with the right to take possession thereof. The jurisdiction mentioned in Section 754 does not refer to the district court's authority to decide all disputes relating to the contested property, but rather to the receiver's right to take charge of all contested property regardless of its physical location. A receiver is granted this jurisdiction and control so that he can manage the full scope of the assets with legally binding authority. *Wiand v. Schneiderman*, supra.

Second, the Receiver asked this Court to stay any pending litigation due to a fear of the impact on a sale. However, the sale of the properties, since they are subject to the Receiver's request to sell free and clear, is distinct from where True Line should enforce its lien claims. The winning bids of the hospitality properties totaled in excess of $86 Million. The Receiver, and other parties to this action, informed the Court that they were happy with that outcome. If this Court does approve the sales of the Property and the proceeds are held by this Court, there is no reason why the pending litigation should be consolidated in the Northern District of Illinois. The parties to each lien claim are already situated before judges who are familiar with the cases and have hired local counsel who are in the best position to prosecute the claims.

### III. Receiver Delayed the Crafting of a Claim Process and in the Interim True Line has Litigated Lien Claims in Multiple Jurisdictions

On July 24, 2015, this Court held that it has Subject Matter Jurisdiction to adjudicate True Line's lien claims.[1] (Doc.# 246, p. 16). On November 10, 2014, this Court entered an order appointing a receiver. ("Initial Receiver Order"). (Doc. 29). The

---

[1] True Line incorporates its arguments previously asserted in Document 179 while respectively acknowledging this Court's order entered on July 24, 2015.

4

Initial Receiver Order referenced the hospitality properties. Subsequently, True Line was denied intervention. (Doc. 85).

There are three factors to consider in deciding whether a stay is appropriate: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. *SEC v. Universal Financial*, 760 F.2d 1034 (9th Cir. 1985). *Universal Financial*, analyzed the stay pursuant to a moving party's motion to lift the stay in a receivership. In *Universal Financial* the Court stated that where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim. As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance. *Id*.

In *Universal Financial*, a creditor challenged the denial of their motion for an order relieving them from a receivership stay, or in the alternative, directing the receiver to post a bond to indemnify them for losses occasioned by the stay order. The lenders, through the services of various entities, entered into loan transactions for investment purposes. Due to securities law violations, the court appointed the receiver and entered a stay of all legal proceedings. On appeal, the court concluded that since the lender - appellants were afforded the same procedural protections that would have been available in "plenary" proceedings the stay was appropriate.

The *Universal Financial* court stated that a court will give consideration as to the timing of a movant's motion for relief from a stay. True Line, and other lien claimants, will suffer substantial injury if the pending lien litigation is not permitted to proceed. In each jurisdiction there has already been substantive litigation pending for at least nine months. First, converting these proceedings to a "creditor" actions subject solely to proof of claims is prejudicial to True Line. Second, consolidating that litigation will ultimately require judges and local counsel to spend considerable resources to get up to speed. Third, the receiver's decision to delay filing a motion to stay while True Line, the Receiver and Pennant participated in litigation in four jurisdictions should preclude them from upsetting the *status quo*.

Generally, at the initiation of a receivership proceeding, shortly after the appointment of a receiver the receiver's counsel should file a motion for approval of a claims procedure. In the case at bar, the Receiver did not file a motion requesting that this Court install a claims procedure or stay pending litigation until June 23, 2015—ten months after this claim was filed. (Doc. 158). Third, True Line's lien claims have substantial merit. In Peoria, Illinois the Receiver and Pennant have filed answers and counterclaims to True Line's complaint. The Receiver and Pennant's counterclaim is currently subject to a motion to dismiss which is pending. In New Jersey, True Line defeated the Receiver and Pennant's motions to dismiss and those parties have produced responses to True Line's written discovery. In Florida, the Court has ruled upon a motion to dismiss and the parties are scheduled to appear in court on August 24 and August 25 respectively for case management.

Unlike in the *Universal Financial* case, in the case at bar, True Line's lien claims are parallel to the three elements which preclude as stay of pending litigation.

### IV. Consolidating Lien Litigation Pending in Multiple Jurisdictions is not Economic for the Receivership Estate and will Prejudice True Line

In its July 24, 2015 order, the Court stated that a hearing would determine whether staying lien litigation is in the best interest of the estate. (Doc. 246, p. 10). The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. The Celotex Corp.*, 899 F.2d 1281, 1284 (2nd Cir. 1990).

In exercising its discretion in determining whether consolidation is appropriate' the Court must consider whether the specific risks of prejudice and possible confusion are offset by the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single case and the relative expense to all concerned of the single-trial, multiple-trial alternatives. *Id.* at 1285 (citing *Hendrix v. Raybestos-Manhatt an, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). The court needs to balance considerations of convenience and judicial economy with risks of prejudice and a concern for a fair and impartial trial. *Megan-Racine Assocs., Inc. v. Niagara Mohawk Power Corp. (In re Megan-Racine Assocs., Inc.)*, 176 B.R. 687, 691 (Bankr. N.D.N.Y. 1994). When an opposing party demonstrates substantial prejudice, then the motion to consolidate would be defeated. *Id.*

*Federal Deposit Ins. Corp. v. Selaiden Builders, Inc*., 973 F.2d 1249 (5th Cir. 1992) is instructive. In *Selaiden Builders*, plaintiff as receiver for an insolvent bank, filed suit against defendants, borrower and guarantors, to recover on two notes executed in favor of the bank. Defendants asserted a counterclaim and claim of offset, based on an alleged deficiency on a third note. The court *affirmed the order severing* defendants'

counterclaim and claim of offset because their claims arising out of the third note were unrelated to the claims arising from the first two notes.

In the case at bar, like in *Selaiden*, each lien claim filed by TL is unique in that the "prove-up" of each claim of the value of TL's work is unrelated to work performed on another property. TL has already expended substantial resources litigating each case in four jurisdictions and therefore would be prejudiced by restarting the clock in this Court. The four courts which are currently presiding over this litigation have already addressed substantive issues in the respective cases. If this Court consolidates the lien litigation in Chicago, the goal of judicial economy and reducing the burden on parties and witnesses will be defeated.

The Receiver, after watching and participating in litigation for approximately 10 months now wants to consolidate the lien litigation in Chicago. First, while Greenberg Traurig has represented the Receiver in each jurisdiction, TL hired independent local counsel in each jurisdiction to prosecute its lien claims. These attorneys would have to transfer files to Illinois local attorneys—that will obviously cost money and take time. Second, the witnesses and many parties to the lien litigation do not reside in Illinois, much less Chicago. Third, lien litigation typically requires extensive discovery and, as in this case, multi-million dollar projects will require numerous depositions. These depositions are vital to establish the value of the work performed at each property. Generally, the contractors who performed work in New Jersey live near New Jersey and the same is generally true for the Florida and Peoria, Illinois projects. Will Chicago attorneys litigating before this Court have to travel or will the parties, including the receiver, be required to pay for witnesses to travel for depositions and hearings?

8

In the alternative, the current makeup of the lien litigation—in which local lawyers are handling local issues-is an economic and efficient method to resolve these claims as opposed to essentially "substituting" for local judges who regularly preside over lien claims that are controlled by unique State statutes.

### IV. The Unique Lien Statutes of Each Jurisdiction Will be Better Served by Local Chancery Judges

On October 29, 2014, Greenberg Traurig's attorney served a memorandum stating that Continental Property Acquisitions, Inc. submitted a letter of intent to purchase five hotel properties for $155 Million. The memo conceded that the letter of intent was for the purchase of the hospitality properties in their completed form. However, Pennant still believed as of October 2014 that the hospitality properties were valued at $120 Million the amount that Continental was supposedly will to pay for uncompleted hotels. Obviously, the auction procured in excess of $86 Million—at least a $34 Million shortfall.

Regardless of whether the liens are litigated in the Northern District of Illinois or in the local jurisdictions where they were recorded, the mechanics lien statute of each State will control. For instance, the Receiver has proposed to set aside sufficient funds equal to 110% of the value of the liens against the Property. That figure is far below the amount that would be permitted by State statute. For instance, as of July 2015, the Illinois legislature imposed Section 38.1 of the Illinois Mechanics' Lien Act which grants property owners the right to bond over a lien claim. 770 ILCS 60/38.1 (Section 38.1). Section 38.1 states:

> The bond must be in an amount equal to 175 percent of the lien claim and shall state that any judgment in favor of the lien claimant based on the lien claim "shall constitute a judgment against the principal and surety of the bond for the amount found due to the lien claimant, including

9

interest and attorney's fees, limited as to the principal and surety to the full amount of the bond.

The 110% that the Receiver has agreed to set aside, at least at to True Line's claim for work it performed in Peoria, Illinois does not comply with the Illinois Mechanics Lien Act. In addition, the Illinois Mechanics Lien Act allows lien claimants to collect the value of their lien, plus interest at a rate of 10% per year and attorney fees. Therefore, in consideration of these costs over the face value of a lien, the Illinois legislature recognized that a property owner should not be permitted to undermine compliance with the requirement to set aside at least 175% of the value of a lien.

In Florida the lien statute allows claimants to collect the market rate of interest plus attorney fees. Also, in New Jersey, the statute allows for collection, in certain circumstances, interest and attorney fees. Under the procedure proposed by the Receiver, if True Line successfully litigates its lien claims, the most it can possibly recover is $840,000 over the value of its lien claim. Looking only at Peoria, Illinois the value of True Line's lien is $2,608,268.41. The lien was recorded on October 31, 2014. There is already in excess of $217,000 in interest that has accrued for which TL in entitled to recover by statute notwithstanding the outstanding attorney fees that continue to accrue. The Receivership's request to proceed in a fashion that is contrary to the local lien statues that control the claims filed by True Line is prejudical to True Line's ability to recover and endanger the receivership estate.

WHEREFORE, True Line Contracting and Remodeling prays that this Court deny the Receiver's Motion to Stay and Consolidate Litigation.

**True Line Contracting and Remodeling, Inc.**

_____
**One of its Attorneys**

Peter Swan (6186883)
Michael Shacter (6291970)
Emalfarb, Swan & Bain
440 Central Ave.
Highland Park, IL 60035
847-432-6900