UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENNANT MANAGEMENT, INC., <br><br>　　　　　　　　　　Plaintiff, <br><br>　vs. <br><br>FIRST FARMERS FINANCIAL, LLC, *et al.*, <br><br>　　　　　　　　　　Defendants. | Case No. 14 CV 7581 <br><br> Hon. Amy J. St. Eve |

### OVERALL RECEIVER'S MOTION FOR ENTRY OF AN ORDER APPOINTING HIM AS RECEIVER FOR POINT CYPRESS, LLC AND FOR AUTHORITY TO EMPLOY COLDWELL BANKER AS REAL ESTATE BROKER FOR SALE OF POINT CYPRESS PROPERTY

Patrick Cavanaugh, not individually, but solely in his capacity as receiver of the Overall Receivership Estate ("Overall Receiver"), by and through undersigned counsel, respectfully moves this Court for entry of an Order appointing him as the Receiver for Point Cypress, LLC ("Point Cypress") and granting him the same power and authority with respect to Point Cypress as the Overall Receiver has pursuant to this Court's April 23, 2015 Order (Dkt. No. 122) and August 4, 2015 Order (Dkt. No. 265). The Overall Receiver further moves this Court for authority to employ Coldwell Banker Residential Real Estate LLC ("Coldwell Banker") to serve as the real estate broker for the marketing and sale of certain real property owned by Point Cypress. In support of this Motion, the Overall Receiver states as follows:

### BACKGROUND

1. The facts giving rise to this action are set forth in the Overall Receiver's Amended Complaint and in the Second Amended Complaint filed by Pennant Management, Inc. ("Pennant"). Plaintiffs-Intervenors Illinois Metropolitan Investment Fund ("IMET") and Harvard Savings Bank have also filed Complaints setting forth a similar, if not identical, set of facts and circumstances that give rise to their claims.

2. In brief summary, this case arises out of a massive fraud perpetrated by Nikesh Patel ("Nikesh") and Timothy Fisher ("Fisher"), among others, through First Farmers Financial, LLC ("FFF" or the "Debtor"), which Nikesh and Fisher utilized to fraudulently obtain millions of dollars from the sale of fictitious loans that were purportedly guaranteed either by the U.S. Small Business Administration ("SBA") or the U.S. Department of Agriculture ("USDA") Rural Development Program. After fraudulently obtaining these funds, Nikesh and Fisher directed FFF to improperly transfer millions of dollars to Nikesh's wife, Trisha Patel, and to Alena Hospitality LBV, LLC ("Alena LBV"), Alena Hospitality UCF, LLC ("Alena UCF"), Alena Hospitality SSL, LLC ("Alena SSL"), 500 Hamilton Peoria, LLC, an Illinois limited liability company ("500 Hamilton Illinois"), 500 Hamilton Peoria, LLC, a Delaware limited liability company ("500 Hamilton Delaware") and Alena Hospitality Saddle Brook, LLC ("Alena Saddle Brook") (Alena LBV, Alena UCF, Alena SSL, 500 Hamilton Illinois, 500 Hamilton Delaware and Alena Saddle Brook shall be collectively referred to herein as the "Hotel Entities"), which Nikesh and/or Trisha jointly owned and/or controlled. Trisha and the Hotel Entities were the very willing recipients of millions of dollars in fraudulent transfers that were used by Trisha to fund her extravagant lifestyle and used by the Hotel Entities to acquire valuable hotel properties, which are known as the "Alena Hospitality Portfolio."

3. Fraudulently obtained funds were also used by Nikesh to acquire a vacant piece of property located on Point Cypress Drive in Orlando, Florida (the "Point Cypress Property"). More specifically, on or about April 21, 2014, Nikesh Patel and Rohini Patel formed Point Cypress for the purpose of acquiring and developing the Point Cypress Property. On information and belief, Nikesh owns the majority membership interest in Point Cypress.

4.	No development occurred on the Point Cypress Property prior to the exposure of the fraudulent scheme. As a result, the Point Cypress Property remains a vacant piece of land today.

5.	Pennant filed its original Complaint on September 29, 2014, along with its *Ex Parte* Motion for Entry of a Temporary Restraining Order and Preliminary Injunction (the "TRO Motion"). (Dkt. Nos. 1 and 5.) The TRO Motion sought, *inter alia*, to enjoin the transfer or other disposition of five hospitality properties located in Orlando, Florida, Saddle Brook, New Jersey and Peoria, Illinois and the Point Cypress Property.

6.	On September 29, 2014, this Court granted Pennant's TRO Motion. (Dkt. No. 10.)

7.	On October 14, 2014, this Court entered an Agreed Order for a Preliminary Injunction by Consent of the Parties. (Dkt. No. 22.) Pursuant to that Agreed Order, the Defendants, *inter alia*, agreed to transfer and surrender the Point Cypress Property, as well as the properties that comprised the Alena Hospitality Portfolio. In that same Agreed Order, the "Parties" also agreed to "work cooperatively to market and sell" the Point Cypress Property. (Dkt. No. 22 at ¶ 7.)

8.	On November 7, 2014, the parties filed an Agreed Motion for Entry of an Order Appointing Receiver. (Dkt. No. 26.) The Motion sought, *inter alia*, the appointment of a receiver to manage and operate Point Cypress Property and the properties within the Alena Hospitality Portfolio.

9.	On November 10, 2014, this Court entered an Agreed Order Appointing Receiver pursuant to which this Court, *inter alia*, appointed Michael M. Nanosky of Janus Hotel Management Services, LLC to be the Receiver of the "Receivership Estate," which included the

Point Cypress Property and the Alena Hospitality Portfolio. (Dkt. No. 29.) Mr. Nanosky's responsibilities with respect to the Point Cypress Property included securing, safeguarding, and maintaining that property. (Dkt. No. 29 at ¶ 3(b).) Furthermore, pursuant to the Engagement Letter dated November 6, 2014, Mr. Nanosky is entitled to a fee of 2% of the net sale proceeds (after payment of any broker commissions) from the sale of non-hotel assets including the Point Cypress Property. (Id. at ¶ 2; Dkt. No. 26, Ex. A.) Notably, however, Mr. Nanosky was not named as the Receiver of Point Cypress, LLC, the entity that holds legal title to the Point Cypress Property.

10. On April 23, 2015, this Court entered an "Agreed Order Clarifying, Modifying and Expanding the Duties of Receiver Michael Nanosky and to Appoint an Overall Receiver and Regarding Payments to Attorneys and Other Professionals and Related Item" (the "Amended Receiver Order"). (Dkt. No. 122.) The Agreed Receiver Order, *inter alia*, served to clarify that the Point Cypress Property was part of the "Nanosky Receivership Estate." (*Id.* at ¶¶ 5(b).)

11. The Amended Receiver Order also served to appoint Mr. Cavanaugh of High Ridge Partners as the Overall Receiver and establish the Overall Receivership Estate. (*Id.* at ¶ 22, 24(b).) Per the Amended Receiver Order, the Overall Receivership Estate consisted of all the assets of the Defendants other than those assets entrusted to the Nanosky Receivership Estate. (*Id.* at ¶ 24(b).)

## **RELIEF REQUESTED**

12. While the Nanosky Receiver, through Janus Hotel Management Services, is managing and operating the Point Cypress Property, he does not technically control Point Cypress, which holds legal title to the Point Cypress Property. Accordingly, the Overall Receiver's role should be expanded so that he is also the receiver of Point Cypress and has the

ability to effectuate the intent of the parties and this Court by hiring Coldwell Banker to market and sell the Point Cypress Property with the continued oversight and assistance of the Nanosky Receiver.

## BASIS FOR RELIEF

13. The Court's appointment of the Nanosky Receiver vested the Court with jurisdiction over the Point Cypress Property. *SEC v. Weinke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Accordingly, the Court has authority to expand the Overall Receiver's role to encompass Point Cypress, LLC, which is the sole owner of the Point Cypress Property. The appointment of a receiver is governed by Rule 66 of the Federal Rules of Civil Procedure and the decision to appoint a receiver lies within the discretion of the trial court. *Id.*; Fed. R. Civ. P. 66. "[T]he primary consideration in determining whether to appoint a receiver is the need to protect, conserve and administer property pending final disposition of a suit;" thus the remedy is especially appropriate "in cases involving fraud and the possible dissipation of assets." *Jackson v. N'Genuity Enterprises Co.*, No. 09 C 6010, 2011 WL 4628683, at *8 (N.D. Ill. October 3, 2011) (citing *McGaughey*, 24 F. 3d at 907); *accord SEC v. Wing*, 599 F. 3d 1189, 1194 (10th Cir. 2010) ("When a district court creates a receivership, its focus is to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable, distribution of the assets if necessary."); *JPMorgan Chase Bank, N.A. v. Heritage Nursing Care, Inc.*, No. 06 C 4803, 2007 WL 2608827, at *8 (N.D. Ill. Sept. 6, 2007) (factors supporting the appointment of a receiver include fraudulent conduct of the defendant(s), danger of the property being diminished in value, the inadequacy of legal remedies, and the harm to plaintiff by denial of the appointment compared with the injury to the parties opposing the appointment of a receiver). Furthermore, federal courts are empowered to appoint receivers where all parties

consent to the appointment and the appointment is necessary to protect and preserve the property at issue until final disposition of the case. *In re Resienburg*, 208 U.S. 90, 95 (1908).

### A. Appointment of Overall Receiver as the Receiver of Point Cypress

14. Here, as was the case with the original appointment of the Nanosky Receiver and the appointment Overall Receiver, the facts and circumstances of this case support the appointment of the Overall Receiver as the Receiver of Point Cypress.

> a. All of the Parties agreed to work cooperatively to market and sell the Point Cypress Property, and they further agreed to the appointment of the Nanosky Receiver to manage and operate the Point Cypress Property. Expanding the Overall Receiver's receivership to cover Point Cypress is a natural and necessary extension of his power consistent with this Court's and the parties' goals to manage, oversee and preserve all of the assets of the Defendants and all of the assets of "any person or entity acting under their direction or on their behalf." (Dkt. No. 122 at ¶¶ 18, 21);
>
> b. Nikesh Patel, a named defendant in all of the pending Complaints, currently owns the majority membership interest in Point Cypress, which holds legal title to the Point Cypress Property;
>
> c. If a receiver is not appointed, the value the Point Cypress Property, which is presently controlled by Nikesh, is at risk, as Nikesh could attempt to sell, assign or transfer the control or ownership of Point Cypress, LLC to another party and to the detriment of the Overall Receivership Estate. As a result, the resources and expertise of the Overall Receiver, with assistance from the Nanosky Receiver, is necessary to protect the value of

      Point Cypress and maximize the recovery from the ultimate disposition of the assets owned by this entity, including the Point Cypress Property; and

  d. The Overall Receiver, with the assistance of the Nanosky Receiver, is already managing the assets of the Overall Receivership Estate and is uniquely positioned to serve as a receiver given the depth of the knowledge he has already obtained in connection with Point Cypress Property. It is a natural extension of his current duties and responsibilities to commence exercising exclusive jurisdiction over the Point Cypress as an additional asset of the Overall Receivership Estate immediately.

15. The requested expansion of the Overall Receiver's receivership can and would be properly overseen and administered by this Court in the Northern District of Illinois given this Court's current oversight of the Overall Receivership Estate, the substantial connection between this district and the fraud described in the Overall Receiver's Amended Complaint, and this Court's involvement in the matter thus far, including the exercise of control over the assets held or controlled by the Defendants. To be clear, the Point Cypress Property is already one of the properties subject to the Orders previously entered by this Court.

16. The registered agent of Point Cypress is Alena Hospitality, LLC, who is a named Defendant in these proceedings. To be certain that any and all relevant individuals or entities are aware of this Motion, the Overall Receiver has served Rohini Patel at the address listed for him by the Florida Department of State, Division of Corporations. *See* <u>Exhibit A</u>.

17. There are no mortgages recorded against the Point Cypress Property, and the only remaining lien (in the amount of $2,542.40 filed by Redmon Design Co., P.A.) has been settled by the Nanosky Receiver and will be paid out of the proceeds from the sale of the Point Cypress

Property, along with real estate taxes and other customary costs of closing. The Overall Receiver has served Redmon Design Co., P.A. at the address provided in its proof of claim.

### B. Authority to Employ Coldwell Banker as Real Estate Broker

18. The Overall Receiver also seeks authority to employ Coldwell Banker as the real estate broker to market and sell the Point Cypress Property pursuant to the terms and conditions of the Vacant Land Exclusive Right of Sale Listing Agreement (the "Listing Agreement") attached hereto as Exhibit B. The Listing Agreement provides for a commission of 6% of the total purchase price in connection with a Court-approved sale of the Point Cypress Property and a term of six months commencing on September 15, 2015.

19. Any sale of the Point Cypress Property will be subject to further Court order.

20. In support of this request, the Overall Receiver submits the attached Declaration of Matt Davies attached hereto as Exhibit C (the "Davies Declaration").

21. As set forth in the Davies Declaration, Mr. Davies has considerable brokerage experience and oversees a team of brokers that is currently ranked #7 among Coldwell Banker teams throughout North America for properties sold and has held that position for the last three years. Mr. Davies' office is located approximately two miles from the Point Cypress Property. Ex. C, ¶ 5.

22. Coldwell Banker does not have connections with any of the Defendants and related entities in this case. Coldwell Banker neither holds nor represents any interests adverse to interests of the Overall Receivership Estate in connection with its proposed retention. Ex. C, ¶ 6.

23. Coldwell Banker understands that the sole source of compensation for services rendered to the Overall Receiver shall be the proceeds from a court-approved sale of the Point

Cypress Property. No party in interest has agreed to pay Coldwell Banker for either services rendered or expenses incurred on behalf of the Overall Receiver. Ex. C, ¶ 7.

24. The Overall Receiver believes that Coldwell Banker is well qualified to represent the Overall Receiver and maximize the value obtained from the sale of the Point Cypress Property for the benefit of the Overall Receivership Estate.

WHEREFORE, for all of the foregoing reasons, the Overall Receiver respectfully requests that this Court enter an Order, substantially in the proposed form attached hereto as <u>Exhibit D</u>, granting this Motion, appointing Patrick Cavanaugh of High Ridge Partners as the receiver for Point Cypress, LLC, granting the Overall Receiver authority to employ Coldwell Banker as the real estate broker to market and sell the Point Cypress Property subject to further order of the Court, and providing the Overall Receiver with such other relief as may be appropriate under the circumstances.

        Respectfully submitted,

        Patrick Cavanaugh, not individually, but solely in his capacity as Overall Receiver of the Overall Receivership Estate

Dated: September 10, 2015    By    /s/ *Richard A. Saldinger*
        One of his attorneys

Steven B. Towbin
Richard A. Saldinger
Allen J. Guon
Gordon E. Gouveia
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60654
Phone: (312) 541-0151
stowbin@shawfishman.com
rsaldinger@shawfishman.com
aguon@shawfishman.com

*Counsel for the Overall Receiver*