# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PENNANT MANAGEMENT, INC.,

Plaintiff,

vs.

FIRST FARMERS FINANCIAL, LLC, *et al.*,

Defendants.

Case No. 14 CV 7581

Hon. Amy J. St. Eve

## OVERALL RECEIVER'S FOURTH REPORT

Patrick Cavanaugh, not individually, but solely in his capacity as Overall Receiver, pursuant to the *Agreed Order Clarifying, Modifying and Expanding the Duties of Receiver Michael Nanosky and to Appoint an Overall Receiver and Regarding Payments to Attorneys and Other Professionals and Related Items*,[1] dated April 23, 2015 ("Amended Receiver Order") [Dkt. No. 122] and the *Order Appointing the Overall Receiver as the Receiver for the Hotel Entities*,[2] dated August 4, 2015 ("Hotel Receiver Order") [Dkt No. 265], hereby submits his fourth report summarizing the activities performed by the Overall Receiver for the period of August 1, 2015 through and including August 31, 2015 ("Reporting Period"), and requests the entry of an order, and states as follows:

### Appointment of the Overall Receiver

1.      On November 10, 2014, the Court entered the *Agreed Order Appointing Receiver* ("Original Receiver Order") [Dkt. No. 29] appointing Michael M. Nanosky as receiver (the

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Amended Receiver Order.

[2] The Hotel Entities are: Hospitality LBV, LLC, Alena Hospitality UCF, LLC, Alena Hospitality SSL, LLC, 500 Hamilton Peoria, LLC, a Delaware limited liability company, 500 Hamilton Peoria, LLC, an Illinois limited liability company and Alena Hospitality Saddle Brook, LLC.

"Nanosky Receiver") to exercise control over the assets owned by the Defendants and to control the Defendant entities.

2.     On April 23, 2015, the Court entered the Amended Receiver Order which split the management of the Defendants' assets into two separate receivership estates for the benefit of the Distribution Participants.  (*Amended Receiver Order*, ¶ 2.)  Under the Amended Receiver Order, the Nanosky Receiver continues to exercise control over five (5) hospitality properties ("Hospitality Properties") and other real property located in Florida, New Jersey and Illinois that he managed under the Original Receiver Order ("Nanosky Receivership Estate").  (*Id.*, ¶¶ 4-5.) The Amended Receiver Order also appointed the Overall Receiver to take possession and control of all assets of the Defendants other than those assets entrusted to the Nanosky Receivership Estate ("Overall Receivership Estate," and together with the Nanosky Receivership Estate, the "Estates"). (*Id.*, ¶¶ 22-24.)

3.     On August 4, 2015, the Court entered the Hotel Receiver Order.  The Hotel Receiver Order appointed the Overall Receiver as the receiver for the Hotel Entities, which collectively own the Hospitality Properties, and vested him with all of the powers, rights and responsibilities provided by law to a receiver in equity.

4.     In carrying out his duties, however, the Nanosky Receiver is required to confer with the Overall Receiver on how best to serve the interests of both Estates.  (*Id.*, ¶ 10.)  The Overall Receiver determines how the Nanosky Receiver will proceed in the event of a disagreement over the appropriate course of action unless otherwise directed by the Court.  (*Id.*)

5.     Pursuant to the Amended Receiver Order, the Overall Receiver was required to obtain a surety bond in the amount of $100,000 within 14 days.  The Overall Receiver posted and the Court accepted the bond on April 27, 2015.  [Dkt No. 123.]

6.     While the Overall Receiver has oversight responsibility for both Estates, significant assets described in Paragraphs 5 and 5(a) of the Amended Receiver Order are entrusted to the Nanosky Receiver.  The Nanosky Receiver has filed Receiver Reports [Dkt. Nos. 62, 90-1, 103-1, 114-1, 125-1, 198-1, 303 and 477] and will continue to file separate reports as to the activities of the Nanosky Receivership Estate.  This report only includes activities of the Overall Receiver and, at the Overall Receiver's direction, High Ridge Partners ("HRP"), relating to the Overall Receivership Estate.

**Prior Overall Receivership Estate Reports**

7.     Pursuant to the Amended Receiver Order, the Overall Receiver prepared an initial inventory of all property in which the Overall Receiver obtained possession ("Initial Inventory Report").  On May 22, 2015, the Overall Receiver filed the Inventory Report. [Dkt No. 134.]

8.     The Overall Receiver developed the Initial Inventory Report through discussions with the Pennant Management, Inc. ("Plaintiff"), the intervenors and the Nanosky Receiver.  As part of this process, the Overall Receiver reviewed various supporting documents made available from the Plaintiff and Plaintiff-Intervenors and from the Defendants.  The Initial Inventory Report reflects the Overall Receiver's preliminary evaluation of the validity and potential value to be recovered by the Overall Receivership Estate on account of the prior asset investigations made by the Plaintiff and Plaintiff-Intervenors.

9.     On June 19, 2015, the Overall Receiver filed his initial report summarizing the activities performed by the Overall Receiver for the period of April 23, 2015 through and including May 31, 2015 ("Initial Report").  [Dkt No. 155].  On July 17, 2015, the Court approved the Initial Report and all disbursements made or to be made therein.

10.    On July 24, 2015, the Overall Receiver filed his second monthly operating report summarizing the activities performed by the Overall Receiver for the period of June 1, 2015

through and including June 30, 2015 ("Second Report"). [Dkt. No. 247.] On August 5, 2015, the Court approved the Second Report and all disbursements made or to be made therein. [Dkt No. 269.]

11. On August 25, 2015, the Overall Receiver filed his third monthly operating report summarizing the activities performed by the Overall Receiver for the period of July 1, 2015 through and including July 31, 2015 ("Third Report"). [Dkt. No. 404.] On September 8, 2015, the Court approved the Third Report and all disbursements made or to be made therein. [Dkt No. 473.]

**Assets of the Overall Receivership Estate**

12. The narrative set forth below provides a summary of the services performed by the Overall Receiver and HRP for the Reporting Period with respect to the identified assets of the Overall Receivership Estate:

(a) **Sale of Hospitality Properties** – On July 20-22, 2015, the Overall Receiver, in conjunction with the Nanosky Receiver, and their professionals, Auction.com and HREC, conducted an online auction ("Auction") of Hospitality Properties through Auction.com's website (www.auction.com). The results of the Auction are as follows:

| *Property* | *Final Bid* |
|---|---|
| Orlando UCF | $30,050,000 |
| Orlando LBV | $27,850,000 |
| Downtown Orlando | $12,625,000 |
| Saddle Brook | $10,450,000 |
| Peoria | $5,800,000 |
| Total | **$86,775,000** |

As part of the sale process, the Overall Receiver also reviewed motions and proposed orders with respect to the sale of the Hospitality Properties free and clear of existing liens and participated in negotiations with potential lien claimants. On September 8, 2015, the Court approved the sale of the Hospitality Properties free and clear of all existing liens. [Dkt. Nos. 463, 464, 466, 467 and 468] The anticipated closing date for each property is as follows:

| Property | Closing Date |
|---|---|
| Orlando UCF | TBA |
| Orlando LBV | September 30, 2015 |
| Downtown Orlando | September 25, 2015 |
| Saddle Brook | September 29, 2015 |
| Peoria | October 30, 2015 |

(b) **Cash Assets**. The Overall Receiver continues to utilize an operating account at BMO Harris Bank ending in #6202. The account is primarily used to receive payments from borrowers under various loans made by the Defendants. As of August 31, 2015, the balance held in this account was $85,714. A summary of the cash receipts and disbursements is set forth in detail in the Banking and Financial Activity section of this report.

(c) **USDA Guaranteed Loans**. The defendants made four (4) loans to various companies under the United States Department of Agriculture ("USDA") Rural Development guaranteed loan program (collectively, the "USDA Guaranteed Loans"). The Overall Receiver continues to work with the each of the borrowers and the USDA to discuss payment status and compliance requirements with USDA guidelines. On July 23, 2015, the Overall Receiver obtained a Court order authorizing him to retain Government

Loan Solutions ("GLS") to assist with the sale of the non-guaranteed portion of the USDA guaranteed loans. [Dkt No. 233.] Pursuant to the GLS employment order, the Overall Receiver (i) negotiated and executed a service contract with GLS, (ii) reviewed and approved the form of non-disclosure agreement for prospective buyers, (iii) reviewed the information available in the data room managed by GLS to assist prospective buyers with their due diligence, (iv) located and identified additional documents and information to include in the data room, and (v) reviewed and approved the summary that was distributed by GLS via email to 26,000 previously qualified USDA lenders as prospective buyers of the notes. The bid deadline was September 8, 2015. Only one prospective buyer submitted an offer with two options. The first option includes the two fully conforming and performing loans. The second option includes an additional loan at a deeply discounted rate. The Overall Receiver is currently evaluating the offers. Any sale will be subject to approval by the USDA and this Court. The following is a general status of each of the USDA Guaranteed Loans:

(i) **The Sunday Horse II, LLC** ("Sunday Horse") – Sunday Horse is a loan made to finance the production of the feature film named "The Sunday Horse." The filming of the movie is complete, but Sunday Horse has limited funds available to pay for the marketing and advertising costs for distribution of the film in the domestic theatrical market. Likewise, Sunday Horse requested, through the Overall Receiver, and the USDA granted, a payment moratorium through December 31, 2015. The Overall Receiver, with assistance of counsel, prepared a forebearance agreement to reflect the payment moratorium. Sunday Horse intends to launch a limited theatrical release of the film in targeted domestic markets in January 2016 and will only pursue wider distribution of the movie based upon the initial results of the film release. Domestic and foreign distribution agreements (or term sheets related thereto) have been reviewed and approved by the Overall Receiver and the USDA, as required. As of August 31, 2015, the Overall Receiver's 10% interest in the outstanding loan is $705,635, plus accrued and unpaid interest.

(ii) **Lancaster Energy Partners, LLC** ("Lancaster") – Lancaster is a loan made to finance the costs of converting a former coal burning electrical facility to a bio-mass electrical plant utilizing scrap wood as the sole fuel source. The

facility is located in Thomaston, Georgia. Completion of the conversion was delayed due to delays in construction and reported financial improprieties of the project manager and general contractor. Lancaster made a request, through the Overall Receiver, for a payment moratorium through December 2015 to allow them to obtain additional investors to complete the project. The USDA declined Lancaster's initial request. The Overall Receiver submitted a follow-up request, which provided additional information in an attempt to address the USDA's points of declination. This subsequent request was approved by the USDA, however, the borrower and the Overall Receiver may not be able to comply with the approval due to the numerous and immoderate conditions of the approval. Therefore, the Overall Receiver has elected to proceed to attempt to sell the non-guaranteed portion of the note in its current state with existing payment defaults. The Overall Receiver will continue to assist in the negotiations and monitor the progress of Lancaster's attempts to obtain additional investors. As of August 31, 2015, the Overall Receiver's 10% interest in the outstanding loan is $950,436 plus accrued and outstanding interest.

(iii)     **Beds for Less and Chad Van Namee** ("Beds for Less") – Beds for Less is a loan made to finance the build out and operations of a retail mattress and furniture store located in Valdosta, Georgia. Beds for Less is current with all principal and interest payments but has a non-monetary financial default on one of the loan covenants. The Overall Receiver will submit a request to the USDA to waive the default. As of August 31, 2015, the Overall Receiver's 20% interest in the outstanding loan is $128,642.

(iv)     **Sunshine Hotel Investments, Inc**. ("Sunshine") – Sunshine is a loan made to finance the construction of a 74 room Holiday Inn Express hotel in Fort Walton Beach, Florida. Sunshine is current with all principal and interest payments. As of August 31, 2015 the Overall Receiver's 20% interest in the outstanding loan is $976,776. Additional comments on Sunshine are set forth under the Overall Receiver Activity heading.

(d)     **Conventional Loans**. During the Reporting Period, the Overall Receiver continued to verify the validity of the Conventional Loans by searching the defendants' financial and banking records that have been made available and engaged in discussions with the borrowers, borrower's counsel and unrelated third parties with respect to the repayment, recovery or purchase of the assets. The following is a general status of each of the Conventional Loans:

(i)     **Alkesh R. Patel** ("Alkesh") – Based on discussions with Alkesh and/or his representatives, Alkesh claims that the promissory note dated

October 28, 2013 in the original amount of $100,000 was satisfied in connection with the payment on the Das Red, LLC loan (see paragraph (c)(iv) below). The Overall Receiver is reviewing this transaction to determine if the funds were actually disbursed to Alkesh when the note was signed and how it may be connected with the Das Red, LLC note. The Overall Receiver requested additional documentation from Alkesh to support his claim that this loan has been paid in full. Additional documents were submitted by Alkesh, but the Overall Receiver is unable to confirm repayment without further information. The Overall Receiver has requested copies of checks and documents.

  **(ii)**   **Aura Florida Lounges, LLC** ("Aura") – Based on review of available documents, it appears the borrower abandoned and surrendered the collateral to the landlord. The loan obligation dated May 20, 2014 was in the original principal amount of $450,000. The collateral consisted of various restaurant furniture and equipment. Based on discussions with the landlord, an agreement was reached to release the lien on the collateral in exchange for a payment of $10,000. It was determined that this amount is reasonable compared to any potential recovery through a liquidation sale based on a site visit and inspection of the equipment. The Overall Receiver utilized a skip-tracing service to locate the personal guarantor. A Notice of Default and Demand for Immediate Payment was delivered to the guarantor as confirmed by signature upon delivery. The Overall Receiver also learned from the skip-tracing service that the guarantor is unemployed and living with a relative.

  **(iii)**   **Charter School Development Services, Inc. and Edu-Pro Management, LLC** – These two loans, with a combined outstanding balance of $12,075,833, were made for the purpose of constructing and/or renovating two facilities in Florida to be used for charter schools. Through discussions with the borrower's principal, Vince Desai, the Overall Receiver learned that the operator of the charter schools, Acclaim Academy Florida, Inc. ("Acclaim"), announced the closing of the schools due to two consecutive years of poor grades and decertification by their respective school boards. On May 20, 2015, Acclaim filed a voluntary chapter 7 petition in the United States Bankruptcy Court for the Middle District of Florida (Bankr. Case No. 6:15-bk-04416). Mr. Desai requested a payment reduction or moratorium due to the loss of revenue until he can complete repairs to the buildings and secure new tenants. Charter School Development Services, Inc. entered into a 5-year lease agreement, with options to renew, dated March 30, 2015 with Avant Garde Academy, Inc. for the school located in Kissimmee, Florida. Mr. Desai received the first rent check on September 18, 2015 and will resume making monthly payments. Mr. Desai has not yet found a tenant for the Jacksonville school and estimates that repairs in the approximate amount of $86,000 are required for this facility. The Overall Receiver is in discussions with two prospective buyers who are currently performing due diligence with respect to the purchase of the mortgage notes. The Overall Receiver received a valuation for each property from a local Florida real estate broker, which is currently being reviewed. In the interim, the Overall Receiver will issue a demand notice and

accelerate the payment obligations in full and demand payment from the borrower and the guarantor.

(iv)    **Davenport Ventures II, LLC** ("Davenport") – This loan was for the purchase of a Quality Inn hotel in Davenport, Florida.  A representative of the Overall Receiver performed a site inspection of the hotel to verify its existence.  On June 1, 2015, the Overall Receiver received notice from the U.S. Small Business Administration ("SBA") that the SBA guaranteed position (80%) plus a non-guarantee portion (5%) of this loan was sold in the secondary market, thereby reducing the retained portion of this loan to $541,674.  Furthermore, the SBA has made a demand to take over the servicing of this loan due to the receivership of First Farmers Financial, LLC ("FFF").  Counsel for the Overall Receiver is in the process of reviewing the transfer documents.   The Overall Receiver is also reviewing both the financing and purchase of this property before a final decision will be made regarding the disposition of this asset.

(v)    **Davieca Singh** ("Singh") – A representative of the Overall Receiver performed a site visit of the vacant office building in May 2015.  The promissory note is dated July 24, 2014 in the original principal amount of $170,000.  The Overall Receiver accepted an offer from Ms. Singh to purchase the note for $135,000, subject to higher and better offers.  A sale agreement was executed and an earnest money deposit of $15,000 was remitted to the Overall Receiver.  A motion to approve the sale and the sale process was filed with the Court for approval and is set for hearing on August 18, 2015. [Dkt No. 329.]  The sale of this loan closed on September 10, 2015.

(vi)    **Niranjan B. Patel & Minaxi N. Patel** – While the borrower is remitting monthly payments to the Overall Receiver, the dollar amount of the payments are less than the required payment pursuant to the mortgage note.  The note is dated April 2, 2013 in the original principal amount of $679,975 and the first 12 months required the payment of interest only, with escalating payments pursuant to the terms of the note.  FFF purchased the loan for $385,000 prior to foreclosure by the original unrelated lender in April 2013 due to an ongoing payment default.  The loan is secured by lien on a Red Carpet Inn hotel located in South Daytona Beach, Florida.  The Overall Receiver contacted the borrowers to discuss various options to monetize the note either through a refinancing or the sale of the note to a third party.  Subsequently, the borrower's attorney has been in contact with the Overall Receiver to provide updates with respect to the borrower's attempts to refinance the property.  It is likely that an offer to purchase the note or pay off the loan will be at a substantial discount from the current outstanding balance.  Three additional parties have signed non-disclosure agreements and are reviewing the loan documents.

(vii)    **Standley Plastics, Inc.** – The Overall Receiver contacted the borrower to discuss this loan obligation dated December 27, 2013 in the original principal amount of $2,000,000.  The borrower indicated that the company incurred

significant losses and extraordinary costs due to the failure of FFF to follow through on its commitment to fund the expansion of the business. The Overall Receiver was told that the borrower's in-house counsel would formulate a reply and provide documentation to the Overall Receiver to consider relative to any attempt to pursue collection of the outstanding loan, however, no information has been received. The Overall Receiver issued a demand and acceleration notice to the borrower. As of this report, the Overall Receiver has not received a response to the demand letter. The Overall Receiver will pursue collection against the borrower.

The Overall Receiver continues to investigate the quality of the underlying assets and develop plans to dispose of each Conventional Loan in the most efficient manner.

(e)     **Deposits and Retainers** – The following is a general status of the deposits and retainers:

(i)     **Ward Harris Properties, Inc.** ("Ward Harris") – On July 23, 2014, Las Olas Hotel Group, LLC ("Las Olas") entered into a commercial real estate contract with Ward Harris for the purchase of real estate located at 2901 East Las Olas Boulevard, Fort Lauderdale, Florida. The purchase price was $4,000,000 with a $300,000 escrow deposit to be held by Stewart Title Guaranty Company ("Stewart"). According to research performed by the Overall Receiver, Las Olas was formed on July 3, 2014 and Nikesh A. Patel and Vinay M. Rama were listed as the members. The Overall Receiver contacted Stewart and verified that a wire transfer was received on June 18, 2014 in the amount of $300,000 from FFF and subsequently transferred to an escrow account opened for this transaction on July 24, 2015. The Overall Receiver determined that on June 18, 2014, FFF wired the amount of $300,000 to Stewart from an FFF bank account ending 7145 with a memo stating "Alena Hospitality – Las Olas." On August 22, 2014, an amendment to the original contract was entered into by Las Olas and Ward Harris extending the date to close the sale to October 21, 2014. As part of this agreement, a non-refundable "Extension Fee" of $500,000 was to be deposited with Ward Harris' counsel, Robert M. Bulfin, P.A., as a credit to the purchase price at closing. On August 22, 2014, FFF caused the amount of $500,000 to be transferred from the same FFF bank account with a memo stating "Ft. Lauderdale Project." According to Mr. Bulfin, the $500,000 was disbursed to Ward Harris and a demand has been placed on the $300,000 deposit held by Stewart due to a default by Las Olas. The Overall Receiver has requested, by subpoena, additional documentation from Ward Harris including the nature of the default and will take appropriate actions to recover the $800,000.

(ii)     **HTG Crystal Cove Resort, LLP** ("Crystal Cove") – On March 14, 2014, Alena Hospitality, LLC ("Alena") entered into a contract to purchase certain property and assets located on or associated with a proposed site plan for the development of resort located at 4900 Overseas Highway, Marathon, Florida. The total purchase price was $7,500,000 with an earnest money deposit of $500,000 to

be held by Stewart. The Overall Receiver confirmed with Stewart the receipt of $500,000 from Alena. During the 30 day due diligence period, Alena discovered that Crystal Cove never owned 200 of the 300 feet of road frontage property as claimed in the purchase contract. Upon this discovery, Alena demanded the return of the $500,000 deposit but Crystal Cove refused to give consent to Stewart to release the funds. Alena filed a complaint in the 11th Judicial Circuit Court (Case No. 2014-13088-CA-01) seeking the recovery of the deposit and other damages. The Overall Receiver has contacted the attorney representing Alena to discuss the case and has also contacted consul for Crystal Cove in an attempt to reach a settlement. If a reasonable settlement cannot be reached, the Overall Receiver will take appropriate action to recover the $500,000 deposit.

     **(iii) CXA-10 Corporation** ("CXA") – On March 6, 2014, Alena entered into an Agreement of Purchase and Sale with CXA to purchase certain property commonly known as the Knights Key located at 1 Knights Key Blvd, Marathon, Florida. The total purchase price was $28,000,000 with a non-refundable earnest money deposit of $2,000,000 to be held by Fidelity National Title Group ("Fidelity"). The Overall Receiver confirmed with Fidelity the receipt of $2,000,000 from Alena. For reasons unknown to the Overall Receiver, the agreement was terminated and on April 30, 2014, the $2,000,000 deposit was split between CXA and Alena. The Overall Receiver verified the $1,000,000 returned deposit with Fidelity and noted the deposit to Alena's bank account. The Overall Receiver has request further information, by subpoena, from CXA concerning this transaction and will take appropriate action to recover the $1,000,000 remaining deposit.

     **(iv) 8444 Investments, LLC** ("Investments") - On May 30, 2014, Alena entered into a Letter of Intent with Investments to purchase certain properties commonly known as the Allure (f/k/a Radisson Inn), The Metropolitan Resort and the adjacent lot located off International Drive, Orlando, Florida for the amount of $34,000,000. Upon execution of Letter of Intent, Alena wired a $300,000 earnest money deposit to Stewart. On May 30, 2014, Alena and Investments entered into an Agreement of Purchase and Sale and an additional deposit of $200,000 was wired to Stewart. On July 28, 2014, Alena sent a letter to Investments exercising its right under the Agreement of Purchase and Sale to extend the closing date and, on July 30, 2014, wired a non-refundable deposit in the amount of $200,000 to Stewart. The Overall Receiver verified all deposits with Stewart. The first deposit of $300,000 was wired from Alena's bank account and the other two (2) deposits totaling $400,000 were wired from a FFF bank account. According to Stewart, on July 30, 2014, the total deposit of $700,000 was wired to Hotel Mortgage Funding, LLC ("Hotel Mortgage") pursuant to an agreement between Alena and Investments. The Overall Receiver is investigating facts surrounding the termination and the release of the funds to Hotel Mortgage. The Overall Receiver requested additional information, by subpoena, from Investments and Hotel Mortgage.

(v) **Legal Retainers** – The Overall Receiver has been in discussions with Foley & Lardner LLP ("Foley") regarding the $375,000 held in its trust account related to the defense of several of the Defendants in both civil and criminal litigation. Foley has filed an interpleader action with the Court relative to the ownership of the $375,000. On July 30, 2015, Foley filed a motion to pay the funds held in their trust account to the Court Registry. [Dkt. No. 259.] On August 8, 2015, an order was entered granting this motion. [Dkt. No. 275.] The Overall Receiver is also investigating the source of an additional $375,000 received by Foley from certain entities to represent the individual defendants.

(f) **Political and Charitable Contributions** – Further investigation is required to determine the feasibility of pursuing the recovery of these funds totaling approximately $185,000.

(g) **Additional Assets Subject to Review** – As discussed in the Initial Inventory Report, the Overall Receiver and HRP continue to review a large number of documents to locate additional assets for recovery by the Estates. As part of his review, the Overall Receiver has determined that additional investigation is necessary with respect to the following potential sources of recovery:

(i) **India Vacation Home** – During the review of the defendants' documents, a vacation home in India was noted on a personal financial statement of Nikesh Patel. The Overall Receiver is investigating the existence of the home and the source of funds used to purchase the home.

(ii) **Airplane Investment** - On June 1, 2014, Alena Aviation, LLC ("Aviation") executed an Aircraft Interest Purchase Agreement to purchase a 50% ownership interest in a Lear Jet from MRK, LLC ("MRK"). The agreement required a $150,000 down payment and a promissory note was executed for $500,000 payable in 60 payment of $8,962.40. Based on discussions with representatives of MRK, Aviation only made three (3) payments and are currently twelve (12) months past due. The Overall Receiver verified the $150,000 payment and is determining the feasibility of recovery of the down payment and any additional payments. The Overall Receiver received an inquiry regarding the possible purchase of the ownership interest. However, an agreement could not be reached given the amount outstanding on the loan and unpaid maintenance fees.

(iii) **Zeolife, Inc.** - On August 8, 2014, a $500,000 wire transfer was made to Zeolife, Inc. Upon discussions with representatives of Zeolife, the funds were to be used to develop and produce a product called Gluco Systems Complete, a

naturally derived alternative to the current standard pharmacologic approach to control hyperglycemia. According to Zeolife, they used the funds to develop the product but it was to be the Defendants responsibility to prepare and implement a marketing plan. No formal agreements have been found concerning this partnership. The lack of a formal agreement to evidence the investment limits the ability for the Overall Receiver to sell its interest. The Overall Receiver is currently investigating his legal remedies.

**(iv) ProFeeds Solutions, Inc.** – The Overall Receiver discovered documentation that referred to a potential investment in a cattle feed company. The Overall Receiver located a wire transfer in the amount of $165,000 to ProFeeds Solutions on August 8, 2014. Further investigation is necessary to determine the full extent of this investment before an effective plan can be implemented.

**(v) Within the Dark, LLC** – The Defendants invested in a horror film named Within the Dark. The Overall Receiver accepted an offer to sell its interest for $35,000 and the assumption of certain liabilities related to the distribution of the film.

**(vi) Miscellaneous Disbursements** – While reviewing various bank records, several large disbursements to individuals were noted. The Overall Receiver is in the process of locating and contacting these individuals to determine the nature of the transaction and will take appropriate actions to recover the funds.

## Banking and Financial Activity

13. During the Reporting Period, the Overall Receiver collected $37,291 from payments on Conventional Loans and USDA Guaranteed Loans. The Overall Receiver disbursed a total of $178,959 during the period. Of this amount, $25,772 was disbursed to the loan participants with respect to their owned portion of the USDA Guaranteed Loans. Fees and expenses, as approved by the Court, were paid to the Overall Receiver totaling $87,569. During the Reporting Period, the Overall Receiver paid fees and expenses to Shaw Fishman totaling $63,833. Administrative Expenses consisting of bank charges, fees related to payment

administration of the USDA loans, and title searches on various properties totaled $1,785. A detailed accounting of all cash receipts and disbursements is set forth in **Exhibit A**.

**Document Review and Management**

14.     During the Reporting Period, the Overall Receiver commenced consolidation of all the physical and electronic records obtained from the defendants. Boxes of physical records were moved from multiple locations to the offices of the Overall Receiver and an inventory of the contents has been completed. The Overall Receiver has contracted with Empire Discovery to provide online hosting services for electronic documents. The electronic documents include files obtained from the defendants' computers, documents obtained through subpoenas and any other electronic files that the Overall Receiver has determined are necessary to carrying out his duties. During the Reporting Period, the Overall Receiver obtained additional electronic records from the defendants. The Overall Receiver has obtained several quotes from companies to process the additional electronic records to include in the online database. Subject to privilege issues, the Overall Receiver will make the documents available for review to the Plaintiff and the intervenors.

**Overall Receiver Activity and Fees and Expenses**

15.     The activities of the Overall Receiver are fully set forth in the Fourth Fee Statement of Overall Receiver and HRP for Allowance of Compensation and Reimbursement of Expenses for The Period of August 1, 2015 through August 31, 2015 ("Fee Statement"), which is attached as **Exhibit B**.

16.     During the Reporting Period, the Overall Receiver and HRP provided 227.3 hours of professional services rendered to the Estates. In his Fee Statement, the Overall Receiver is seeking allowance of $58,403.00 in compensation for the Reporting Period and reimbursement of $414.11 for actual expenses incurred attendant to those services. (*See Exhibit B*).

I affirm under the penalty of perjury that the foregoing representations are true.

HIGH RIDGE PARTNERS, INC.

Dated: September 25, 2015       By     /s/  Patrick Cavanaugh      
                                      Overall Receiver

Patrick Cavanaugh
High Ridge Partners, Inc.
140 South Dearborn Street,
Suite 420
Chicago, IL 60603
pcavanaugh@high-ridge.com