UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

FIRST FARMERS FINANCIAL LITIGATION

Case No. 14 CV 7581
Hon. Amy J. St. Eve

**OVERALL RECEIVER'S MOTION TO APPROVE COOPERATION AGREEMENT WITH NIKESH AND TRISHA PATEL**

Patrick Cavanaugh, not individually, but solely in his capacity as Overall Receiver[1] of the Overall Receivership Estate ("Overall Receiver"), pursuant to Fed. R. Civ. P. 66 ("Rule 66") and Local Rule 66.1(a) of the Local Rules of the United States District Court for the Northern District of Illinois ("Local Rule 66.1(a)"), moves this Court for the entry of an order approving the proposed Cooperation Agreement ("Agreement") with Nikesh Patel ("Nikesh") and Trisha Patel ("Trisha," and together with Nikesh, the "Patels") attached hereto as Exhibit A. In support of this motion, the Overall Receiver states as follows:

### I. PROCEDURAL HISTORY

**A. Overview**

1. On September 29, 2014, Pennant Management, Inc. ("Pennant") filed its Complaint against First Farmers Financial, LLC ("First Farmers"), Nikesh, Trisha, Alena Hospitality, LLC, Alena Laboratories, LLC, Alena Aviation, LLC, Able Connection, LLC, NPSSS, LLC, Kuber Capital Funding, LLC, Kuber Consulting, Suri Hospitality, LLC, and Suri Hospitality International, LLC, initiating Case No. 14 CV 7581 (the "Receivership Case") in the above-captioned case.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Agreed Order Clarifying, Modifying and Expanding the Duties of Receiver Michael Nanosky and to Appoint an Overall Receiver and Regarding Payments to Attorneys and Other Professionals and Related Items (the "Amended Receiver Order") [Dkt. No. 122].

2. On September 29, 2014, the United States of America ("Government") also filed its Criminal Complaint against Nikesh in the Court, initiating Case No. 14 CR 546 ("Criminal Case") and Nikesh is currently in discussions with the Government in an effort to resolve by agreement the issues raised in the Criminal Complaint.

3. All of the complaints[2] arise out of a massive fraud perpetrated by Nikesh and Timothy Fisher ("Fisher"), among others, through First Farmers Financial, LLC ("First Farmers"),[3] which Nikesh and Fisher utilized to fraudulently obtain millions of dollars from the sale of fictional loans that were purportedly guaranteed under the U.S. Department of Agriculture Rural Development Program.

4. After fraudulently obtaining those funds, Nikesh and Fisher directed First Farmers to improperly transfer millions of dollars to Nikesh's wife, Trisha, and to numerous other entities owned and/or controlled by Nikesh, Fisher and/or Trisha in a blatant attempt to defraud First Farmer's creditors.

**B. The Appointment of the Receivers**

5. On November 10, 2014, the Court entered the *Agreed Order Appointing Receiver* [Dkt. No. 29], appointing Michael M. Nanosky as receiver to exercise control over selected assets owned by the Defendants and to control selected assets owned or controlled by the entity Defendants ("Nanosky Receivership Estate").

---

[2] The conduct and circumstances giving rise to this litigation are more fully set forth in the Overall Receiver's Amended Complaint [Dkt. No. 199], the Second Amended Complaint filed by Pennant Management, Inc. ("Pennant") [Dkt. No. 182], and the amended intervenor complaints filed by the Illinois Metropolitan Investment Fund and Harvard Savings Bank. [Dkt. No. 176 and 194.]

[3] The Patel and Fisher related defendants in this litigation are: First Farmers Financial, LLC, Nikesh Ajay Patel, Trisha N. Patel, Timothy Glenn Fisher, Alena Hospitality, LLC, Alena Laboratories, LLC, Alena Aviation, LLC, Able Connection, LLC, NPSSS, LLC, Kuber Capital Funding, LLC, Kuber Consulting, Suri Hospitality, LLC, Suri Hospitality International, LLC, Translucent Entertainment, LLC, Alena Production, LLC, ASL Pictures, LLC, Alena Hospitality LBV, LLC, Alena Hospitality UCF, LLC, Alena Hospitality SSL, LLC, 500 Hamilton Peoria, LLC, an Illinois limited liability company, 500 Hamilton Peoria, LLC, a Delaware limited liability company and Alena Hospitality Saddle Brook, LLC.

6. On April 23, 2015, the Court entered the Amended Receiver Order, appointing the Overall Receiver and splitting the management of the Defendants' assets into two separate receivership estates.

7. Under the Amended Receiver Order, the Overall Receiver was appointed to take possession and control of all assets of the Defendants other than those assets entrusted to the Nanosky Receivership Estate ("Overall Receivership Estate"). The Overall Receiver was also authorized to take all necessary steps as directed by the Court to care for, manage, preserve, maintain and dispose of the Overall Receivership Estate including, but not limited to, investigating and prosecuting all actions necessary for the protection of the Overall Receivership Estate or to void and recover transfers of assets in which the Overall Receivership Estate asserts any right, title or interest, and to avoid or reduce certain liabilities ("Liabilities") asserted against the Overall Receivership Estate (collectively, the "Claims").

**C. The Overall Receiver's Investigation of and Litigation Against the Patels**

8. On July 9, 2015, the Overall Receiver filed his original Complaint against Trisha, Alena Hospitality LBV, LLC, Alena Hospitality UCF, LLC, Alena Hospitality SSL, LLC, 500 Hamilton Peoria, LLC, and Alena Hospitality Saddle Brook, LLC, to avoid and recover fraudulent transfers and for related relief.

9. On July 14, 2015, the Overall Receiver filed his Amended Complaint against Trisha, Alena, Hospitality LBV, LLC, Alena Hospitality UCF, LLC, Alena Hospitality SSL, LLC, 500 Hamilton Peoria, LLC, an Illinois limited liability company, 500 Hamilton Peoria, LLC, a Delaware limited liability company, and Alena Hospitality Saddle Brook, LLC (collectively, the "Hotel Entities"), to avoid and recover fraudulent transfers and for related relief. [Dkt. No. 199.]

10. The Overall Receiver has just begun his investigation of certain liabilities and claims against various persons and entities and the full, complete and candid cooperation of the Patels with the Overall Receiver will assist the Overall Receiver in his efforts to investigate and prosecute the claims.

11. On August 4, 2015, the Court entered an Order appointing the Overall Receiver as receiver for the Hotel Entities and amending the Amended Receiver Order to include the Hotel Entities as assets within the definition of the Overall Receivership Estate.

12. On September 15, 2015, the Court entered an Order appointing the Overall Receiver as receiver for Point Cypress, LLC and amending the Amended Receiver Order to include Point Cypress, LLC within the definition of the Overall Receivership Estate.

13. On October 19, 2015, the Overall Receiver filed his Complaint against Fisher in the Court to avoid and recover fraudulent transfers, to recover monetary damages against Fisher for breaching his fiduciary duties as an officer of First Farmers and for aiding and abetting Nikesh's breach of his fiduciary duties to First Farmers.

14. The Overall Receiver has already initiated additional litigation against various entities related to the Overall Receiver's activities and efforts to avoid and to recover fraudulent transfers, to recover monetary damages, and to realize a return on assets recovered by the Overall Receiver. The Overall Receiver has determined, in his business judgment, that the Patels' cooperation and assistance with his investigation and litigation efforts will help maximize recoveries for defrauded creditors of the Overall Receivership Estate.

D. **The Cooperation Agreement**

15. Subject to the terms and conditions of the Cooperation Agreement, the Patels have agreed to fully, completely and candidly cooperate with the Overall Receiver in connection with his continuing efforts to identify and liquidate assets of the Overall Receivership Estate, and

his investigation and prosecution of pending and potential Claims against and causes of action against the Defendants, the Hotel Entities, Fisher, and other entities and individuals.

16. In exchange, the Overall Receiver has agreed to use his best efforts to obtain a stay of all civil litigation against the Patels to enable them to use their resources to assist the Overall Receiver in his administration of the Overall Receivership Estate, and to allow the Overall Receiver to thoroughly investigate and fairly evaluate Trisha's contention that she had no active role in the acts and conduct that form the basis of the claims made in the Criminal Complaint or the civil litigation described above.

17. The following is a summary of the salient terms of the Cooperation Agreement:[4]

- **Cooperation by the Patels**. The Patels shall, subject to any agreements which they may have to cooperate with the Government which agreements would take precedence over the Patels obligations under the Cooperation Agreement, (i) cooperate in good faith in the Overall Receiver's continuing efforts to identify and liquidate assets to enhance the value of the Overall Receivership Estate, and his investigation and prosecution of pending and potential Claims, and (ii) instruct their attorneys to reasonably cooperate with the Overall Receiver and undertake additional actions as may be necessary to enhance all creditors' recoveries including, but not limited to, the following:

    (a) Deed to Kilgore Property. The Patels shall quit claim their rights to the real property located at 9120 Kilgore, Orlando, Florida ("Kilgore Property") to the Overall Receiver. The Patels may continue to occupy the Kilgore Property until March 31, 2016. The Patels shall be responsible for all routine maintenance and the payment of insurance and all other expenses (excluding the mortgage and taxes) during their continued occupancy.[5] The Overall Receiver shall obtain homeowner's insurance after execution of the quit claim Deed.

    (b) India House. The Patels shall provide to the Overall Receiver information regarding certain real property located in India, in which the Overall Receiver believes they or members of their family have an interest ("India

---

[4] This motion merely summarizes the terms of the Cooperation Agreement. The Overall Receiver refers the Court and all parties to the Cooperation Agreement (attached as Exhibit A) for its complete terms and conditions. Capitalized terms used but not otherwise defined in this summary shall have the meaning ascribed to them in the Cooperation Agreement.

[5] On January 4, 2016, the Patels executed a quitclaim deed in favor of the Overall Receiver for the Kilgore Property.

{10516-002 MOT A0427926.DOC 2} 5

House"). The Patel's will facilitate the return of any funds to which the Overall Receiver asserts a claim related to the India House.

(c) <u>Transfers and Transferees</u>. The Patels shall inform the Overall Receiver about, and use their best efforts to persuade any transferee, to promptly repay to the Overall Receiver any gift or loan made by the Patels or through the Patels' operation of any affiliated entity from and after January 1, 2010.

(d) <u>Steptoe Funds/Declaration</u>. The Patels will facilitate turnover to the Overall Receiver of all funds previously transmitted to the law firm of Steptoe & Johnson LLP ("<u>Steptoe</u>") that Steptoe received from Foley & Lardner LLP in connection with Nikesh's legal representation, subject to Steptoe's right, if any, to reimbursement from the $375,000 interpleaded funds. Nikesh will provide the Overall Receiver with a signed declaration disclosing the source(s) for payment of Steptoe's legal fees.

(e) <u>Turnover of Documents and Tangible Things</u>. The Patels will turn over to the Overall Receiver all documents in their possession, custody or control related to their personal financial matters and every entity in which the Patels have held an interest dating back to January 1, 2010.

(f) <u>Disclosure of Transfers and other entities</u>. The Patels will identify or obtain documentation for the Overall Receiver of (i) each and every transfer of their personal assets, in excess of $5,000, dating back to January 1, 2010, to any family member or any other party, and (ii) each and every entity and asset in which either of the Patels has any right, title, interest or control.

(g) <u>Investigation/Litigation Support</u>. The Patels will fully cooperate with the Overall Receiver and his attorneys and other agents and agree upon reasonable notice and the payment of their reasonable travel expenses to: (a) meet with the Overall Receiver and his attorneys and other agents for the purpose of assisting them in their investigation or prosecution of potential and/or pending Claims and causes of action, and the resolution of claims asserted against the Overall Receivership Estate; (b) to answer any inquiries made by the Overall Receiver; (c) to provide any documents that would be discoverable if the Patels were still parties to the action; (d) to make themselves available for deposition; and (e) if necessary, testify in any hearing or trial related to the Receivership Case and actions pursued by the Overall Receiver.

(h) <u>Additional Entities</u>. The Patels agree to the appointment of the Overall Receiver to be the receiver of any entity in which either of the Patels have any interest, ownership, or control, whether direct or indirect and whether such interest, ownership and control is in either of their names or in the names of any other person, which entity was created or operated during the period prior to the Effective Date.

(i) <u>Confirming Steps</u>. The Patels agree, upon reasonable request by the Overall Receiver, all at the expense of the Overall Receiver, to take such steps as are reasonable and appropriate in order to assist the Overall Receiver in his determination that the Patels have fully cooperated with the Overall Receiver and fulfilled their obligations under the Cooperation Agreement.

- **Dismissal or Stay of Litigation against Trisha/Potential Release.** Upon completion of the Overall Receiver's investigation of Trisha's role, if any, in the fraudulent scheme described in the Criminal Case and in Overall Receiver's Amended Complaint, which the Overall Receiver will promptly undertake, and provided that the Patels fully, completely, and candidly cooperate with the Overall Receiver in good faith, and otherwise timely fulfill all of their other obligations under the Cooperation Agreement, as may be determined by the Overall Receiver in the reasonable exercise of his discretion, the Overall Receiver may seek authority from the Court to provide Trisha with a general release of claims held by or controlled by the Overall Receivership Estate against Trisha ("<u>Claims</u>"), and appropriate injunctive relief against creditors seeking to assert such Claims for their own benefit; <u>provided, however,</u> that if the Overall Receiver determines in the reasonable exercise of his discretion that Trisha actively participated in the fraudulent scheme, or the Patels are not fully, completely and candidly cooperating in accordance with the Cooperation Agreement, the Overall Receiver will not be required to seek authority to provide Trisha with the above-mentioned release or injunctive relief, and the Overall Receiver shall have the right to reinstate the Claims (and any such other claims as he may discover) against Trisha and/or have any stay of litigation lifted. Pending completion of his investigation, and provided that the Patels are complying with the term of the Cooperation Agreement, the Overall Receiver shall seek a stay of litigation against the Patels.

- **Tolling of Claims against the Patels.** The Patels stipulate that the running of any and all statutes of limitations or other time deadlines relating to the claims asserted or that may be asserted by the Overall Receiver, but not by any other person or entity (collectively, "<u>Tolled Claims</u>"), are hereby tolled through and including 11:59 p.m., Central Standard Time, on January 2, 2023.

- **Stipulated Non-Dischargeable Judgment.** At the Overall Receiver's request, Nikesh shall, enter into a stipulated non-dischargeable judgment in favor of the Overall Receiver in an amount based on the claims asserted against the Overall Receivership Estate, less the amount of funds available for distribution to creditors ("<u>Stipulated Judgment</u>"). The Stipulated Judgement shall be distributed to the "Investor Creditors" pursuant to a plan of distribution to be filed by the Overall Receiver. No such request shall be made for at least sixty (60) days after the Effective Date of the Cooperation Agreement. Nikesh shall irrevocably waive the right to contest the entry and/or the enforcement of the Stipulated Judgment. The Stipulated Judgment shall fully and finally resolve all Tolled Claims.

- **Court Approval.** The Cooperation Agreement is expressly subject to Court approval. The Cooperation Agreement shall be null and void if the Court does not enter an order approving the Cooperation Agreement within sixty (60) days after execution. The

"Effective Date" of the Cooperation Agreement is the first business day after the following conditions precedent have been satisfied: (i) execution of the Cooperation Agreement by the parties and (ii) Court approval of the Cooperation Agreement.

## RELIEF REQUESTED

18. By this motion, the Overall Receiver seeks the entry of an order authorizing him to enter into and take all actions contemplated by the Cooperation Agreement. The Overall Receiver has concluded that the Cooperation Agreement, which was the result of arms'-length negotiations conducted in good faith, is fair in all respects and represents a favorable resolution in a manner that is in the best interests of the Estates and their creditors.

## BASIS FOR RELIEF

19. Consistent with Rule 66[6] and Local Rule 66.1(a),[7] the Court has broad powers and wide discretion to determine relief in a receivership proceeding. A court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). In administering the receivership, the district court has "broad discretion" to take actions it deems appropriate to effectuate the purpose of the receivership. *See United States v. Vanguard Inv. Co.*, 6 F.3d 222, 226–27 (4th Cir. 1993). These broad powers derive from the historically inherent

---

[6] FRCP 66 provides: "These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order."

[7] Local Rule 66.1(a) provides that:

> The administration of estates by receivers or other officers shall be similar to that in bankruptcy cases except that the court in its discretion shall—
>     (1)    fix the allowance of compensation of receivers or similar officers, their counsel, and any others appointed to aid in the administration of the estate, and
>
>     (2)    direct the manner in which the estate shall be administered, including the conduct of its business, the discovery and acquirement of its assets, and the formation of reorganization plans.

powers of the district court to fashion equitable relief in a receivership. *See SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982).

20. Given that the primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors, courts often rely on bankruptcy principles and rules in determining the administration of receivership estates. *See Unisys Fin. Corp. v. Resolution Trust Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) (noting that "[u]nder bankruptcy law, a trustee in bankruptcy (or debtor in possession), the equivalent of the RTC as receiver in this case, can terminate the unexecuted portion of any contract or lease signed by the bankrupt."); *see also Bendall v. Lancer Management Group*, 523 Fed. Appx. 554, 557-58 (11th Cir. 2013) (per curium) (affirming district court's broad powers and wide discretion to supervise equity receiverships and to apply bankruptcy principles and rules as a guide in administering receivership proceedings); *Fidelity Bank, Nat'l Assn. v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996).

21. With regard to proposed settlements, courts generally defer to a receiver's business judgment, allowing compromises that further the purposes of the receivership, that are in the best interests of the receivership estate, and that falls within the range of reasonable litigation outcomes. *S.E.C. v. Ruderman*, No. 2:09-CV-02974-ODW, 2013 WL 153266, at *2 (C.D. Cal. Jan. 15, 2013). This range "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*. In *Ruderman*, the court relied, in part, on a local rule that required receiverships to be administered in accordance with the administration of bankruptcy estates; accordingly, the court's approval of the proposed settlement was informed by Bankruptcy Rule 9019 and the standard for approval of settlements in bankruptcy cases. *Id*.; *see also S.E.C. v. Parish*, No. 2:07-CV-00919-DCN, 2010 WL 8347143, at *6 (D.S.C. Feb. 10, 2010) *order amended on*

*reconsideration*, No. 2:07-CV-00919-DCN, 2010 WL 8347144 (D.S.C. Apr. 8, 2010) (approving proposed settlement agreement that was consistent with and furthered the purposes of the receivership); *Sec. & Exch. Comm'n v. Temme*, No. 4:11-CV-655, 2014 WL 1493399, at *2 (E.D. Tex. Apr. 16, 2014) (approving settlement based on receiver's determination that it was in the best interests of the receivership estate).

22. Under Seventh Circuit precedent, courts have broad discretion under Bankruptcy Rule 9019 to approve proposed compromises that are in the best interests of the bankruptcy estate. *In re Energy Coop, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate."). In order to make that determination, a court must compare "the value of the settlement with the probable costs and benefits of litigating." *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007). Among the factors that the Court should consider in its analysis are (i) the litigation's probability of success, (ii) the litigation's complexity, (iii) the litigation's attendant expense, inconvenience and delay (including the possibility that disapproving the settlement will cause wasting of assets). *See, e.g., Doctors Hosp.*, 474 F.3d at 426; *Energy Co-op., Inc.*, 886 F.2d at 927.

23. After extensive arms'-length negotiations, the Overall Receiver submits that the proposed Cooperation Agreement with the Patels represents the best opportunity under the existing circumstances to maximize the recoveries for creditors of the Overall Receivership Estate. Under the Cooperation Agreement, the Overall Receiver will obtain from the Patels (and their counsel) full, complete and candid cooperation with the Overall Receiver's continuing efforts to identify and liquidate assets of the Overall Receivership Estate. The obligation to cooperate also requires the Patels to fully disclose all personal financial information and all transfers of assets made by the Patels or their affiliated entities, which will assist the Overall

Receiver's investigation, prosecution of potential claims of the Overall Receivership Estate and the defense of any claims asserted against the Overall Receivership Estate. Nikesh has also agreed to a Stipulated Judgement in favor of the Overall Receiver for the benefit of the Investor Creditors in an amount based upon the claims asserted against the Overall Receivership Estate, less the amount of funds available for distribution to creditors.

24. In addition to providing information and documentation to the Overall Receiver and the Stipulated Judgement, the Patels: (i) have quit-claimed title to the Kilgore Property to the Overall Receiver; (ii) will facilitate the return of funds that were used in connection with the India House; (iii) will use their best efforts to persuade transferees to voluntarily surrender and/or repay to the Overall Receiver gifts and loans made by the Patels or their affiliated entities; (iv) will facilitate the turnover of the funds transmitted to Steptoe; (v) will consent to the appointment of the Overall Receiver to be the Receiver for any other entities in which they have any interest, ownership or control; (vi) will agree to toll any and all statute of limitations or other time deadlines for the Overall Receiver to bring claims against them; and (vii) will take such other steps as reasonably required by the Overall Receiver to assist the Overall Receiver in determining whether the Patels have fully cooperated with their obligations under the Cooperation Agreement.

25. Subject to the Overall Receiver's determination that Trisha did not actively participate in the fraud, the Overall Receiver has agreed that he may seek relief from the Court (i) to provide Trisha with a general release of claims held by or controlled by the Overall Receiver, (ii) to obtain injunctive relief against creditors seeking to assert such claims for their own benefit, and (iii) to stay litigation against the Patels pending the Overall Receiver's completion of his investigation.

26. Given the vast fraud perpetrated by Nikesh, the investigation and recovery efforts have been difficult, expensive, and very litigious. If the Cooperation Agreement is approved, and if the Patels comply with its terms, the costs and burdens associated with the Overall Receiver's investigation and prosecution of pending and potential claims effort should be significantly reduced and the Overall Receivership Estate can be more expeditiously administered. The proposed Cooperation Agreement takes into account (i) the probability of success in litigating the Overall Receivership Estate's various claims, (ii) the complexity of the investigation and pending and potential litigation, and (iii) the expected attorneys' fees, costs, expenses and delay associated with the investigation and litigation.

27. The Court's approval of the Cooperation agreement is appropriate for several reasons. First, while not denominated as a settlement, the Cooperation Agreement contemplates the resolution of all claims between the Overall Receiver and Trisha in exchange for, among other things, the Patels' interest in the Kilgore Property and the Patels' full cooperation with the Overall Receiver's investigation and recovery efforts. Second, the Cooperation Agreement provides for a stay of litigation against the Patels. Third, the Cooperation Agreement authorizes the receiver to compromise the claims of the Investor Creditors against Nikesh pursuant to the terms of a Stipulated Judgment. Fourth, the Overall Receiver and the Patels have agreed that the Cooperation Agreement is void if not approved by the Court.

28. The Overall Receiver has determined, in the exercise of their business judgment, that the Cooperation Agreement is in the best interests of the Overall Receivership Estate and its creditors because it will assist the Overall Receiver in maximizing the recovery for creditors and promptly and resolves claims against the Patels. Accordingly, the Court should approve the proposed Cooperation Agreement.

## NOTICE

29.  Notice of this motion has been given to: (a) the parties on this court's CM/ECF service list; and (b) certain other parties requesting notice in this case. In light of the nature of the relief requested, the Overall Receiver submits that no further notice is required.

WHEREFORE, the Overall Receiver prays that the Court enter an order substantially in the form attached hereto as <u>Exhibit B</u> granting the relief requested in this motion, and granting such other and further relief as to the court seems just and equitable.

Respectfully submitted,

Patrick Cavanaugh, not individually, but
solely in his capacity as Overall Receiver of
the Overall Receivership Estate

Dated: January 22, 2016              By      /s/  Allen J. Guon
                                                    One of his attorneys

Steven B. Towbin
Allen J. Guon
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
Phone: (312) 541-0151
stowbin@shawfishman.com
aguon@shawfishman.com

*Counsel for the Overall Receiver*