UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | PROOF OF CLAIM |
|---|---|---|
| **Case Caption** **Pennant Management, Inc. v. First Farmers Financial, LLC, et al.** | **Case Number: 14 CV 7581** **Judge Initials: AJS** | |

| Name of Creditor (the person or other entity to whom the debtor owes money or property): USDA | ☐ | Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|---|
| Name and address where notices should be sent: Michael Kelly US Attorney's Office 219 S. Dearborn, Suite 500 Chicago, IL 60604 Telephone number: 312.353.4220 | ☐ ☐ | Check box if you have never received any notices from the bankruptcy court in this case. Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY. |

| Last four digits of account or other number by which creditor identifies debtor: | Check here if this claim | ☐ replaces ☐ amends a previously filed claim, dated _____ |
|---|---|---|

| 1. **Basis for Claim** ☐ Goods sold ☐ Services performed ☐ Money loaned ☐ Personal injury/wrongful death ☐ Taxes X Other | ☐ Wages, salaries, and compensation (fill out below) Last four digits of your SS#: _____ Unpaid compensation for services performed from _____ to _____ (date)                         (date) |
|---|---|

| 2. **Date debt was incurred: See rider.** | 3. **If court judgment, date obtained:** |
|---|---|

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $105,721,724.65 plus unliquidated ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | **Secured Claim** ☐ Check this box if your claim is secured by collateral (including a right of setoff). Brief Description of Collateral: ☐ Real Estate ☐ Motor Vehicle ☐ Other _____ Value of Collateral: $ _____ Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____. |
|---|---|

| 5. **Total Amount of Claim at Time Case Filed:** $105,721,724.65 | | | | $105,721,724.65 |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (TOTAL) |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. 7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary. 8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY. |
|---|---|

| Date **1/28/16** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): *Karen L. Davis* KAREN L. DAVIS DIRECTOR, BUSINESS AND COOPERATIVE PROGRAMS |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3

{10516-002 NTC A0414590.DOCX}

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: FIRST FARMERS FINANCIAL          )          No. 14 C 7581
LITIGATION.                             )
                                        )          Judge St. Eve

## RIDER TO PROOF OF CLAIM OF USDA

Claimant United States Department of Agriculture, hereby files this proof of claim against the estates in the above-captioned receivership proceeding. This rider is attached to and incorporated by reference into USDA's proof of claim.

USDA's claim has two components: (i) a claim for reimbursement for liabilities USDA has incurred in making payment on guaranty obligations for a non-performing loan issued by First Farmers Financial, LLC; and (ii) a contingent claim in an unknown, unliquidated amount for contribution or indemnity should USDA be held liable for claims asserted against it arising out of the First Farmers Financial fraud.

Guaranty Deficiency Claim. USDA asserts a contingent claim against First Farmers Financial under 7 CFR 4279.72 for reimbursement of its guaranty liability or a portion thereof— to the extent the liability was occasioned by failure to secure collateral, negligent servicing, or misapplication of funds—on a loan originated by First Farmers Financial to borrower Lancaster Energy Partners, LLC. USDA liability on the Lancaster Energy Partners, LLC guaranty is $9,159,353.89 plus interest.

Contribution or indemnity claim. Two complaints have been filed against the USDA that arise out of conduct by First Farmers Financial or its affiliates: *Illinois Metropolitan Investment Fund v. United States*, 15-CV-8019 (N.D. Ill.) (Ex. 1) and *Pennant Management, Inc. v. United States*, 15-CV-8017 (N.D. Ill.) (Ex. 2). The plaintiffs in those complaints allege that they were

defrauded by First Farmers Financial, that the fraud was enabled by some action or inaction of USDA, and that USDA is liable to the plaintiffs for the damages incurred by First Farmers Financial's fraud. Plaintiffs in the *Illinois Metropolitan Investment Fund* case seek damages in principal amount of $96,562,370.76. The *Pennant Management, Inc.* plaintiff seeks an unstated amount of damages. USDA asserts a claim against the estates of First Farmers Financial and its affiliates under applicable contract provisions, regulatory law, statutory law including Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq*), or common law for indemnity or contribution to the extent that plaintiffs in either case—or future claimants asserting similar claims—obtain a finding of liability against USDA that derives from damages incurred by the fraud of First Farmers Financial or its affiliates.

Reservation of Rights. The filing of this claim is not: (i) a waiver or release of USDA's rights against any person, entity or property; (ii) a waiver or release of any right or claim of USDA arising out of any other claim, of any nature whatsoever, which USDA has against the estates; (iii) a waiver or release of any rights of USDA under any provisions of applicable law; or (iv) an election of any remedy to the exclusion, express or implied, of any other remedy. All of such rights are hereby expressly reserved by USDA, without exemption and with no purpose of confessing or conceding any of the foregoing in any way by this filing or by any other participation in this case.

**EXHIBIT 1**

#3129317   RAT\hms   9/11/2015                                                      2015N-5001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ILLINOIS METROPOLITAN INVESTMENT
FUND; UNIVERSITY OF WISCONSIN
CREDIT UNION; HARVARD SAVINGS
BANK; ENCORE BANK; CITIZENS BANK;
and BLACKHAWK BANK,

                              Plaintiffs,

            v.

UNITED STATES OF AMERICA,

                            Defendant.

No.

## COMPLAINT

Plaintiffs, ILLINOIS METROPOLITAN INVESTMENT FUND, UNIVERSITY OF

WISCONSIN CREDIT UNION, HARVARD SAVINGS BANK, ENCORE BANK, CITIZENS

BANK, and BLACKHAWK BANK,  by their undersigned attorneys, complaining of Defendant,

UNITED STATES OF AMERICA, state:

### JURISDICTION AND VENUE

1.      This negligence action arises under the Federal Tort Claims Act (FTCA), 28

U.S.C. § 2671-2680.  Venue is proper in this jurisdiction because acts and/or injuries complained

of occurred in this jurisdiction and because a number of the Plaintiffs reside in this District.

2.      On October 16, 2014, Pennant Management, Inc. ("Pennant"), which is engaged

in the business of acquiring USDA and SBA guaranteed loans on behalf of community banks and

municipalities, filed a claim with the United States Department of Agriculture.

3.     On March 12, 2015, the National Appeals Division of the USDA denied Pennant's claim.

4.     The plaintiffs herein, who purchased a certain repurchase agreement collateralized with the guaranteed portions of certain USDA guaranteed loans using the services of Pennant, have not filed their own separate claims with the Department of Agriculture.

5.     In view of the USDA's denial of Pennant's claim, it would be futile for plaintiffs to file their own individual claims with the agency.

## THE PARTIES

6.     Plaintiff, Illinois Metropolitan Investment Fund ("IMET"), is an Illinois non-profit governmental investment fund created in 1996 under the Illinois Municipal Code to assist Illinois public entities with the investment of their intermediate term dollars.

7.     Plaintiff, University of Wisconsin Credit Union, is a member-owned cooperative business organization and a federally insured Wisconsin State Chartered credit union with its principal place of business at 3500 University Avenue, Madison, Wisconsin.

8.     Plaintiff, Harvard Savings Bank, is an Illinois savings institution with its principal place of business in Harvard, McHenry County, Illinois.

9.     Plaintiff, Encore Bank, is a financial institution incorporated in the State of Florida serving primarily southwest Florida, with its principal place of business in Naples, Florida.

10.     Plaintiff, Citizens Bank, is a State Chartered commercial bank incorporated in the State of Wisconsin, serving primarily southeast Wisconsin, with its principal office being in Mukwonago, Wisconsin.

2

11.     Plaintiff, Blackhawk Bank, is a community bank headquartered in Beloit, Wisconsin, which operates eight banking centers in south central Wisconsin and north central Illinois.

12.     The United States Department of Agriculture (USDA) is a department of the United States government. At all times relevant to the matters alleged herein, the USDA approved certain lenders who would originate loans under the Business and Industry Guaranteed Loan Program ("B&I Program").

13.     Prior to 2013, an entity known as First Farmers Financial, LLC ("FFF"), applied for and obtained the USDA's certification of the entity as an approved "non-traditional" lender which was permitted to originate USDA loans.

14.     At the time that the USDA approved FFF as a non-traditional lender, the USDA either knew or should have known that USDA guaranteed loans originated by FFF would be sold on the secondary market.

15.     In the Spring of 2013, Pennant Management, Inc., was an investment management company that purchased, for the benefit of its clients, repurchase agreements which were collateralized by the guaranteed portions of USDA approved and guaranteed loans. At that time, Pennant was introduced to FFF as an approved originator of USDA loans.

16.     Beginning in 2013, Pennant sold to its clients, including Plaintiffs, a certain repurchase agreement known as the First Farmers Financial Repurchase Agreement B (the "FFF Repo B"). The FFF Repo B was purportedly collateralized by the guaranteed portions of 25 separate loans, made primarily to borrowers in Georgia and Florida, that were originated by FFF pursuant to FFF's status as a USDA-approved lender.

3

17.  The Plaintiffs herein purchased interests in the USDA guaranteed loans that were originated by FFF.

18.  During the period from May 16, 2013 through August 2014, Plaintiff, IMET, invested $50,442,142.78 in the FFF Repo B.

19.  Plaintiff, University of Wisconsin Credit Union, invested $52,977,010.68 in the FFF Repo B.

20.  Plaintiff, Harvard Savings Bank, invested $18,084,796.74 in the FFF Repo B.

21.  Plaintiff, Citizens Bank, invested $15,000,000.00 in the FFF Repo B.

22.  Plaintiff, Encore Bank, invested $4,825,506.63 in the FFF Repo B.

23.  Plaintiff, Blackhawk Bank, invested $5,675,056.71 in the FFF Repo B.

24.  On September 29, 2014, plaintiffs were advised by Pennant that the documentation for the loans originated by FFF, including the USDA guarantees, were forged and that none of the 25 borrowers, to which FFF had lent money, actually existed.  Further, Pennant, the investment advisor for the plaintiffs, was unable to find any business entities in Georgia or Florida that had borrowed money from FFF.  Even the CPA who allegedly performed the most recent audit of FFF did not exist.

25.  FFF diverted the money paid by plaintiffs and other investors to entities owned by the principals of FFF, and to purchase, among other things, real estate investment properties and a lavish personal residence in Windermere, Florida.

## COUNT I

### Illinois Metropolitan Investment Fund's Claim for Damages

26.     Plaintiff, IMET, incorporates herein by reference the allegations made in paragraphs one through 25.

27.     Defendant, USDA, had a duty to exercise ordinary care in approving entities as non-traditional lenders that originated USDA guaranteed loans that would be sold on the secondary markets.

28.     Defendant, USDA, was negligent in one or more of the following ways:

a.     The USDA failed to verify that FFF had in excess of $22 million dollars in liquidity in the form of deposits in a large financial institution;

b.     The USDA failed to verify that FFF had a record of making commercial loans and having sufficient tangible assets to facilitate loan making as required by applicable regulations;

c.     The USDA failed to verify that FFF had made at least three commercial loans annually for at least the most recent three years prior to the submission of FFF's application for certification;

d.     The USDA failed to verify that FFF had tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to disburse the guaranteed loans it proposed to approve within the first six months of being approved as a guaranteed lender;

e.     The USDA failed to verify that FFF had the necessary capital and resources to successfully meet its responsibilities;

f.     The USDA acted too hastily in giving a rubber stamp approval to FFF's expansion of lender eligibility to the states of Florida and Georgia;

g.     The USDA failed to sufficiently investigate FFF and its principals prior to approving FFF as a non-traditional lender; and/or

h.     Otherwise failed to comply with its mandatory duties as set forth in 7 CFR 4279.29.

5

29.     The USDA's negligence caused harm to IMET in that IMET suffered losses totaling $50,442,142.78.[1]

30.     Wherefore, Plaintiff, Illinois Metropolitan Investment Fund, demands judgment in favor of Plaintiff, and against Defendant, United States of America, in the amount of $50,442,142.78, plus costs and interest as provided by law.

## COUNT II

### University of Wisconsin Credit Union's Claim for Damages

31.     Plaintiff, University of Wisconsin Credit Union, incorporates herein by reference the allegations made in paragraphs one through 25.

32.     Defendant, USDA, had a duty to exercise ordinary care in approving entities as non-traditional lenders that originated USDA guaranteed loans that would be sold on the secondary markets.

33.     Defendant, USDA, was negligent in one or more of the following ways:

a.      The USDA failed to verify that FFF had in excess of $22 million dollars in liquidity in the form of deposits in a large financial institution;

b.      The USDA failed to verify that FFF had a record of making commercial loans and having sufficient tangible assets to facilitate loan making as required by applicable regulations;

c.      The USDA failed to verify that FFF had made at least three commercial loans annually for at least the most recent three years prior to the submission of FFF's application for certification;

d.      The USDA failed to verify that FFF had tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to

---

[1]     Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

disburse the guaranteed loans it proposed to approve within the first six months of being approved as a guaranteed lender;

e.     The USDA failed to verify that FFF had the necessary capital and resources to successfully meet its responsibilities;

f.     The USDA acted too hastily in giving a rubber stamp approval to FFF's expansion of lender eligibility to the states of Florida and Georgia;

g.     The USDA failed to sufficiently investigate FFF and its principals prior to approving FFF as a non-traditional lender; and/or

h.     Otherwise failed to comply with its mandatory duties as set forth in 7 CFR 4279.29.

34.     The USDA's negligence caused harm to University of Wisconsin Credit Union in that University of Wisconsin Credit Union suffered losses totaling $52,997,010.68.[2]

35.     Wherefore, Plaintiff, University of Wisconsin Credit Union, demands judgment in favor of Plaintiff, and against Defendant, United States of America, in the amount of $52,997,010.68 plus costs and interest as provided by law.

## COUNT III

### Harvard Savings Bank's Claim for Damages

36.     Plaintiff, Harvard Savings Bank, incorporates herein by reference the allegations made in paragraphs one through 25.

37.     Defendant, USDA, had a duty to exercise ordinary care in approving entities as non-traditional lenders that originated USDA guaranteed loans that would be sold on the secondary markets.

38.     Defendant, USDA, was negligent in one or more of the following ways:

---

[2]     Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

a. The USDA failed to verify that FFF had in excess of $22 million dollars in liquidity in the form of deposits in a large financial institution;

b. The USDA failed to verify that FFF had a record of making commercial loans and having sufficient tangible assets to facilitate loan making as required by applicable regulations;

c. The USDA failed to verify that FFF had made at least three commercial loans annually for at least the most recent three years prior to the submission of FFF's application for certification;

d. The USDA failed to verify that FFF had tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to disburse the guaranteed loans it proposed to approve within the first six months of being approved as a guaranteed lender;

e. The USDA failed to verify that FFF had the necessary capital and resources to successfully meet its responsibilities;

f. The USDA acted too hastily in giving a rubber stamp approval to FFF's expansion of lender eligibility to the states of Florida and Georgia;

g. The USDA failed to sufficiently investigate FFF and its principals prior to approving FFF as a non-traditional lender; and/or

h. Otherwise failed to comply with its mandatory duties as set forth in 7 CFR 4279.29.

39.    The USDA's negligence caused harm to Harvard Savings Bank in that Harvard Savings Bank suffered losses totaling $18,084,796.74.[3]

40.    Wherefore, Plaintiff, Harvard Savings Bank, demands judgment in favor of Plaintiff, and against Defendant, United States of America, in the amount of $18,084,796.74 plus costs and interest as provided by law.

---

[3]    Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

## COUNT IV

### Encore Bank's Claim for Damages

41.     Plaintiff, Encore Bank,  incorporates herein by reference the allegations made in paragraphs one through 25.

42.     Defendant, USDA, had a duty to exercise ordinary care in approving entities as non-traditional lenders that originated USDA guaranteed loans that would be sold on the secondary markets.

43.     Defendant, USDA, was negligent in one or more of the following ways:

a.     The USDA failed to verify that FFF had in excess of $22 million dollars in liquidity in the form of deposits in a large financial institution;

b.     The USDA failed to verify that FFF had a record of making commercial loans and having sufficient tangible assets to facilitate loan making as required by applicable regulations;

c.     The USDA failed to verify that FFF had made at least three commercial loans annually for at least the most recent three years prior to the submission of FFF's application for certification;

d.     The USDA failed to verify that FFF had tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to disburse the guaranteed loans it proposed to approve within the first six months of being approved as a guaranteed lender;

e.     The USDA failed to verify that FFF had the necessary capital and resources to successfully meet its responsibilities;

f.     The USDA acted too hastily in giving a rubber stamp approval to FFF's expansion of lender eligibility to the states of Florida and Georgia;

g.     The USDA failed to sufficiently investigate FFF and its principals prior to approving FFF as a non-traditional lender; and/or

h.     Otherwise failed to comply with its mandatory duties as set forth in 7 CFR 4279.29.

44.     The USDA's negligence caused harm to Encore Bank in that Encore Bank suffered losses totaling $4,825,506.63.[4]

45.     Wherefore, Plaintiff, Encore Bank, demands judgment in favor of Plaintiff, and against Defendant, United States of America, in the amount of $4,825,506.63 plus costs and interest as provided by law.

## COUNT V

### Citizens Bank's Claim for Damages

46.     Plaintiff, Citizens Bank, incorporates herein by reference the allegations made in paragraphs one through 25.

47.     Defendant, USDA, had a duty to exercise ordinary care in approving entities as non-traditional lenders that originated USDA guaranteed loans that would be sold on the secondary markets.

48.     Defendant, USDA, was negligent in one or more of the following ways:

a.     The USDA failed to verify that FFF had in excess of $22 million dollars in liquidity in the form of deposits in a large financial institution;

b.     The USDA failed to verify that FFF had a record of making commercial loans and having sufficient tangible assets to facilitate loan making as required by applicable regulations;

c.     The USDA failed to verify that FFF had made at least three commercial loans annually for at least the most recent three years prior to the submission of FFF's application for certification;

d.     The USDA failed to verify that FFF had tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to

---

[4]     Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

disburse the guaranteed loans it proposed to approve within the first six months of being approved as a guaranteed lender;

e.   The USDA failed to verify that FFF had the necessary capital and resources to successfully meet its responsibilities;

f.   The USDA acted too hastily in giving a rubber stamp approval to FFF's expansion of lender eligibility to the states of Florida and Georgia;

g.   The USDA failed to sufficiently investigate FFF and its principals prior to approving FFF as a non-traditional lender; and/or

h.   Otherwise failed to comply with its mandatory duties as set forth in 7 CFR 4279.29.

49.   The USDA's negligence caused harm to Citizens Bank in that Citizens Bank suffered losses totaling $15,000,000.00.[5]

50.   Wherefore, Plaintiff, Citizens Bank, demands judgment in favor of Plaintiff, and against Defendant, United States of America, in the amount of $15,000,000.00 plus costs and interest as provided by law.

## COUNT VI

### Blackhawk Bank's Claim for Damages

51.   Plaintiff, Blackhawk Bank, incorporates herein by reference the allegations made in paragraphs one through 25.

52.   Defendant, USDA, had a duty to exercise ordinary care in approving entities as non-traditional lenders that originated USDA guaranteed loans that would be sold on the secondary markets.

53.   Defendant, USDA, was negligent in one or more of the following ways:

---

[5]   Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

a. The USDA failed to verify that FFF had in excess of $22 million dollars in liquidity in the form of deposits in a large financial institution;

b. The USDA failed to verify that FFF had a record of making commercial loans and having sufficient tangible assets to facilitate loan making as required by applicable regulations;

c. The USDA failed to verify that FFF had made at least three commercial loans annually for at least the most recent three years prior to the submission of FFF's application for certification;

d. The USDA failed to verify that FFF had tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to disburse the guaranteed loans it proposed to approve within the first six months of being approved as a guaranteed lender;

e. The USDA failed to verify that FFF had the necessary capital and resources to successfully meet its responsibilities;

f. The USDA acted too hastily in giving a rubber stamp approval to FFF's expansion of lender eligibility to the states of Florida and Georgia;

g. The USDA failed to sufficiently investigate FFF and its principals prior to approving FFF as a non-traditional lender; and/or

h. Otherwise failed to comply with its mandatory duties as set forth in 7 CFR 4279.29.

54. The USDA's negligence caused harm to Blackhawk Bank in that Blackhawk Bank suffered losses totaling $5,675,056.71.[6]

Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

---

[6] Plaintiffs' respective losses may be reduced by recoveries obtained from other wrongdoers in other proceedings.

55. Wherefore, Plaintiff, Blackhawk Bank demands judgment in favor of Plaintiff, and against Defendant, United States of America, in the amount of $5,675,056.71 plus costs and interest as provided by law.

Respectfully,

René A. Torrado, Jr.

René A. Torrado, Jr.
Corboy & Demetrio, P.C.
Attorney for Plaintiffs
33 North Dearborn Street, 21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. No. 3129317

**EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PENNANT MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  15 CV 8017 |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Pennant Management, Inc. ("Pennant"), individually and on behalf of certain investor clients as assignee,[1] for its complaint against the United States of America, states as follows:

## INTRODUCTION

1.      Pennant and its investor clients are the victims of a massive fraud perpetrated by First Farmers Financial, LLC ("FFF"), an entity approved as a non-traditional (non-bank) lender by the United States Department of Agriculture's Rural Business Cooperative Service (the "USDA").  As an approved lender, FFF was supposedly determined to be qualified by the USDA pursuant to regulations governing that process, and was thereafter authorized to originate loans under the Business and Industry Guaranteed Loan Program ("B&I Program").

2.      Pennant was an asset manager. It acquired loans guaranteed by the Full Faith and Credit of the United States through either the U.S. Small Business Administration ("SBA") or the B&I Program through a secondary market for such instruments.

---

[1] Claims of Illinois Metropolitan Investment Fund, University of Wisconsin Credit Union, Harvard Savings Bank, Citizens Bank, Encore Bank, and Blackhawk Bank are not included in this Complaint.

3.  Pennant purchased 26 such loans originated by FFF.  Cloaked with the authority granted to it by the USDA as an approved and supposedly qualified USDA non-traditional lender, FFF – along with its principals Nikesh Ajay Patel ("Patel") and Timothy Glenn Fisher ("Fisher") – manufactured out of whole cloth a series of 26 loans to fictitious borrowers using fabricated loan documents supposedly signed by those non-existent borrowers, forged the signatures of USDA officials in Florida and Georgia on purported guarantees backed by the Full Faith and Credit of the United States, and sold the supposedly guaranteed portions of these fabricated loans to Pennant and other buyers in the secondary market.

4.  The scope of the fraud is substantial: it involves 26 loans with purportedly "guaranteed" balances totaling One Hundred Seventy Nine Million One Hundred Sixty Thousand Dollars ($179,160,000.00), purchased by Pennant from FFF.  FFF's ability to carry out this fraudulent scheme is the direct result of the USDA's approval of FFF as an authorized lender under the B&I Program.  FFF's application was supported by misrepresentations and false financial statements that the USDA negligently failed to discover.  This action seeks to recover from the United States, under the Federal Tort Claims Act (the "FTCA"), damages suffered by Pennant and certain of its investors through FFF's scheme, which arose directly from the USDA's negligent failure to properly inspect and investigate the bona fides of FFF's application to participate in the B&I Program and the USDA's negligent approval of FFF as a non-traditional lender in the B&I Program.

**THE PARTIES**

5.  Pennant is a Wisconsin corporation with its principal place of business in Lisle, Illinois.  Pennant was engaged in the business of acquiring USDA and SBA guaranteed loans on behalf of community banks, Qualified Retirement Plans, and municipalities and political

subdivisions.  Pennant served as a Registered Investment Advisor within the meaning of the Investment Advisor Act of 1940.  Pennant seeks recovery in this action on behalf of itself and as assignee of the claims of certain investor clients.

6.      The USDA is the federal executive department responsible for executing federal government law and policy on agriculture, forestry and food.  Under the FTCA, only the United States is properly named as a party defendant.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), which provides that United States District Courts have exclusive jurisdiction over claims brought against the United States under the FTCA.

8.      Venue for this action is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1402(b), which provides that an action under the FTCA "may be prosecuted only in the district where the plaintiff resides or wherein the act or omission complained of occurred."

**STATEMENT OF RELEVANT FACTS**

**I.      Pennant's Business and Acquisition of Loans Originated By FFF**

9.      At all relevant times, Pennant was in the business of acquiring, through a secondary market, USDA and SBA guaranteed loans originated by third-party USDA-approved or SBA-approved lenders such as FFF.  These loans were placed in funds or pooled facilities in which Pennant's clients invested (the "Pennant Funds").  Pennant's clients included community banks, Qualified Retirement Plans, and municipalities and political subdivisions located largely but not exclusively in Illinois.   These clients invested in the Pennant Funds because the

obligations were guaranteed by the Full Faith and Credit of the United States of America and, as such, were viewed by them as essentially risk-free.

10.     At all relevant times, Pennant was a purchaser of USDA-guaranteed B&I Program Loans ("USDA Loans"), and purchased loans on behalf of its clients with an aggregate guaranteed value of approximately Eight Hundred Fifty Million Dollars ($850,000,000.00).

11.     Prior to April 2, 2013, Pennant was introduced to FFF as a USDA-approved originator of USDA Loans.  Prior to purchasing any loan from FFF, Pennant confirmed with the USDA FFF's status as a USDA-approved "non-traditional" (*i.e.*, non-bank) lender from which it could safely acquire loans.  Pennant understood that in order to secure USDA approval, non-traditional lenders must go through an approval process by the USDA at both the State and National level.  Based on applicable federal regulations relating to such approval, Pennant understood and relied on the fact that if FFF had been approved by the USDA, it had undergone a supposedly rigorous vetting process by the USDA.

12.     Beginning in June 2013 and continuing through August 2014, Pennant purchased the federally guaranteed portions of 26 separate loans originated by FFF (the "FFF Loans"), reflecting loans to a variety of borrowers in Florida and Georgia.  Copies of the packages of documents required for "Good Delivery" of each such loan were sent to Lisle, and the corresponding payments wired for each such loan, representing investments by Pennant's clients, were initiated from Lisle.

13.     Each loan "package," the assembly of which the USDA entrusted to its approved lenders without any USDA or third-party oversight, complied with the "Good Delivery Requirements" of the USDA in that the papers were in the correct form and appeared to bear all

4

necessary signatures.  Among those necessary signatures on the USDA Guarantees were the signatures of USDA officials in either its Gainesville, Florida or Athens, Georgia offices.

14.     Pennant purchased each of the FFF Loans by funding the guaranteed portion of the loan through funds provided by its investor clients and remitting those amounts to FFF to disburse to its borrower.  Pennant purchased these loans based on the provision of the USDA's Full Faith and Credit guarantee, the fulfillment of the "Good Delivery" requirements of the USDA, and without notice or knowledge there was any defect in any of the FFF Loans or the USDA guarantees associated with them.

## II.     FFF's Wrongful Conduct

15.     Until September 18, 2014, Pennant did not know that those loans were anything other than bona fide obligations of legitimate borrowers with legitimate, enforceable USDA guarantees.  Nor did Pennant know that FFF was anything other than a legitimate, USDA-approved lender that was dutifully originating and then servicing the FFF Loans and remitting principal and interest payments from borrowers as they were received.

16.     In the days immediately preceding September 18, 2014, during a routine review of the documentation regarding the FFF Loans, inconsistencies came to light.  Those inconsistencies triggered a more thorough review.

17.     Pennant's review ultimately revealed that none of the 26 borrowers reflected in the FFF Loans exists and that any identifying information, including postal addresses, either did not exist at all or had nothing to do with the purported borrower.  Nor were Pennant employees able to find any such business entities in Georgia or Florida, the two states in which all of the "borrowers" were purportedly located.  Although each of the borrowers purported to be

organized under the laws of either Florida or Georgia, both states have confirmed they have no record of any of the purported borrower LLCs as having been organized there.

18.     Pennant's review also revealed that the CPA who allegedly performed the most recent audit of FFF, and whose audited financial statement was provided to Pennant, does not exist.  Pennant's review also determined that the Uniform Resource Locator web address, or "URL," for the e-mail address provided for the alleged CPA was associated with one of numerous entities controlled by Patel.

19.     On September 18, 2014, the USDA Athens, Georgia office out of which many of these FFF Loans were approved, and from which the related guarantees were purportedly issued, confirmed that it had no record of three randomly selected FFF Loans.

20.     The USDA has since confirmed that none of the 26 FFF Loans was approved by it, nor are any of the notes and related USDA guarantees reflected in its books and records, and has denied Pennant's claim for recovery based on the purported USDA guarantees of the FFF Loans.

### III.    The USDA Approval Enabled FFF's Fraudulent Scheme

21.     In 2009, Patel and Fisher met each other while both were employed by Beach Business Bank of Manhattan Beach, California.  Both worked with the USDA-guaranteed B&I Program, and both became familiar with the structure, and the vulnerabilities, of that program.

22.     In 2012, Patel and Fisher formed FFF and initiated the process of securing USDA approval of FFF as a "non-traditional" lender.  In connection with that approval process, Fisher provided the USDA with an application for USDA approval that contained fraudulent financial information about FFF that Fisher had secured through a confederate, purporting to be from a large financial institution and showing that FFF had over $22 million on deposit (and therefore

the liquidity to be approved as a USDA-approved lender), when in fact the financial information and FFF's alleged access to liquidity were a complete fiction.

23.     Further, on information and belief, Fisher, Patel, and a former (or perhaps then still-current) USDA employee with over thirty years of experience at USDA and substantial connections to personnel involved with the USDA-guaranteed B&I Program, met with USDA personnel in Florida and provided a USDA representative working there with financial statements for FFF.

24.     Moreover, Patel and Fisher, while present in Florida with their new confederate and former USDA employee, also made a variety of false and misleading representations regarding FFF's ability to conform to USDA policies, rules, and regulations regarding the B&I Program.

25.     The fact that this purported liquidity was a complete fiction could have been ascertained by the USDA with even the most rudimentary investigation.  The falsity of the other misleading statements made by Patel and Fisher similarly could have been discovered by the USDA had it conducted a rudimentary investigation.  However, the USDA did not undertake the investigation required of it.

26.     Under 7 C.F.R. § 4279.29(b), the USDA is responsible for investigating, vetting and approving "non-traditional" lenders such as FFF for participation in the B&I Program.  The regulation requires, *inter alia*, a successful record of making commercial loans and sufficient tangible assets to facilitate loan-making.  These requirements are not discretionary factors that can be accepted or rejected by the USDA based on any policy decision.  Rather, § 4279.29(b) is unequivocal that non-traditional lenders like FFF "**must**:"

> (i) Have a record of successfully making at least three commercial loans annually for at least the most recent 3 years, with delinquent loans not exceeding 10

percent of loans outstanding and historic losses not exceeding 10 percent of dollars loaned, or when the proposed lender can demonstrate that it has personnel with equivalent previous experience and where the commercial loan portfolio was of a similar quantity and quality; and

(ii) Have tangible balance sheet equity of at least seven percent of tangible assets and sufficient funds available to disburse the guaranteed loans it proposes to approve within the first 6 months of being approved as a guaranteed lender.

27.    The USDA negligently failed to make a reasonable effort to confirm the information submitted by Patel and Fisher on behalf of FFF and, instead, merely accepted the misrepresentations and falsified financial records at face value without any meaningful review or investigation of FFF's fraudulent application.

28.    As a result, the USDA negligently approved FFF as an eligible lender for the B&I Program on April 2, 2012.[2]  Shortly thereafter, the Administrator of the USDA's B&I Program similarly gave rubber-stamp approval to FFF's request to expand its lender eligibility to the states of Florida and Georgia on November 14, 2012,[3] and later to nine other states.  As late as August 25, 2014, the USDA's Business and Cooperative Programs Director for Florida and the Virgin Islands confirmed that FFF was an approved lender in good standing under the B&I Program.

29.    As a direct result of the USDA's actions and under the cloak of the USDA's authority, the USDA enabled Patel and Fisher to use FFF's status as a USDA-approved lender to perpetrate the fraud on Pennant and its investor clients.  But for the USDA's negligent investigation, failure to comply with applicable regulations, and negligent approval of FFF as a non-traditional lender, FFF and its principals could not have perpetrated the massive fraud they did, and Pennant and its investors would not have suffered the losses they did.

---

[2] A true and correct copy of the April 2, 2012 approval letter is attached hereto as Exhibit 1.

[3] A true and correct copy of the November 14, 2012 letter is attached hereto as Exhibit 2.

IV.    **Pennant Has Exhausted Its Administrative Remedies**

30.    On October 20, 2014, the USDA denied Pennant's request that the USDA repurchase the guaranteed portions of the FFF Loans.[4]  Pennant's request for repurchase fully complied with the requirements of 7 C.F.R. § 4279.78(b) and contained full and complete documentation for the FFF Loans.

31.    Thereafter, on November 19, 2014, Pennant timely submitted a request for hearing and appeal to the USDA National Appeals Division.[5]  In connection with that request, Pennant presented the claim that the USDA negligently failed to inspect the application of FFF to become an eligible lender in the B&I Program and negligently approved FFF as an eligible lender without verifying the accuracy of the information submitted by FFF as the USDA was obligated to do.

32.    On March 12, 2015, the USDA National Appeals Division issued a decision dismissing Pennant's appeal, and placed that final decision in the mail that same day.[6]

33.    Accordingly, this Complaint complies with 28 U.S.C. § 2675(a), and it is timely filed under 28 U.S.C. § 2401(b).

## COUNT I - NEGLIGENCE

34.    Pennant repeats and realleges paragraphs 1 through 33 as this paragraph 34, as if fully set forth herein.

---

[4] A true and correct copy of the USDA's October 20, 2014 denial letter is attached hereto at Exhibit 3.

[5] A true and correct copy of Pennant's November 19, 2014 request for appeal and hearing is attached hereto as Exhibit 4.

[6] A true and correct copy of the National Appeals Division's March 12, 2015 final decision is attached hereto as Exhibit 5.

35.     The USDA is the federal government department that is charged with administration, oversight and enforcement of the regulations governing the B&I Program that were promulgated in conjunction with the Department of Agriculture Reform Act.

36.     It was the USDA's duty to investigate prospective lenders, such as FFF, that applied to participate in the B&I Program as non-traditional lenders subject to approval under 7 C.F.R. § 4279.29(b).

37.     It was the USDA's duty to ensure that lenders that applied to participate in the B&I Program as non-traditional lenders had the required successful record of making commercial loans as set forth in 7 C.F.R. § 4279.29(b)(i).

38.     It was the USDA's duty to ensure that lenders that applied to participate in the B&I Program as non-traditional lenders had sufficient tangible assets to facilitate loan-making as set forth in 7 C.F.R. § 4279.29(b)(ii).

39.     The USDA, by and through its agents and employees, negligently failed to investigate the false information submitted by Patel and Fisher on behalf of FFF in its application to participate in the B&I Program as a non-traditional lender.

40.     The USDA, by and through its agents and employees, negligently failed to confirm that FFF complied with the requirements set forth in 7 C.F.R. § 4279.29(b)(i) and (b)(ii) that are necessary prerequisites for a non-traditional lender to participate in the B&I Program.

41.     The USDA, by and through its agents and employees, negligently approved FFF as a non-traditional lender authorized to participate in the B&I Program.

42.     As a direct result of the USDA's negligent acts and omissions, FFF used its status as a USDA-approved lender to perpetrate a fraud on Pennant and its investor clients.  But for the USDA's negligent investigation and approval of FFF as a non-traditional lender, FFF and its

principals could not have perpetrated the massive fraud they did, and Pennant and its investor clients would not have suffered the losses they did to their businesses and other assets.

43.     The USDA's negligent acts and/or omissions were a direct and proximate cause of Pennant's damages to its business and reputation and the damages suffered by Pennant's investors, through the loss of all or some material part of their investments.

WHEREFORE, Plaintiff Pennant Management, Inc., individually and as assignee of certain investor clients, prays for judgment against Defendant United States of America based on all losses and damages caused by the negligent acts and omissions by the USDA as set forth herein, including the loss of their business and assets, plus costs, prejudgment and post-judgment interest, and for further relief as this Court deems just and equitable.

Dated: September 11, 2015                    Respectfully submitted,

                                             /s/ Paul T. Fox
                                             Paul T. Fox
                                             Paul J. Ferak
                                             Jonathan H. Claydon
                                             Michael R. Cedillos
                                             Greenberg Traurig, LLP
                                             77 West Wacker Drive, Suite 3100
                                             Chicago, Illinois 60601

                                             *Attorneys for Plaintiff*