# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | No. 14-cv-7581 |
| FIRST FARMERS FINANCIAL ) | |
| LITIGATION ) | Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The matter before the Court concerns the claims of Patrick Cavanaugh, not individually, but in his capacity as receiver of the Overall Receivership Estate (the "Overall Receiver"), against Defendants Standley Plastics, Inc. ("Standley Plastics") and Steven Standley ("Standley") (collectively, "Defendants"). Defendants have moved to dismiss, (R. 1171), Counts Three and Four of the Overall Receiver's First Amended Complaint, (R. 1145). For the following reasons, the Court denies Defendants' motion.

## BACKGROUND[1]

In the fall of 2013, Standley wished to expand the operations of his company, which is now known as Standley Plastics. (R. 1145, First Am. Compl., at ¶¶ 8–9.) He therefore sought $13,000,000 in capital or financing and engaged a man named Steven Bombola ("Bombola") to help in this endeavor. (*Id.* at ¶ 8.)

Bombola contacted Timothy Fisher ("Fisher"), who at the time was an officer and a 50% owner of First Farmers Financial, LLC ("First Farmers").[2] (*Id.* at ¶¶ 1, 9.) The two men were previously involved in an unrelated business transaction, and Bombola "thought that First

---

[1] The facts presented in the Background are taken from the complaint and are presumed true for the purpose of resolving the pending motion to dismiss. *See Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] The Overall Receiver has authority over First Farmers' potential claims against Defendants. (*See* R. 1145 at ¶ 2; R. 122.)

Farmers might also be interested in either investing or loaning money to Standley Plastics." (*Id.* at ¶ 9.) As a result of Bombola's conversations with Fisher, First Farmers made two wire transfers to a Standley Plastics account in a Missouri bank. (*Id.* at ¶ 10.) The first transfer was for $125,000 and occurred around October 22, 2013, and the second transfer was for $500,000 and occurred around December 5, 2013. (*Id.*) The parties did not execute any written documents in connection to these two transfers. (*Id.*) Standley Plastics used the money immediately to buy new equipment for its plant in Lamar, Missouri. (*Id.*)

In November 2013, Fisher told Bombola that First Farmers would be willing to loan a total of $2,000,000 to Standley Plastics (including the $625,000 that First Farmers had already transferred), but it would provide the additional $1,375,000 only if "Standley Plastics executed a promissory note for the entire $2,000,000 loan and Standley executed a written guaranty of the amounts due under that note." (*Id.* at ¶¶ 11–12.) First Farmers then sent Bombola a number of loan documents, including a promissory note and guaranty of payment, which he forwarded to Standley. (*Id.* at ¶ 13.)

The promissory note "established a maturity date of February 27, 2014 . . . for the loan." (*Id.* at ¶ 18.) By that date, Standley Plastics owed a flat fee interest payment of $250,000 along with the principal of the loan. (*Id.*; *id.*, Ex. A at ¶¶ 1–3.) The promissory note also imposed a late fee of $100,000 per month. (*Id.*, Ex. A at ¶¶ 3, 7.) Through the guaranty agreement, Standley, in his individual capacity, "guaranteed payment to First Farmers of all of the 'Obligations' of Standley Plastics to First Farmers under the [promissory note]." (*Id.* at ¶ 19.)

Standley executed the promissory note and the guaranty agreement on December 27, 2013. (*Id.* at ¶ 14.) According to the Overall Receiver, "at the time that Standley executed all of the Loan Documents on behalf of himself and Standley Plastics, he knew that Standley Plastics

2

had no intention of repaying the Note on February 27, 2014, when the principal payment was due," and "Standley knew that Standley Plastics would not even have the monies available to repay the Note on February 27, 2014, or at any time thereafter." (*Id.* at ¶ 15.) Despite knowing that "neither he nor Standley Plastics intended to abide by the express terms contained in the [promissory note and guaranty agreement]," Standley "intentionally misled First Farmers by remaining silent, executing the Loan Documents and accepting the additional monies from First Farmers." (*Id.* at ¶ 16.)

After executing the loan documents, First Farmers made two additional wire transfers to Standley Plastics' bank account in Missouri, totaling the remaining $1,375,000 of the $2,000,000 loan. (*Id.* at ¶ 17.) Standley Plastics used the money "to buy more equipment for use in [its] Lamar, Missouri plant, and also used the additional funds to generate more revenue." (*Id.*)

February 27, 2014—the promissory note's maturity date—passed without Standley Plastics meeting its payment obligations, as it owed "a lump sum payment of at least $2,000,000." (*Id.* at ¶ 20.) Standley also did not fulfill the guaranty agreement. (*Id.* at ¶ 21.) To date, Defendants have not made the outstanding loan payment. (*Id.* at ¶ 22.)

On November 12, 2015, the Overall Receiver filed suit against Defendants, alleging breach of the promissory note ("Count One") and breach of the guaranty agreement ("Count Two"). (R. 659-1, Compl.). On July 19, 2016, the Overall Receiver filed a motion for leave to file a first amended complaint, (R. 1133), which the Court granted, (R.1141). In the First Amended Complaint, in addition to the two breach of contract claims from the original complaint (Counts One and Two), the Overall Receiver alleged Fraud in the Inducement ("Count Three") and Unjust Enrichment ("Count Four"). (R. 1145.)

In Count Three, the Overall Receiver seeks rescission of the promissory note, $2,000,000 in damages, punitive damages, and attorneys' fees and costs. (*Id.* at ¶ 45.) In Count Four, the Overall Receiver seeks "at a minimum, $2,000,000," as well as attorneys' fees and costs. (*Id.* at ¶ 51.)

Defendants filed the current motion to dismiss Counts Three and Four, (R. 1171), which the Court now considers.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## II. Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2). *See Camasta,* 761 F.3d at 736; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). Specifically, "plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha v. Rudd,* 826 F.3d 905, 911 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). In other words, "[t]he requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible"; therefore, "[t]he complaint must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014); *see also Rocha*, 826 F.3d at 911. Allegations based on information and belief will not suffice under Rule 9(b) unless "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Grenadyor*, 772 F.3d at 1108 (quoting *Pirelli*, 631 F.3d at 443); *see also United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).

Rule 9(b)'s heightened standard does not, however, apply to allegations of states of mind. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Instead, Rule 8's standards—as defined in *Twombly* and *Iqbal*—govern. *See Iqbal*, 556 U.S. at 686–87.

## ANALYSIS

**I.     Count Three: Fraudulent Inducement**

Under Missouri law,[3] a plaintiff alleging fraudulent inducement must show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of the truth; (5) the speaker's intent that his representation be acted upon; (6) the hearer's ignorance of the falsity; (7) his reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's subsequent and proximate injury.

*Bank of Kirksville v. Small*, 742 S.W.2d 127, 131 (Mo. 1987) (en banc); *see also Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 688 F.3d 938, 941 (8th Cir. 2012) (applying Missouri law); *Bracht v. Grushewsky*, 448 F. Supp. 2d 1103, 1110 (E.D. Mo. 2006).

Defendants argue that a plaintiff cannot plead breach of contract and fraudulent inducement where the fraud is nothing more than a false statement that one intends to perform the contract. (*See, e.g.*, R. 1261, Reply, at 3.) This is incorrect. "[A] promise *accompanied by a present intent not to perform* is a misrepresentation of present state of mind, itself an existing fact, sufficient to constitute actionable fraud." *Sofka v. Thal*, 662 S.W.2d 502, 507 (Mo. 1983) (en banc) (emphasis in original), *abrogated on other grounds as stated in McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 170–71 (Mo. Ct. App. 2012); *see Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623 SNLJ, 2011 WL 4501049, at *5–6 (E.D. Mo. Sept. 28, 2011); *Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354, 372 (Mo. Ct. App. 2015); *CADCO, Inc. v. Fleetwood Enters., Inc.*, 220 S.W.3d 426, 436 (Mo. Ct. App. 2007); Restatement

---

[3] The parties agree that Missouri law governs Count Three. (*See* R. 1172, Mem. Supp. Defs.' Mot. Dismiss, at 6; R. 1251, Resp. Mot. Dismiss, at 6–7.)

(Second) of Torts § 530 cmt. c. The Overall Receiver's claim stands upon this theory.[4] (*See* R. 1251 at 8; R. 1145 at ¶¶ 15–16, 41–43.)

"Missouri courts have stated on numerous occasions that the necessary intent cannot be established merely by pointing to the defendant's subsequent breach." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 864 (8th Cir. 2010); *Ariel*, 2011 WL 4501049, at *6. The requisite intent may be shown, however, "by any other evidence that sufficiently indicates its existence, as, for example, the certainty that [the defendant] would not be in funds to carry out his promise." Restatement (Second) of Torts § 530 cmt. d; *see Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 519–20 (Mo. 1988) (en banc) (quoting the Restatement § 530).

The Overall Receiver alleges that Standley, at the time he executed the loan documents, did not intend to pay back the loan and knew his business would not have the money to do so. This is sufficient, at this stage in the case, to plead the requisite fraudulent intent. A plaintiff's "pleading burden should be commensurate with the amount of information available to [it]." *Olson v. Champaign County*, 784 F.3d 1093, 1100 (7th Cir. 2015) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)). Without discovery on the fraudulent inducement claim, the Court cannot expect the Overall Receiver to describe in great detail what Standley knew and intended at the time he signed the loan documents. Moreover, it is not unreasonable to think that discovery may reveal documents—for example, internal emails, business plans, or bank records—showing that Standley had no intention to live up to his promises. *See id.* (explaining that allegations are plausible if they raise a reasonable expectation that discovery will reveal supporting evidence); *see also Frerck v. John Wiley & Sons, Inc.*, 850 F. Supp. 2d 889,

---

[4] The Court also rejects Defendants' contention that they did not induce First Farmers because "First Farmers approached Standley, . . . not vice versa," and Standley took no affirmative steps to negotiate terms. (R. 1172 at 8–9.) This argument misunderstands the Overall Receiver's claim: Standley executed the promissory note and guaranty agreement (and therefore received a sizeable loan) with a present intent not to perform.

7

897–98 (N.D. Ill. 2012) (explaining that a plaintiff who "only generally alleged an intent to deceive" survived a motion to dismiss, although the plaintiff would need to "develop evidence of Defendant's intent to deceive" to survive summary judgment).

Defendants also argue that "a party's nondisclosure of a material fact can . . . be actionable for fraudulent inducement, but only in cases where the law imposes a duty on the defendant to speak." (R. 1172 at 9.) Defendants contend that no such duty arose in this case. (*Id.* at 11–12.)

Defendants are correct that failure to disclose a material fact can amount to a misrepresentation when there is a duty of disclosure. *See Oliver v. Ford Motor Credit Co.*, 437 S.W.3d 352, 358 (Mo. Ct. App. 2014) (citing *Hess v. Chase Manhattan Bank, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007)). The duty of disclosure arises where "one party has superior knowledge or information that is not reasonably available to the other." *Flynn v. CTB, Inc.*, No. 1:12CV68 SNLJ, 2015 WL 5692299, at *10 (E.D. Mo. Sept. 28, 2015) (quoting *Hess*, 220 S.W.3d at 765). "Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." *Id.* (quoting *Hess*, 220 S.W.3d at 765).

Defendants' duty argument fails. First, this is not a case of misrepresentation-by-omission, and therefore a duty of disclosure is not at issue. As noted previously, "a promise *accompanied by a present intent not to perform* is a misrepresentation of present state of mind, itself an existing fact, sufficient to constitute actionable fraud." *Sofka*, 662 S.W.2d at 507 (emphasis in original); *CCA Global Partners, Inc. v. Yates Carpet, Inc.*, No. 4:06 CV 15 JCH, 2006 WL 2883376, at *9 (E.D. Mo. Oct. 5, 2006) ("In Missouri, an unkept promise may constitute an actionable claim of fraud if its accompanied by a present intent not to perform; this mis-representation of a present state of mind is a misrepresentation of an existing fact."). Thus,

if Standley promised to pay back the loan without an intent to do so, his promise amounted to an affirmative misrepresentation. *See* Restatement (Second) of Torts § 530 cmt. c (indicating that "[s]ince a promise necessarily carries with it the implied assertion of an intention to perform[,] it follows that a promise made without such an intention is fraudulent and actionable in deceit under the rule stated in § 525," the section for liability for fraudulent misrepresentation[5]); *see also Ariel*, 2011 WL 4501049, at *5–7 (considering a claim for fraudulent misrepresentation based on a lack of an intent to perform without reference to a duty to speak or the term "fraudulent omission," which the court discusses later in the opinion with regard to another claim).

Second, even if the Overall Receiver were pleading fraud by omission, the Court could not dismiss the claim at this stage. Defendants argue that Standley owed no duty of disclosure and that First Farmers was required to conduct adequate due diligence to discover "the true state of affairs." (R. 1261 at 5 (quoting *Bayne v. Jenkins*, 593 S.W.2d 519, 529 (Mo. 1980)); R. 1172 at 11–12). The alleged fraud, however, relates to Standley's intent to either keep or break his promises, and the Court fails to see—and Defendants do not identify—what steps First Farmers could have taken to discover the true nature of Standley's thoughts. *See Keith v. Ferring Pharms., Inc.*, No. 15 C 10381, 2016 WL 5391224, at *10 (N.D. Ill. Sept. 27, 2016) (explaining that a defendant's knowledge "is a fact that is 'peculiarly within the [defendant's] knowledge'" (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.))).

Finally, Defendants argue that the Overall Receiver failed to comply with Rule 9(b). (R. 1261 at 6.) The Court disagrees, as the Overall Receiver gave the who, what, when, where, and how, of the fraud: (1) Defendants made the alleged misrepresentations; (2) the misrepresentations related to Defendants' allegedly false promise to pay back the loan;

---

[5] The section for liability for nondisclosure is § 551.

9

(3) Standley executed the loan documents around December 27, 2013; (4) Defendants were based in Missouri; and (5) Defendants committed fraud by falsely representing that they would perform according to their promise.

In sum, the Overall Receiver has adequately stated a claim of fraudulent inducement in the alternative to Counts One and Two. (R. 1145 at ¶¶ 40–45.)

## II.  Count Four: Unjust Enrichment

The Overall Receiver argues that Missouri law applies to Count Four, (*see* R. 1251 at 6–7, 13), and Defendants contend that either Missouri or Florida law governs, but that it is immaterial to the current motion which state's law controls, (R. 1172 at 7, 13). Given Defendants' position, the Court will proceed under Missouri law.

The dispute here boils down to whether the Overall Receiver may seek to recover under an unjust-enrichment theory and a breach-of-contract theory simultaneously. Defendants argue that "when a plaintiff has alleged that he has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." (*Id.* at 13.) Accordingly, Defendants maintain, because the Overall Receiver alleges breach of contract in Counts One and Two, he cannot state a claim for unjust enrichment. (*Id.*) The Overall Receiver counters by arguing that he properly pleads unjust enrichment in the alternative to breach of contract. (R. 1251 at 13–14.)

"Missouri law does not allow a plaintiff to recover under both breach of an express contract and unjust enrichment." *Eskridge Enters., LLC v. Iqbal*, No. 6:15-cv-03011, 2015 WL 5308859, at *3 (W.D. Mo. Sept. 10, 2015); *see Freedom Smokeless, Inc. v. Rapid Dev. Servs., Inc.*, No. 4:15CV00771 AGF, 2015 WL 5735201, at *8 n.8 (E.D. Mo. Sept. 29, 2015); *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). That said, "[t]he fact that a plaintiff

cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in [his] complaint." *Level 3 Commc'ns, LLC v. Ill. Bell Tel. Co.*, No. 4:13-CV-1080 (CEJ), 2014 WL 414908, at *6 (E.D. Mo. Feb. 4, 2014) (alterations in original) (quoting *Franke v. Greene*, No. 4:11CV11860 JCH, 2012 WL 3156577, at *5 (E.D. Mo. Aug. 2, 2012)).

Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). The question before the Court is whether the Overall Receiver has complied with Rule 8(d).

Courts have dismissed claims for unjust enrichment when, within the allegations supporting the claim, the plaintiff alleges the existence of a contract governing the relationship between the parties. *See Team Impressions Inc. v. Chromas Techs. Canada, Inc.*, No. 02 C 5325, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003) ("While Plaintiff is entitled . . . to plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the [parties'] relationship."); *see also, e.g.*, *Telefonix, Inc. v. Response Eng'g, Inc.*, No. 12 C 4362, 2012 WL 5499437, at *5–6 (N.D. Ill. Nov. 13, 2012); *Ford v. Pac. Webworks, Inc.*, 09 C 7867, 2011 WL 529265, at *4 n.7 (N.D. Ill. Feb. 4, 2011) ("[B]reach of contract and unjust enrichment may be pleaded in the alternative as long as plaintiffs have not incorporated allegations of a contract into their unjust enrichment claim."). In *Team Impressions*, for example, the plaintiff specifically alleged within its count for unjust enrichment that the defendant "failed 'to provide the contracted for press system,'" which was fatal to the

11

unjust enrichment claim. 2003 WL 355647, at *4. Similarly, in *Telefonix*, the court dismissed without prejudice a claim for quasi-contractual relief because it included an allegation that a contract exists. 2012 WL 5499437, at *5–6. *See also Dubinsky v. Mermart LLC*, No, 4:08-CV-1806 (CEJ), 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009) (dismissing an unjust enrichment claim where, "in their unjust enrichment claim, plaintiffs explicitly request that they be awarded interest payments due to them 'but for the breach of contract' by defendant").

In other cases, however, courts have permitted an alternative claim of unjust enrichment to go forward when it did not rely on the existence of a valid contract. *See, e.g.*, *Traffic Tech., Inc. v. Kreiter*, No. 14-cv-7528, 2015 WL 9259544, at *15 (N.D. Ill. Dec. 18, 2015); *Eskirdge Enters.*, 2015 WL 5308859, at *3; *Beery v. Chandler*, No. 4:14CV456 RLW, 2015 WL 249467, at *4 (E.D. Mo. Jan. 20, 2015); *Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-cv-1512, 2015 WL 231108, at *7 (N.D. Ill. Jan 16, 2015); *Level 3*, 2014 WL 414908, at *6. In *Sunny Handicraft*, for example, the court declined to dismiss an alternative claim for unjust enrichment, reasoning that "although [the count for unjust enrichment] contains allegations that Sunny Handicraft agreed to pay for an artwork expense and failed to provide agreed-upon shipping documents, Envision does not allege anywhere within [the count] that the parties were bound by an express contract." 2015 WL 231108, at *7. Similarly, in *Traffic Tech*, the court permitted an unjust enrichment claim to go forward because it was clear that the alternative claim was relevant only if a particular contractual agreement was unenforceable. 2015 WL 9259544, at *15.

Here, while the Overall Receiver alleges facts that it hopes give rise to a claim of breach of contract and unjust enrichment, the Overall Receiver's specific allegations that the promissory note and guaranty agreement are binding and enforceable are not incorporated into the unjust

12

enrichment count. (R. 1145 at ¶¶ 24, 32, 46.) Moreover, the complaint explicitly says that the count for unjust enrichment is in the alternative to Counts One and Two. Consequently, because Count Four excludes the paragraphs alleging binding and enforceable contracts, this case is closer to *Sunny Handicraft* and *Traffic Tech* than *Telefonix* and *Team Impressions*. The Court therefore declines to dismiss Count Four.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

**DATED:  October 13, 2016**                                    **ENTERED**

                                                                                        _____
                                                                                        AMY J. ST. EVE
                                                                                        U.S. District Court Judge