**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In Re: )
) No. 14-cv-7581
FIRST FARMERS FINANCIAL )
LITIGATION ) Hon. Amy J. St. Eve

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The matter before the Court concerns the claims of Patrick Cavanaugh, not individually, but in his capacity as receiver of the Overall Receivership Estate (the "Overall Receiver"), against Defendants Standley Plastics, Inc. ("Standley Plastics") and Steven Standley ("Standley") (collectively, "Defendants"). Defendants have moved for "an order determining the substantive law that applies to Counts One and Two of the [Overall] Receiver's First Amended Complaint." (R. 1174). Specifically, Defendants contend that Florida law governs Counts One and Two, while the Overall Receiver maintains that Missouri law governs Count One.[1] For the following reasons, the Court denies in part Defendants' motion, concluding that Missouri law governs Count One and, based on the agreement of the parties, Florida law governs Count Two.

### BACKGROUND[2]

In the fall of 2013, Standley sought an investment of $13,000,000 for his company now known as Standley Plastics. (R. 1243, Defs.' Answer & Affirmative Defense, at ¶ 8.) Standley engaged a man named Steven Bombola to find investors for a fee. (*Id.*) Bombola came into contact with Timothy Fisher ("Fisher"), who worked for First Farmers Financial, LLC ("First

---

[1] The Overall Receiver does not dispute that Florida law governs Count Two.

[2] The Court presumes familiarity with the Overall Receiver's allegations, which are recounted in greater detail in the Court's October 13, 2016 Memorandum Opinion and Order. (R. 1265.)

Farmers"),³ and, as a result of Bombola's conversations with Fisher, First Farmers made two wire transfers from a Florida bank account to a Standley Plastics account in a Missouri bank totaling $625,000. (*Id.* at ¶ 10; Bombola Dep., R. 1250-2, at 40, 57; R. 1250, Pl.'s Resp. Opp., at 5; R. 1260, Defs.' Reply, at 3.) The parties did not execute any written documents in connection with these two transfers. (R. 1243 at ¶ 10.) Standley Plastics used the money immediately to buy new equipment for its plant in Lamar, Missouri. (*Id.*)

Later, First Farmers and Standley Plastics formally agreed to a $2,000,000 loan (which would include the $625,000 First Farmers had already transferred to Standley Plastics), represented by various related documents, including a promissory note, a security agreement, and a guaranty of payment. (*Id.* at ¶¶ 13–14; R. 1145-1, Compl., Ex. A–B; R. 1058-1, Standley Aff.) First Farmers sent the documents to Bombola who forwarded them to Standley to be executed. (R. 1243 at ¶ 13; Standley Dep., R. 1250-1, at 91–93, 99; R. 1250-2 at 86–87, 110–11; R. 1250 at 4.) Standley then executed the documents on December 27, 2013, sent them back to Bombola, who in turn sent them to Fisher. (R. 1243 at ¶ 13–14; R. 1250-1 at 91–93, 99; R. 1250-2 at 86–87; R. 1250 at 4.)

During the time in which Fisher, Bombola, and Standley were communicating about the loan and executing it, Standley was in Missouri, Fisher was in California, and Bombola was in either Nevada or California, though Bombola met with Standley a few times in Missouri. (R. 1250-2 at 14, 19, 41–42, 108–11; R. 1250-1 at 43–44; R. 1250 at 4.) Standley Plastics is a Missouri corporation with its principal place of business in that state. (R. 1243 at ¶ 3.) First Farmers was a Florida limited liability company with its principal place of business in Orlando.

---

³ The Overall Receiver has authority over First Farmers' potential claims against Defendants. (*See* R. 1145 at ¶ 2; R. 122.)

2

(R. 1145-1, Ex. B, at 1.)[4]  Finally, the lawyer who drafted the loan documents—William Huseman—is a Florida attorney.  (R. 1250 at 5; R. 1260 at 3.)

The promissory note "established a maturity date of February 27, 2014 . . . for the loan." (R. 1243 at ¶ 18.)  By that date, Standley Plastics owed a flat fee interest payment of $250,000 along with the principal of the loan.  (*Id.*; R. 1145, Ex. A at ¶¶ 1–3.)  The promissory note also imposed a late fee of $100,000 per month.  (R. 1145, Ex. A at ¶¶ 3, 7.)  Through the guaranty agreement, Standley, in his individual capacity, "guaranteed payment to First Farmers of all of the 'Obligations' of Standley Plastics to First Farmers under the [promissory note]."  (*Id.* at ¶ 19.)  In the security agreement, Standley Plastics granted First Farmers a security interest in 7,000,000 shares of Standley Plastic's common stock, all accounts receivable, furniture, equipment, inventory, personal property, as well as other assets.  (R. 1058-1 at 3.)  While the security and guaranty agreements both contain choice-of-law clauses indicating Florida law governs the two agreements, (*id.* at 8; R. 1145, Ex. B at ¶ 18), the promissory note contains no such provision.

After Standley executed the loan documents, First Farmers made two additional wire transfers from a Florida account to Standley Plastics' bank account in Missouri, totaling the remaining $1,375,000 of the $2,000,000 loan.  (R. 1243 at ¶ 17; R. 1250 at 5; R. 1260 at 3.)  Standley Plastics used the money "to buy more equipment for use in [its] Lamar, Missouri plant, and also used the additional funds to generate more revenue."  (R. 1243 at ¶ 17.)  Neither Standley nor Standley plastics have made any payments to First Farmers.  (*Id.* at ¶¶ 20–21.)

On November 12, 2015, the Overall Receiver filed suit against Defendants, alleging breach of the promissory note ("Count One") and breach of the guaranty agreement ("Count

---

[4] Fla. Dep't of State, Div. of Corps., *First Farmers Financial, LLC*, http://search.sunbiz.org (last visited Nov. 9, 2016) (click "Search by Entity Name," enter First Farmers, select "First Farmers Financial, LLC").

Two"). (R. 659-1, Compl.). On July 19, 2016, the Overall Receiver filed a motion for leave to file a first amended complaint, (R. 1133), which the Court granted, (R.1141). In the First Amended Complaint, in addition to the two breach of contract claims from the original complaint (Counts One and Two), the Overall Receiver alleged Fraud in the Inducement ("Count Three") and Unjust Enrichment ("Count Four"). (R. 1145.)

Defendants filed the current motion as well as a motion to dismiss Counts Three and Four. (R. 1171, 1174.) On October 13, 2016, the Court denied Defendants' motion to dismiss. (R. 1265.) The Court now grants in part and denies in part Defendants' motion for a determination of choice of law.

## LEGAL STANDARD

When asserting diversity jurisdiction over state law claims, federal courts "apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cooke v. Jackson Nat'l Ins. Co.*, No. 15 C 817, 2016 WL 1070829, at *3 (N.D. Ill. Mar. 15, 2016). When applying state law, the task of a federal court is to apply the law as interpreted by the state's highest court, or, where the state's highest court has not addressed a particular issue, to "predict what [that] court will do." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *see also Edward E. Gillen Co. v. Ins. Co. of the State of Pa.*, 825 F.3d 816, 818 (7th Cir. 2016).

A choice-of-law analysis is necessary only if the party seeking a choice-of-law determination carries its burden of demonstrating a conflict between the laws of the different jurisdictions in question. *See Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014); *see also Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729

(7th Cir. 2014). Here, the parties do not dispute that the application of Florida law would make a difference in this case.[5] Where, as here, a choice of law determination is necessary, Illinois courts look to the Restatement (Second) of Conflict of Laws.[6] *See Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E. 1263, 1269 (Ill. 2000); *Bankers Life & Cas. Co. v. Miller*, No. 14 CV 3165, 2015 WL 515965, at *2 (N.D. Ill. Feb. 6, 2015); *see also Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007); *State Farm Mut. Auto Ins. Co. v. Burke*, 51 N.E.3d 1082, 1097 (Ill. App. Ct. 2016).

The question of which state's law applies is one for the judge and may involve factual disputes "that the district court must . . . resolve." *See Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 742 (7th Cir. 2008); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007); *Curtis v. TransCor Am., LLC*, 877 F. Supp. 2d 578, 585–86 (N.D. Ill. 2012). In that way, determining the applicable law is similar to the analysis courts undertake when answering jurisdictional questions. *See Nautilus*, 537 F.3d at 743.

## ANALYSIS

Defendants have two arguments supporting their contention that Florida law governs the promissory note.[7] First, Defendants assert that the place of payment specified in the contract—Florida—"controls which state's laws apply in the absence of an express contract provision." (R.

---

[5] Defendants seek to apply Florida law to assert an affirmative defense under Fla. Stat. § 687.071. (R. 1243 at 12–14.) That section, the Overall Receiver concedes, is an "'invalidating rule' to protect debtors" against usurious interest rates. (R. 1267, Pl.'s Surreply, at 5.); *see* § 687.071(2)–(3), (7). Missouri, in contrast, has no such rule for loans to corporations. Mo. Rev. Stat. § 408.035(1).

[6] The parties do not dispute that the principles of the Restatement should govern the Court's analysis of the choice-of-law issues before the Court—namely the rules concerning the validity of contracts in Chapter 8. The Court will therefore apply these principles.

[7] The Overall Receiver does not challenge Defendants' argument that Florida law governs the guaranty agreement. The Court therefore will not conduct a choice of law analysis as to that contract. *See Wood v. Mid-Valley, Inc.*, 942 F.2d 426, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); *Global Cash Network v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 720 n.5 (N.D. Ill. 2015); *Markin v. Chebemma Inc.*, 526 F. Supp. 2d 890, 893 n.2 (N.D. Ill. 2007).

5

1175, Mem. Supp. Defs.' Mot., at 4; R. 1260 at 2–5.) Second, Defendants argue that because the promissory note, the guaranty agreement, and the security agreement are all part of the same transaction, and because the security agreement and the guaranty contain a choice-of-law clause specifying that Florida law should control, Florida law governs the promissory note. The Court addresses these arguments in turn.

I.  **The Place of Repayment**

Where the parties have not specified which state's law applies to a particular contract, Illinois courts apply the "most significant contacts" test from Section 188(2) of the Restatement. *Auto-Owners Ins. Co. v. Websolv Comput., Inc.*, 580 F.3d 543, 547 (7th Cir. 2009); *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004); *see also Safeco Ins. Co. v. Jelen*, 886 N.E.2d 555, 580 (Ill. App. Ct. 2008). The relevant contacts under this test include the place of contracting; negotiation; performance; location of the subject matter of the contract; the domicile, residence, place of incorporation, and place of business of the parties. *Hinc*, 382 F.3d at 719; *True Branches, LLC v. 21st Century Techs. Ltd.*, No. 13-cv-8355, 2014 WL 2767032, at *4 (N.D. Ill. June 17, 2015); *Lewitton v. ITA Software, Inc.*, No. 07 C 4210, 2008 WL 4427512, at *4 (N.D. Ill. Sept. 29, 2008).

Defendants argue that under Section 195 of the Restatement—the section concerning contracts for the repayment of money lent—"the law governing the transaction is the law of the state where the contract requires that repayment be made." The Overall Receiver responds that courts applying the choice of law rules of Illinois have not relied on Section 195, and, even if Section 195 governed, Florida law would still not apply in this case. The Court therefore turns to Section 195.

6

Section 195 comes from a title within the Restatement for rules concerning "particular contracts"—such as "Contracts for the Transfer of Interests in Land" (Section 189) and "Life Insurance Contracts" (Section 192). It says:

> The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

A comment to the section indicates that when determining if there is another state with a "more significant relationship" than the state of repayment, courts should look to Section 188 and its "discussion of the application of [the principles embodied in Section 6] to the contracts area." *See* Restatement (Second) of Conflict of Laws § 195 cmt. b.

The Overall Receiver argues the Seventh Circuit and the Northern District of Illinois have not applied Section 195 in cases like the one before the Court. As noted above, however, Illinois courts look to the Restatement (Second) of Conflict of Laws. Moreover, Illinois courts have cited Section 195 favorably. *See Bank of Am. N.A. v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 6 (Ill. App. Ct. 2012); *Gainer Bank, N.A. v. Jenkins*, 672 N.E.2d 317, 319 (Ill. App. Ct. 1996); *Charter Fin. Co. v. Henderson*, 305 N.E.2d 338, 341 (Ill. App. Ct. 1973) ("According to Restatement of Conflict of Laws, Second, sec. 195, the local law of the place where a loan contract requires repayment is applicable with respect to contracts for the repayment of money lent, unless there are compelling reasons otherwise."). Courts interpreting Illinois law have also cited similar sections from the title within the Restatement that concerns "particular contracts." *See, e.g.*, *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 477 (7th Cir. 1999) (Section 192); *Cooke*, 2016 WL 1070829, at *4 (Section 192); *Comrie v. IPSCO Inc.*, No. 08-CV-03060, 2008

7

WL 5220301, at *3 (N.D. Ill. Dec. 10, 2008) (Section 196). The Court therefore applies Section 195.[8]

The Illinois Supreme Court's decision in *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893 (Ill. 2007), gives helpful guidance on how courts should apply Section 195 and similar provisions. A court should identify the "presumptively applicable law" and then "test[] this choice against the principles of § 6 in light of relevant contacts identified by general provisions like . . . § 188 (contracts)." *Townsend*, 879 N.E.2d at 164; *see also Kelco Metals, Inc. v. Morgan*, No. 09 C 4476, 2010 WL 1427583, at *3–4 (N.D. Ill. Apr. 5, 2010).

Here, the promissory note indicates that the state of repayment is Florida. Thus, under Section 195, Florida law should apply "unless . . . some other state has a more significant relationship." In this case, Florida is not the state with the most significant relationship.

Critically, comment (b) of Section 188 makes clear that "the protection of the justified expectations of the parties is of considerable importance in contracts." The comment further provides that "it may at least be said, subject perhaps to rare exceptions, that [the parties] expected that the provisions of the contract would be binding upon them." Furthermore, parties "expectations should not be disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied." Restatement (Second) of Conflict of Laws § 188 cmt. b.

Applying Florida law would undermine the parties' expectations—to be bound by the terms of the $2,000,0000 business loan. This was not a casual deal that Defendants entered into

---

[8] Even if the Overall Receiver were correct, however, the Court would assume without deciding that Section 195 applies in order to evaluate Defendants' argument.

8

without thought. Indeed, Standley testified in a deposition that he understood the terms in the agreement, (R. 1050-1 at 96), and, Standley Plastics paid Bombola a substantial fee for his services in obtaining the loan, (R. 1243 at ¶ 8; R. 1250-2 at 56). Additionally, Standley Plastics listed the loan as an outstanding liability on its balance sheet as of December 31, 2014. (R. 1267-1, Ex. A). It is thus apparent that the expectation of the parties was to enter into a valid contract. This factor weighs against applying Florida law.

Florida's interest in having its invalidating law applied does not substantially outweigh the value of protecting the parties' expectations. First, the transaction's contacts to Florida are somewhat limited: the place of repayment is Florida, First Farmers transferred money to Standley Plastics from a Florida account, First Farmers had a Florida lawyer draft the contract, and First Farmers was Florida based. Standley Plastics and Standley, however, are Missouri based; the loan was deposited in a Missouri account; the discussion that led to the signing of the loan took place in Missouri, California, and Nevada; and Fisher, the person who arranged for the loan on behalf of First Farmers, was based in California. Additionally, the Overall Receiver argues that the "place of contracting" is Missouri because the last act necessary to give validity to the contract took place there. (*See* R. 1250 at 6 (quoting *Hinc*, 382 F.3d at 719).) Defendants do not contest this assertion, and therefore neither will the Court. *Bonte v. U.S. Bank, N.A.* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Cooney v. Casady*, 746 F. Supp. 2d 973, 977 (N.D. Ill. 2010) ("It is not the job of the court to make arguments for the parties."); *Watson v. Abt Elecs., Inc.*, No. 06-C-1815, 2007 WL 79327, at *3 (N.D. Ill. Jan. 8, 2007) ("Abt does not contest this prong and thus waived its argument that Watson's actions were not protected activity.")

9

Second, Florida courts will often uphold contracts that might otherwise be unenforceable under Florida's usury statute to "protect[] the justified expectations of parties to a contract." *Land-Cellular Corp. v. Zokaites*, 463 F. Supp. 2d 1348, 1361 (S.D. Fla. 2006) (citing Florida case law for the proposition that "Florida courts have upheld time and again usurious contracts with choice of law provisions that provide for the application of foreign law to the agreement on substantially similar facts as the ones in the instant case."). Indeed, "Florida courts will enforce a choice of law agreement even if it is expressly designed to evade Florida's usury laws," *L'Arbalete, Inc. v. Zaczac*, 474 F. Supp. 2d 1314, 1321 (S.D. Fla. 2007). In short, Florida courts will apply choice of law rules to favor upholding an otherwise usurious contract in order to fulfill party expectations. *See Cont'l Mortg. Inv'rs v. Sailboat Key, Inc.*, 395 So.2d 507, 510–12 (Fla. 1981). Accordingly, Florida's interest in having its invalidating usury law applied is not so strong that it substantially outweighs protecting the expectations of the parties.

The comments to Section 195 further bolster the conclusion that Florida is not the state with the most significant relationship despite the fact that it is the state of repayment. Comment (c)—entitled, "When local law of place of repayment will not be applied"—says:

> On occasion, a state which is not the place where the contract requires that the loan be repaid will nevertheless, with respect to the particular issue, be the state of most significant relationship to the transaction and the parties and hence the state of the applicable law. *This may be so, for example, when the contract would be invalid under the local law of the state where repayment is to be made but valid under the local law of another state with a close relation to the transaction and the parties.* In such a situation, the local law of the other state should be applied unless the value of protecting the expectations of the parties by upholding the contract is outweighed in the particular case by the interest of the state where the loan is to be repaid in having its invalidating rule applied.

Restatement (Second) of Conflict of Laws § 195 cmt. c (emphasis added).  As explained above, given the importance of protecting the expectations of the parties along with the numerous contacts the transaction has to Missouri (and the relatively weak contacts the transaction has to Florida), Florida law does not control.  Instead, Missouri law will apply.

One case from the Ninth Circuit, however, appears to suggest a different result.  In *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1209 (9th Cir. 2001), the plaintiffs were three California corporations owned by a Nevada resident.  The owner entered various loan agreements with the defendants, who were Nevada citizens, which specified that Nevada would be the place of repayment.  *Id.*  The loans carried an interest rate above 10%.  Eventually, the plaintiffs sued the defendants, asserting usury claims.  *Id.*  The question arose whether Nevada law (which had no prohibition against usury) or California law (which prohibited interest rates in excess of 10%) applied.  *Id.*

The Ninth Circuit looked to Section 195 of the Restatement to resolve the conflict of laws, explaining that "the law of Nevada . . . governs under the basic rule of § 195." *Id.* at 1212.  The plaintiffs, however, arguing that California law applied, "rel[ied] on the second clause in § 195, which states that the local law of the state where the loan is to be repaid applies 'unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 195).  The court rejected the plaintiff's contention, concluding that "[i]n usury cases, the invalidating power of the 'unless' clause of § 195 should . . . be limited to situations where the location of repayment is selected solely to circumvent a state's usury laws, or when the place of repayment otherwise has a very tangential relationship to the contract." *Id.* at 1212–13.  The court reached this result

11

based on the "saving provision in § 203," *id.* at 1212, which says that "[t]he validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188," Restatement (Second) of Conflict of Laws § 203. Section 203, the court explained, "already serves" the function of saving contracts that violate usury laws in the state of repayment, and thus "§ 195 should not be read as designed to *save* contracts that violate usury laws of the state of repayment." *Shannon-Vail*, 270 F.3d at 1212 (emphasis in original). Such a reading, the Ninth Circuit said, helps "promote the predictability sought by § 195" and protects the parties' expectations. *Id.*

The Court respectfully declines to follow the *Shannon-Vail* approach to interpreting Section 195. The Ninth Circuit's case law is, of course, not controlling here. Moreover, *Shannon-Vail*'s statement that the "unless" clause of Section 195 "should not be read as designed to *save* contracts that violate usury laws of the state of repayment" is dictum because *Shannon-Vail* concerned a contract that was *valid* in Nevada, the state of repayment. *Id.* at 1209, 1212. The Ninth Circuit has explained that it is appropriate to discount the persuasive value of a particular proposition if it comes from dicta. *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530–31 (9th Cir. 1998) (declining to follow dicta from the Fourth Circuit where the Fourth Circuit did not decide the issue in question, but rather "just expressed doubts" and "did not ultimately have to face the consequences of those doubts").

Second, the *Shannon-Vail* approach conflicts with the manner in which Illinois courts have indicated they would approach "presumptive rules" in the Restatement like the one in Section 195. *See Townsend*, 879 N.E.2d at 164 (explaining that the "Restatement a two-step

process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests against the principles of § 6 in light of relevant contacts identified by the general provisions like . . . § 188 (contracts)." *Townsend*, 879 N.E.2d at 164; *see also Kelco*, 2010 WL 1427583, at *3–4; *Comrie*, 2008 WL 5220301, at *3–4 (applying Section 196 of the Restatement—which provides that "in the case of a contract for the performance of services, the law of the place of performance will apply unless some other state has a more significant relationship to the transaction and the parties"—and determining that Canadian law should apply even though Illinois was primarily the place of performance).

Third, the *Shannon-Vail* approach conflicts with the language and purpose of the Restatement by negating the "unless" clause in Section 195. As previously noted, the Restatement aims to protect the justified expectations of the parties, which "should not be disappointed by the application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied." Restatement (Second) of Conflict of Laws § 188 cmt. b. Section 195 echoes this, as the comments explain that sometimes a state that is not the state of repayment will be the state with the most significant relationship. *Id.* § 195 cmt. c. This situation may arise, for example, "when the contract would be invalid under the local law of the state where repayment is to be made but valid under the local law of another state with a close relation to the transaction and the parties." *Id.* As noted above, this is the situation presented in this case. Accordingly, Missouri is the state with the most significant relationship.

Finally, Section 203 performs a different function than the "unless" clause of Section 195. Section 195 and Section 188 aim to determine the state with the most significant

13

relationship. *See, e.g.*, *Comrie*, 2008 WL 5220301, at *3–4 (applying Sections 188 and 196). Section 203 says that "[t]he validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188." A state with a "substantial relationship" is different than the state with the "most significant relationship." Restatement (Second) of Conflict of Laws § 203 cmt. c. Consequently, Section 203 becomes relevant only once it is determined that the state with the most significant relationship has a usury law that would invalidate the contract at issue. Here, that is not the case.

In short, Florida has fairly limited contacts to the transaction at issue apart from it being the place of repayment, Missouri has significant contacts, and applying Florida law would upend the expectations of the parties who agreed to enter and be bound by the terms of a $2,000,000 business loan. Missouri law—not Florida law—therefore controls.

## II. Choice of Law Provisions

Defendants' second argument is that the promissory note, the guaranty agreement, and the security agreement are all part of the same transaction and should be construed together. (R. 1175 at 6–7.) Because of this, Defendants contend, the choice of law provisions in the guaranty and security agreements indicating that Florida law applies should control the promissory note as well. (*Id.*; R. 1260 at 5–8.)

Defendants' argument fails even if the Court imports the choice of law provisions from the security agreement and guaranty agreement into the promissory note. While generally a court will uphold a choice of law provision where "there is some reasonable relationship between the chosen forum and the parties or transaction" and upholding the provision is not contrary to

14

public policy, *see Hussein v. L.A. Fitness Int'l, L.L.C.*, 987 N.E.2d 460, 838 (Ill. App. Ct. 2013), courts disregard choice of law provisions when they invalidate the contract. As the comments to the Restatement (Second) of Conflict of Laws § 187 say:

> On occasion, the parties may choose a law that would declare the contract invalid. In such situations, the chosen law will not be applied by reason of the parties' choice. To do so would defeat the expectations of the parties which it is the purpose of the present rule to protect. The parties can be assumed to have intended that the provisions of the contract would be binding upon them. If the parties have chosen a law that would invalidate the contract, it can be assumed that they did so by mistake.

§ 187 cmt. e. This sensible rule leads to the conclusion that the two businesses involved in this case did not intend to enter an invalid $2,000,000 loan agreement. Florida law therefore does not apply. *See also, e.g.*, *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493–96 (6th Cir. 1999); *S.E.C. v. Elmas Trad. Corp.*, 683 F. Supp. 743, 749–50 (D. Nev. 1987).[9]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants motion.

**DATED:  November 10, 2013**　　　　　　　　　　　　　　**ENTERED**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge

---

[9] The Court also notes that the security agreement specifically limits its choice of law provision to "[t]his Security Agreement." (R. 1058-1 at 8.) The guaranty agreement—to which Standley Plastics is not a party—similarly limits the choice of law provision to "this Agreement." (R. 1145-1, Ex. B at ¶ 18.) It therefore appears that the parties did not intend for the choice of law provision to govern the promissory note.

15