# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | No. 14-cv-7581 |
| FIRST FARMERS FINANCIAL | ) | |
| LITIGATION | ) | Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The matter before the Court concerns the claims of Patrick Cavanaugh, not individually, but in his capacity as receiver of the Overall Receivership Estate (the "Overall Receiver"), against Defendant Shamir Patel ("Shamir").[1]  Shamir has moved to dismiss the Overall Receiver's complaint for lack of personal jurisdiction, improper venue, *forum non conveniens*, and failure to state a claim.  (R. 1289, Def.'s Mot. Dismiss, at 1); *see* Fed. R. Civ. P. 12(b)(2), (3), (6).  For the following reasons, the Court denies Shamir's motion.

## BACKGROUND[2]

This case arises from a fraud Nikesh Patel ("Nikesh") and Timothy Fisher ("Fisher") committed through First Farmers Financial, LLC ("First Farmers"), an entity they owned and controlled.  (Compl., at ¶¶ 1, 9–10.)  Nikesh and Fisher used First Farmers "to fraudulently obtain millions of dollars from the sale of fictional loans that were purportedly guaranteed by the U.S. Small Business Administration or the U.S. Department of Agriculture Rural Development Program."  (*Id.*)  The Overall Receiver alleges that, among other things, Nikesh used First

---

[1] This case originally was before another judge, but was reassigned to the undersigned and consolidated under the above case number.  (R. 999, 1001; *Cavanaugh v. Patel*, No. 16-cv-04516, R. 4, 5.)  The Complaint in this case is accessible in the docket for case number 16-cv-04516, R. 1.

[2] The facts presented in the Background as they relate to Shamir's motion under Rule 12(b)(6) are taken from the complaint and are presumed true for the purpose of resolving the pending motion to dismiss.  *See Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Farmers "to improperly transfer millions of dollars to insiders, relatives and employees of entities that he owned and/or controlled, such as Alena Hospitality, LLC ('Alena')," which "directly or indirectly owned several hotel properties and often served as the manager of those hotel properties."  (*Id.* at ¶ 1.)

Nikesh and Fisher operated First Farmers solely to perpetuate their fraudulent scheme. (*Id.* at ¶ 16.)  Consequently, First Farmers "was never legally solvent or otherwise able to pay its debts and liabilities as they became due."  (*Id.*)  Any money that First Farmers held derived from the fraudulent scheme "rather than actual profits resulting from a legitimate business enterprise." (*Id.*)  According to the Overall Receiver, "[b]ecause of the fraudulent activity, substantial assets were quickly diverted from [First Farmers]."  (*Id.* at ¶ 17.)

Alena hired Shamir in December 2013 as its Chief Operating Officer/Managing Partner. (*Id.* at ¶ 18.)  He was responsible for, among other things, "operational management, development and asset management."  (*Id.* at ¶¶ 2, 18.)  Alena was based in Florida, Shamir lived and continues to live in Florida, and, according to Shamir, he has no connection to Illinois (*e.g.*, he has no property in Illinois, has never lived here, and has never conducted business here). (R. 1289-1, Shamir Decl.; *see* Compl. at ¶¶ 5, )

A copy of the employment agreement between Alena and Shamir, which the Overall Receiver attached to his complaint, indicates that Shamir would receive a salary of $150,000 per year and start in his position "no later than January 6, 2014."[3]  (*Id.*, Ex. A at 1-2.)  The employment agreement also says that Shamir would receive a 34% membership interest in Alena.  (*Id.* at ¶ 19, Ex. A at 2.)  Per the agreement, "[m]ember distributions would be calculated on a semi-annual basis (July and January) and upon distribution, [Shamir] will receive [his]

---

[3] The Overall Receiver indicates that Alena hired Shamir in December 23, 2013, which is the date indicated in his offer of employment.  (Compl., at ¶ 18, Ex. A at 1.)  Shamir executed the agreement, however, on June 9, 2014. (*Id.*, Ex. A at 3.)

proportionate share of the net proceeds." (*Id.*, Ex. A at 2.)  The employment agreement provided a projected, but not guaranteed, calculation of Shamir's distribution over an 18-month period of $1,327,065.

On June 20, 2014, the two managing members of Alena—Nikesh and William Huseman—signed a Certificate of Resolution that added Shamir as a member of Alena.  (*Id.*, Ex. B.)  On June 30, 2014, "at [Shamir's] request and with Nikesh's authority, [First Farmers] wire transferred $850,000 from its account at BMO Harris Bank to an account held by Shamir at Suntrust Bank."  (*Id.* at ¶ 21, Ex. C.)  The Overall Receiver alleges that this transaction was the "fraudulent transfer."  (*Id.* at ¶ 21.)  The "payment details" in the wire transfer form, which the Overall Receiver attached to the complaint, say, "S Patel – Portfolio Fee."  (*Id.* at ¶ 21, Ex. C.)  According to the Overall Receiver, Shamir "asked for the advance of $850,000 on a yet to be earned 'Portfolio Fee' because he needed the money to fund a down payment on a new home that he wanted to purchase for himself."  (*Id.* at ¶ 22.)  The Overall Receiver alleges, however, that "as of June 30, 2014, Alena had not yet earned any Portfolio Fees, asset management fees, development fees or hotel management fees that would be sufficient to generate any type of distribution to Patel or to any of Alena's other Members."  (*Id.* at ¶ 21.)  Indeed, the Overall Receiver alleges that "Alena never legitimately generated any asset management, development, portfolio or hotel management fees to warrant any type of distribution to any of its members." (*Id.* at ¶ 24.)  The Overall Receiver also claims, on information and belief, that no other members of Alena received any distribution in 2014.  (*Id.*)

The Overall Receiver asserts three counts in his complaint: (1) a violation of the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. § 726.105(1)(a), based on "actual fraudulent transfer"; (2) a violation of FUFTA, Fla. Stat. § 726.105(1)(b), based on "constructive

fraudulent transfer"; and (3) unjust enrichment. (*Id.* at ¶¶ 25-45.) The Overall Receiver seeks

judgment against Shamir for $850,000; an equitable accounting setting forth how Shamir used

the funds from the fraudulent transfer and the funds' current location; a constructive trust over all

of Shamir's assets and an order enjoining Shamir from "dissipating, assigning or transferring any

of his assets without authorization from th[e] Court or from the Overall Receiver"; and attorneys'

fees and costs.[4] (*Id.* at ¶¶ 32, 40, 45.)

## ANALYSIS

### I.     Personal Jurisdiction

#### A.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(2) tests whether a federal court has personal

jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). In analyzing a Rule 12(b)(2) motion,

courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi-

Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without the benefit of an evidentiary

hearing, the plaintiff "bears only the burden of making a prima facie case for personal

jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). Under

such circumstances, courts take "the plaintiff's asserted facts as true and resolve any factual

disputes in its favor." *Id.* Where the plaintiff fails to refute facts contained in the defendant's

affidavit, however, courts accept those facts in the affidavit as true. *GCIU-Emp'r Ret. Fund v.

Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

---

[4] Shamir argues that the Overall Receiver's requested relief of an equitable accounting, a constructive trust, and attorneys' fees are "not properly pled . . . or are not available under Florida law." (R. 1289, Def.'s Mot. Dismiss, at 13-14.) The Overall Receiver then indicated that he "will withdraw these remedies from his Complaint *without prejudice.*" (R. 1308, Overall Receiver's Response, at 15 (emphasis in original).) The Court therefore does not consider at this time whether these remedies are appropriate or properly pled.

## B.     The Interplay of the Federal Receivership Statutes and Rule 4(k) Provides Nationwide Personal Jurisdiction

The Overall Receiver argues that the Court has personal jurisdiction over Shamir in this action based on the "Federal Receivership Statutes," 28 U.S.C. §§ 754 and 1692, which he says combine with Federal Rule of Civil Procedure 4(k) to provide the district court where the receivership is pending "with personal jurisdiction over any individual defendant who holds receivership assets, regardless of where that individual defendant resides." (R. 1308, Overall Receiver's Response, at 4-5.) As the Overall Receiver points out, the Court has previously expressed its agreement with his analysis in a March 8, 2016 order. (R. 958.) Although the defendants in the action at issue, Ward Harris Properties and Ward Harris Properties II, did not dispute personal jurisdiction (instead, they sought to transfer venue to the Southern District of Florida), the Court explained that the Federal Receivership Statutes "provide nationwide jurisdiction and service of process, respectively to receivers." (*Id.* at 3.) This ruling contradicts Shamir's argument that the Federal Receivership Statutes do not confer the Court with personal jurisdiction and that Shamir's contacts with Illinois are relevant to the personal-jurisdiction analysis. (*See* R. 1289 at 5-6.)

The Court stands on its March 8, 2016 ruling as to personal jurisdiction in the receivership context. Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Section 1692 is such a federal statute.[5] *See,*

---

[5] Section 1692 provides:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

*e.g.*, *S.E.C. v. Bilzerian*, 378 F.3d 1100, 1103 (D.C. Cir. 2004) (Garland, J.); *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 824 (6th Cir. 1981); *Quilling v. Cristell*, No. 03-5237, 2006 WL 316981, at *1–4 (W.D.N.C. Feb. 9, 2006); *U.S. Small Bus. Admin. v. Chimicles*, No. 03-5987, 2004 WL 2223304, at *3–4 (E.D. Pa. Sept. 22, 2004). To invoke § 1692, a receiver must comply with § 754—compliance that is undisputed in this case. *See e.g.*, *Bilzerian*, 378 F.3d at 1103; *Haile*, 657 F.2d at 823–24; *Chimicles*, 2004 WL 2223304, at *4; *see also* (R. 174). Thus, as a number of courts have held, Rule 4 and the Federal Receivership Statutes vest a district court with *in personam* jurisdiction over "one who holds receivership assets in a remote district," and "the minimum contacts analysis of *International Shoe* as a limitation on extraterritorial power, does not apply, since service of process under § 1692 [is nationwide]." *Bilzerian*, 378 F.3d at 1103–04 (quoting 7 (Pt. 2) James Wm. Moore, *Moore's Federal Practice* ¶ 66008[1] (2d ed. 1996), and citing *Haile*, 657 F.2d at 826, and *Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984)); *see also, e.g.*, *Carney v. Horion Invs., Ltd.*, 107 F. Supp. 3d 216, 227 (D. Conn. 2015); *Chimicles*, 2004 WL 2223304, at *2; *Quilling*, 2006 WL 316981, at *1–4; *Chimicles*, 2004 WL 2223304, at *3–4.[6]

Shamir barely acknowledges the authority cited in the preceding paragraph, providing only a "*but see*" citation to *Chimicles*. (R. 1289 at 5.) Instead, he relies on *Stenger v. World Harvest Church, Inc.*, No. 02 C 8036, 2003 WL 22048047, at *4 (N.D. Ill. Aug. 29, 2003), for the proposition that the Federal Receivership Statutes "d[o] not, by [themselves], confer extraterritorial *in personam* jurisdiction." (*Id.*) In *World Harvest Church*, the district court

---

[6] The minimum contacts test is not entirely inapplicable; instead, the question in cases in which a statute authorizes nationwide service of process is whether the defendant has minimum contacts with the United States. *See KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730–31 (7th Cir. 2013); *Bilzerian*, 378 F.3d at 1106 n.8; *Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1027–28 (N.D. Ill. 2015) ("[T]he traditional 'minimum contacts' test from *International Shoe* still governs even when the basis of personal jurisdiction involves a statute providing for nationwide service of process. The relevant minimum contacts in these instances simply lie with the United States as a whole and not just the forum state (here, Illinois)."). Here, there is no dispute that Shamir has such contacts.

concluded that "§ 1692 merely authorizes extraterritorial service of process in aid of *in rem* actions and does not do so in cases like this one in which the receiver seeks an *in personam* judgment." 2003 WL 22048047, at *2. The court based its reasoning on the language of § 1692, specifically that it "does not mention *service* of process; rather it speaks only of *issuance* and *execution* of process." *Id.* The court explained that "[t]he issuance of process is the Clerk's ministerial act of issuing a summons to a plaintiff so that he or she can serve it on the defendant," and "[t]he execution of process involves the act, in an *in rem* action, of attaching property." *Id.* The court also looked to various statutes that authorize nationwide service of process, distinguishing § 1692 from them because it does not reference the "service" of process. *Id.*[7]

The Court respectfully disagrees with the *Stenger* court's reasoning and instead agrees with the reasoning of the D.C. Circuit, the Sixth Circuit, the First Circuit, and a number of other courts, including those cited above. The D.C. Circuit in *Bilzerian* addressed *Stenger* directly, explaining why it reached a different conclusion. 378 F.3d at 1105–06. The D.C. Circuit disagreed with *Stenger*'s narrow definition of the terms "may issue" and "be executed" in § 1692. *See id.* at 1105 ("[N]either Congress nor the courts have restricted [the relevant] terms to the meaning insisted upon by *Stenger*."). As to the term "be executed," the *Bilzerian* court explained that "federal rules, statutes, and court opinions have used 'execution' as more than merely a synonym for 'attaching property.'" *Id.* The court pointed to Federal Rule of Civil Procedure 79—which at the time provided that "the civil docket contain entries showing 'the substance of each order or judgment of the court and of the returns showing execution of process.'" *Id.* The court explained that the Rule used "execution of process" as a rough

---

[7] Another judge from this district later followed the *Stenger* court's reasoning. *See Stenger v. Leadenhall Bank & Trust Co.*, No. 02 C 8655, 2004 WL 609795, at *7–8 (N.D. Ill. Mar. 23, 2004).

equivalent for "service of process."[8]  *Id.*  The court also explained that the term "'[e]xecution is also often used to mean the method by which a judgment, including a judgment *in personam*, is enforced." *Id.* This usage, the D.C. Circuit reasoned, "is distinct from an 'attachment,' which is often used to denote the method by which *in-rem* (or *quasi-in-rem*) jurisdiction is obtained." *Id.* at 1105–06.  "In this sense," the court said, "'may issue and be executed' describes the entire process from initial issuance, through service, through judgment, to final enforcement of judgment." *Id.* at 1106.

In addition, the D.C. Circuit explained that "Congress has used 'issue' as a shorthand to comprehend the phase of the process that extends from issuance of an order through and including its service," and that "courts frequently use 'issuance' and 'service' interchangeably." *Id.* at 1106 & nn.6–7 (citing a number of cases and statutes).

In short, the Court agrees with the reasoning of the D.C. Circuit and the other courts that have determined that the Federal Receivership Statutes provide for nationwide service of process.  *See, e.g.*, *Quilling*, 2006 WL 316981 at *3 (declining to follow *Stenger* in part because there is "overwhelming authority" to the contrary).  The Court further notes that its conclusion promotes the efficiencies of receiverships.  *See id.* at *2 (explaining that the Federal Receivership Statutes' "provisions for extraterritorial service are 'made to facilitate judicial efficiency by permitting courts to manage claims regarding receivership property in a single forum'" (quoting *Terry v. June*, No. Civ. A 303CV00052, 2003 WL 22125300, at *5 (W.D. Va. Sept. 2003))).

---

[8] In 2007, Rule 79 was amended.  It now provides that the docket contain entries showing "process issued, and proof of service or other returns showing execution."  Fed. R. Civ. P. 79(a)(2)(B).  As the advisory committee notes indicate, however, the "changes [were] intended to be stylistic only."  Thus, *Bilzerian*'s reliance on Rule 79's language still carries force, especially because the language in § 1692 was the same before the amendment as it is today.

Shamir argues that even if the Overall Receiver satisfies his burden under the minimum contacts test, the "Court's exercise of personal jurisdiction does not comport with traditional notions of fair play and substantial justice." (R. 1289 at 7.) In the Seventh Circuit, when a statute provides for nationwide service of process, "due process requires only that [the defendant] have sufficient minimum contacts with the United States as a whole to support personal jurisdiction." *KM Enters.*, 725 F.3d 730–31; *see also Bd. of Trs., Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1036–37 (7th Cir. 2000) (explaining that, in part because defendants can seek to transfer venue, a statute that provided nationwide service of process comported with the Constitution and provided a district court with personal jurisdiction over two defendants even if neither had any "contacts" with the jurisdiction); *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979); *Siswanto*, 153 F. Supp. 3d at 1028 ("When the defendants are domiciled in the United States, such as in *KM Enterprises*, 725 F.3d at 721–22, 730–31, *Fitzsimmons v. Barton*, 589 F.2d 330, 333–34 (7th Cir.1979), and many other cases Plaintiffs cite, the due process analysis under a nationwide service of process statute is straightforward. Domestic companies and individuals, almost by definition, have minimum contacts with the United States, so there may be general personal jurisdiction in any federal court throughout the country. *See Fitzsimmons*, 589 F.2d at 333–34 & n. 4."). The Court also notes that the D.C. Circuit in *Bilzerian* did not conduct the "fairness" inquiry that Shamir requests. *See generally S.E.C. v. Bilzerian*, 378 F.3d 1100 (D.C. Cir. 2004).

Some courts, however, have considered whether an assertion of personal jurisdiction over a defendant pursuant to a statute providing nationwide service of process violates the defendant's due process rights despite his sufficient contacts with the United States. *See, e.g.*, *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942, 947–48 (11th Cir. 1997)

(explaining that in rare cases, a defendant with sufficient contact to the United States may be able to prove that he faces an undue burden litigating in "a faraway and inconvenient forum," in which case jurisdiction is proper "only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant"); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212–13 (10th Cir. 2000); *Terry*, 2003 WL 22125300, at *4 (explaining that even though § 1692 authorized nationwide service of process, defendants still have some due process protection against "the unfair burden of litigating in an inconvenient forum," but that when a defendant is located within the United States, "any inconvenience will rarely rise to a level of constitutional concern" and "the congressionally articulated policy permitting assertion of in personam jurisdiction should prevail except in 'extreme cases of unfairness.'" (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997))).

Even under these standards, however, Shamir's argument fails. While Shamir faces some burden in litigating in this Court rather than in Florida, the burden is not so great as to give rise to the substantial unfairness courts require to find a due process violation when a court asserts personal jurisdiction pursuant to a federal statute providing nationwide service of process. Shamir is represented by counsel, the need for his counsel's physical attendance in Chicago will be infrequent until trial, [9] his claims of the great expenses he will incur are conclusory, and Chicago is an accessible city with two large airports. Indeed, Shamir does not assert that he cannot afford to litigate in this district, (*see, e.g.*, R. 1289-1, Shamir Decl.), and the costs associated with litigating in an out-of-state district have fallen due to technological improvements, lowering the burden on out-of-state litigants, *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980); *BCCI Holdings*, 119 F.3d at 947–48. If Shamir's claims

---

[9] The Court notes that it will keep in mind Shamir's litigation burden, allowing, when possible, his counsel to appear telephonically.

of inconvenience were sufficient to constitute a due process violation in this context, a due process violation would hardly be "rare" in cases involving a statute providing nationwide service of process. *See supra*. Apart from Shamir's burden not being so heavy that exercising personal jurisdiction would violate the Constitution, asserting jurisdiction in this case is consistent with the purpose of receivership and judicial economy generally, particularly given the Court's familiarity with the First Farmers fraud and the fact that increasing the Overall Receiver's litigation expenses would reduce the amount of money available to victims of the First Farmers' fraud. *See Quilling*, 2006 WL 316981, at *4 ("Though Defendants may be inconvenienced by litigating this matter in North Carolina, such inconvenience is not so extreme as to justify thwarting the congressionally articulated policy that allows for extraterritorial jurisdiction in receivership cases. To hold otherwise would ignore and undermine the policy of facilitating judicial efficiency by permitting courts to manage claims regarding receivership property in a single forum."); *Wing v. Storms*, No. 1:02CV127DAK, 2004 WL 724448, at *3 (D. Utah Feb. 5, 2004) ("There is a strong federal interest in having this court, which created the receivership, maintain litigation related to the receivership.").

## II.     Venue

### A.     Legal Standard

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an improper venue. *See* Fed. R. Civ. P. 12(b)(3). Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014); *see also Dimitrov v. Nissan N. Am., Inc.*, No. 15 C 06332, 2015 WL 9304490, at *1 (N.D. Ill. Dec. 22, 2015). Under Rule 12(b)(3), "the district court assumes the truth of the

allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (emphasis in original); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (courts may consider matters outside of the pleadings in deciding a venue motion). Against a Rule 12(b)(3) challenge, the court must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor. *See Gilman*, 2014 WL 1284499 at *2. When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a).

### B. Venue Is Proper Under the Federal Receivership Statutes

The Court has previously considered and rejected a Rule 12(b)(3) venue challenge in a suit the Overall Receiver brought against the Ward Harris defendants. (R. 958.) There, like here, Defendants argued that a district in Florida was the proper venue based on "the location of the assets at issue, the witnesses likely involved, and the underlying applicable laws." (*Id.* at 3.) The Court concluded that "the federal receivership statutes govern *venue* as well as jurisdiction" and that venue in the Northern District of Illinois was proper. (R. 958 at 3–4 (emphasis in original).) The Court's reasoning has not changed.

As the Overall Receiver notes and Shamir does not contest, the Court has ancillary jurisdiction over this action under 28 U.S.C. § 1367, as the Overall Receiver seeks to recover estate assets. *Tcherepnin v. Franz*, 485 F.2d 1251, 1255–56 (7th Cir. 1973) (holding that the district court had ancillary jurisdiction and thus did not need independent jurisdiction over actions that "were consonant with the[] goals" of the receivership"); *Robb Evans & Assocs. v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) ("[A] district court has ancillary subject matter jurisdiction over an action brought by a receiver in furtherance of its appointment where the

district court had federal question jurisdiction over the original action in which it appointed the receiver."); *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-2015, 2015 WL 4511337, at *8 (N.D. Ill. July 24, 2015).  Given the Court's ancillary jurisdiction and the operation of the Federal Receivership statutes, venue is proper, as the Court explained in its March 8, 2016 order. (R. 958 (collecting cases)); *see Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("The laying of venue . . . is authorized by 28 U.S.C. § 754, which allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country."); *Bilzerian*, 378 F.3d at 1107 ("[T]he district court correctly concluded that, because the receiver's complaint . . . was . . . ancillary to the court's exclusive jurisdiction over the receivership estate, venue was properly established."); *Haile*, 657 F.2d at 822 n.6 ("[W]here jurisdiction is ancillary, the post-jurisdictional consideration of venue is ancillary as well."); *Yancey v. Int'l Fidelity Ins. Co.*, No. 1:16-cv-0057, 2016 WL 2997375, at *5 (E.D. Va. May 25, 2016); *Stenger v. Freeman*, No. 14-CV-10999, 2015 WL 1219557, at *4 & n.2 (E.D. Mich. Mar. 17, 2015); *Tcherepnin v. Franz*, 439 F. Supp. 1340, 1345 (N.D. Ill. 1977).

## III.    Forum Non Conveniens and Venue Transfer

Shamir argues that the "Court should dismiss Plaintiff's claim under the doctrine of *forum non conveniens*, as Florida is an available alternative forum and the litigation involving Shamir will be the most convenient and will best serve the ends of justice [if it occurs in Florida]."  (R. 1289 at 9.)  Thus, Shamir seeks dismissal under the doctrine of *forum non conveniens* rather than venue transfer within the federal judicial system under 28 U.S.C. § 1404(a).

The Seventh Circuit has said that:

> The common law doctrine of forum non conveniens has continuing
> application in federal courts only in cases where the alternative

> forum is a foreign one. Otherwise, if the issue is one of
> convenience within the United States federal court system,
> the Federal Rules of Civil Procedure allow for transfer, rather than
> dismissal, when a sister federal court is the more convenient
> forum.

*Deb*, 832 F.3d at 805 n.2. While the doctrine of *forum non conveniens* is normally confined to instances in which the alternative forum is in another country, the Supreme Court said that it "perhaps" has application "in rare instances where a state or territorial court serves litigation convenience best." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Eaton Corp. v. Westport Ins. Corp.*, No. 15-C-1157, 2016 WL 3167095, at *2 (E.D. Wis. June 6, 2016); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 WL 1560212, at *4 (N.D. Ill. May 29, 2007). Section 1404(a) nevertheless requires consideration of the same factors as *forum non conveniens*—the parties' convenience and the interest of justice. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 580 (2013) (explaining that § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system" and that both § 1404(a) and *forum non conveniens* "entail the same balancing-of-interests standards"); 15 Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction and Related Matters* § 3841 (4th ed. 2016). "[T]he showing of inconvenience necessary to justify a transfer," however, "[is] less exacting than the showing required to obtain a dismissal on grounds of *forum non conveniens*." *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013); *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*."); *Flexicorps*, 2007 WL 1560212, at *4. Accordingly, the Court will address whether a transfer of

venue is appropriate, as Shamir stands a greater chance of success under § 1404(a) than under the doctrine of *forum non conveniens*.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In the Court's March 8, 2016 opinion regarding the Ward Harris defendants, the Court considered the defendants' motion to transfer venue under 1404(a) under circumstances similar to those in the current case. The Court rejected the motion for three reasons:

> 1) the deference owed to the plaintiff's choice of venue – especially a receiver's; 2) the interest of justice for the alleged defrauded creditors whose potential financial recovery directly hinges on the Overall Receiver's actions and expenses; and 3) the judicial economy served by keeping the Overall Receiver's ancillary actions and the underlying main action located in the same forum.

(*Id.* at 5.)[10] The Court's analysis and conclusion is the same in the current case. Accordingly, the Court will not transfer this action to a Florida court under § 1404(a), nor will it dismiss it under the common law doctrine of *forum non conveniens*.

## IV.    Failure to State a Claim

### A.    Legal Standard

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which

---

[10] For further analysis and citations to relevant authority, see (R. 958 at 4–5).

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016)**.**

To plead fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2).  *See Camasta,* 761 F.3d at 736; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011).  Specifically, "plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).  In other words, "[t]he requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible"; therefore, "[t]he complaint must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014); *see also Rocha*, 826 F.3d at 911.  Allegations based on information and belief will not suffice under Rule 9(b) unless "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Grenadyor*, 772 F.3d at 1108 (quoting

*Pirelli*, 631 F.3d at 443); *see also United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d

365, 370 (7th Cir. 2016).

Rule 9(b)'s heightened standard does not, however, apply to allegations of states of mind.

*See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally.").  Instead, Rule 8's standards—as defined in *Twombly* and *Iqbal*—

govern.  *See Iqbal*, 556 U.S. at 686–87.

### B.      The Overall Receiver's Allegations Are Sufficient

The Overall Receiver seeks relief based on fraudulent transfer under Fla. Stat.

§ 726.105(1)(a), constructive fraudulent transfer under 726.105(1)(b), and unjust enrichment.  A

fraudulent transfer action "is either an action by a creditor against a transferee directed against a

particular transaction, which, if declared fraudulent, is set aside thus leaving the creditor free to

pursue the asset, or it is an action against a transferee who has received an asset by means of a

fraudulent conveyance and should be required to either return the asset or pay for the asset (by

way of a judgment and execution)."  *Yusem v. South Fla. Water Mgmt. Dist.*, 770 So. 2d 746,

749 (Fla. Dist. Ct. App. 2000); *see also Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 326

n.1 (Fla. Dist. Ct. App. 2013).  FUFTA section 726.105 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor
> made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of
> the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange
> for the transfer or obligation, and the debtor:
>
> > 1.  Was engaged or was about to engage in a business or a
> > transaction for which the remaining assets of the debtor

were unreasonably small in relation to the business or
transaction; or

2. Intended to incur, or believed or reasonably should
have believed that he or she would incur, debts beyond
his or her ability to pay as they became due.

In determining actual intent for the actual fraud provision of 726.105(1)(a), courts
consider a nonexclusive list of statutory "badges of fraud," including whether the transferee was
an insider, whether the debtor was insolvent before the transfer or became insolvent shortly after
the transfer, and whether the consideration received by the debtor was reasonably equivalent to
the value of the asset transferred. *See* Fla. Stat. § 726.105(2); *Wiand v. Lee*, 753 F.3d 1194, 1200
(11th Cir. 2014). "Although FUFTA lists a number of badges of fraud, '[i]t is clear from the
language of the statute that in determining intent, consideration may be given to factors other
than those listed.'" *Id.* (alteration in original) (quoting *Gen. Trading Inc. v. Yale Materials
Handling Corp.*, 119 F.3d 1485, 1498 (11th Cir. 1997)). Accordingly, "[c]ourts may take into
account the circumstances surrounding the conveyance." *Id.* (quoting *Chuly*, 118 So. 3d at 327).

An affirmative defense to FUFTA exists for transferees "who took [the assets transferred]
in good faith and for a reasonably equivalent value." Fla. Stat. § 726.109(1); *see S.P. Richards
Co. v. Hyde Park Paper Co.*, No. 8:11-cv-1204-EAK-TGW, 2015 WL 4548707, at *5 (M.D. Fla.
July 28, 2015). "The applicability of the good faith defense is generally a fact-intensive inquiry
that is not suitable for determination upon a motion for summary judgment," let alone a motion
to dismiss. *In re Lydia Cladek, Inc.*, 494 B.R. 555, 561 (Bankr. M.D. Fla. 2013).

As for the unjust enrichment claim, the Overall Receiver must show that First Farmers
conferred a benefit on Shamir, that Shamir knew of the benefit, that Shamir voluntarily accepted
and retained the benefit, and that the circumstances are such that it would be inequitable for

Shamir to retain the benefit without paying its value to the Overall Receiver. *Century Senior Servs. v. Consumer Health Benefit Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1266-67 (S.D. Fla. 2011).

Shamir argues that the Overall Receiver's allegations fail because they are "fatally contradictory." (R. 1289 at 10.) According to Shamir, the Overall Receiver "alleges the $850,000 was gifted to Shamir or was an 'advance,' makes a conclusory statement that said payment has not been earned, and Shamir has not provided reasonably equivalent value in exchange for the funds." (*Id.* at 10-11.) This conflicts, Shamir contends, with the Overall Receiver's supposed admission—based on his attachment of the employment agreement and the wire transfer form—that "Shamir had earned the right to a distribution under the terms of the Employment agreement, and the payment was due Shamir when it was paid." (*Id.* at 11.)

The Court disagrees with Shamir's characterization of the complaint and its attachments. The Overall Receiver alleges that Shamir received $850,000 that he did not earn and that was not due under the terms of the employment agreement. The allegations show two streams of income to which Shamir was entitled under the employment agreement: a yearly salary of $150,000 and two yearly distributions, which were not guaranteed, of his share of net proceeds. At most, Shamir had worked for Alena for about six months (December 23, 2013–June 30, 2014) when he received the $850,000 payment. That amount exceeded his yearly salary, and the Overall Receiver alleges that Shamir was not due any distribution—let alone one of $850,000—because Alena had not yet earned fees sufficient to generate distributions to its members. Additionally, there are other facts the Overall Receiver alleges that support his contention that Shamir did not earn the payment. First, the documents the Overall Receiver attached to the complaint show that Shamir became an official member of Alena only 10 days before he received the $850,000, bolstering the Overall Receiver's claim that Shamir had not earned the payment. (Compl., Exs.

B, C.)  It is a plausible inference that such a distribution would not be due after 10 days of membership, particularly given the employment agreement's estimate that Shamir's share would generate approximately $1,327,065 after eighteen months.  Second, even if Shamir had been a member for six months, the $850,000 share is almost double the amount of one-third of the eighteen-month estimate of his distribution proceeds under the employment agreement ($442,355).  Third, the employment agreement contemplates bi-annual calculations of distributions in July and January.  That Shamir received payment in June suggests that his payment was not due under the agreement.  Fourth, the payment came from First Farmers rather than Alena, further calling into question whether Shamir earned the $850,000 payment based on his employment/membership with Alena.[11]

Though perhaps discovery will reveal that Shamir had earned the payment or that it was a legitimate advance payment, the Overall Receiver's allegations support a reasonable inference that Shamir had no legitimate entitlement to the payment.  The Overall Receiver therefore has adequately pled actual and constructive fraudulent transfer based on the allegations that First Farmers was insolvent, that Nikesh was otherwise engaged in a fraudulent scheme, that First Farmers rather than Alena made the payment to Shamir, that Shamir had a close working relationship with Shamir as a member of Alena, and that First Farmers and Alena did not receive reasonably equivalent consideration for the transfer.[12]

Shamir also argues that his affirmative good-faith-transferee defense is established on the face of the complaint.  (R. 1289 at 12 (citing *Brown v. One Beacon Ins. Co.*, 317 F. App'x 916,

---

[11] Shamir argues that the fact that the transfer form indicates that the payment was a "Portfolio Fee" undermines the Overall Receiver's case.  The Court disagrees, as the label Nikesh chose to use is not controlling.  Discovery will show if the transfer was a legitimate "Portfolio Fee" or a fraudulent transfer.

[12] Because the Court rejects Shamir's argument that he had earned the $850,000 payment and Shamir has no other argument that the Court should dismiss the Overall Receiver's unjust enrichment claim, that claim survives.

917 (11th Cir. 2009), for the proposition that a complaint may be dismissed where the defense "is evidenced from the face of the complaint").)  This argument fails as well.  As noted above, the good-faith defense is generally a question of fact, and nothing in the complaint clearly indicates that Shamir accepted the $850,000 in good faith.  Moreover, the good-faith defense requires that the transferee accept the transfer for reasonably equivalent value.  The Overall Receiver, as explained above, sufficiently alleges that Shamir had not earned the $850,000 payment and that he did not exchange anything of reasonably equivalent value for it.  Shamir may pursue his affirmative defense later in the litigation, but he is not entitled to dismissal at this stage.

Because Shamir's arguments fall short, the Court will not dismiss the Overall Receiver's claims.

### CONCLUSION

For the foregoing reasons, the Court denies Shamir's motion to dismiss.

**DATED: January 10, 2017**                                     **ENTERED**

AMY J. ST. EVE
U.S. District Court Judge